**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>**V.**<br><br>**JULIEN GIRAUD JR. and**<br>**JULIEN GIRAUD III,**<br>             **Defendants** | **Crim. No. 24-768 (MWB)** |

**OPPOSITION TO MOTION TO DISMISS THE INDICTMENT OR BAR
THE UNITED STATES ATTORNEY'S OFFICE FROM PROSECUTING THIS CASE**

Defendants Julien Giraud Jr. and Julien Giraud III have moved to dismiss the indictment in this case on the ground that Alina Habba cannot serve as the Acting United States Attorney for the District of New Jersey. DE99 & 101.[1] The premise is wrong, and the conclusion does not follow.

First, Ms. Habba is validly serving as the Acting United States Attorney. The Attorney General properly appointed her as the First Assistant United States Attorney; the First Assistant can serve as the Acting United States Attorney under the Federal Vacancies Reform Act when that office is vacant; and the President properly removed as United States Attorney an

---

[1] "DE" refers by number to a docket entry in this case. Citations to pages of that docket entry, *e.g.*, DE1 at 3–4, use the pagination in the entry's header.

individual whom the District Court for the District of New Jersey purported to appoint.

Second, and in any event, even were Ms. Habba not eligible to serve as the Acting U.S. Attorney, there would be no basis for dismissing this indictment or prohibiting everyone in the U.S. Attorney's Office for the District of New Jersey (USAO-NJ) from participating in this prosecution. At minimum, Ms. Habba has been properly appointed as a Special Attorney to the Attorney General of the United States and directed to supervise the USAO-NJ. Pursuant to that appointment alone, she could still supervise this case—which was initiated by a validly empaneled grand jury and a Senate-confirmed U.S. Attorney—and the Assistant U.S. Attorneys assigned to it can continue prosecuting it under their own delegated authority from the Attorney General, subject to supervision by both Ms. Habba and Senate-confirmed officials in Main Justice, including the Attorney General and the Deputy Attorney General.

This Court should therefore deny the motion and request that this case be reassigned to the originally assigned United States District Judge.

## BACKGROUND

***The Law.*** United States Attorneys are officers of the Executive Branch. They are appointed by the President subject to the advice and consent of the Senate, 28 U.S.C. § 541(a), and are authorized to represent the

United States in all litigation occurring within their district "[e]xcept as otherwise provided by law," *id.* § 547.

The powers of a United States Attorney, however, are not exclusive. "United States Attorneys are inferior officers," subject to the "plenary authority" of the Attorney General and, ultimately, the President. *United States v. Hilario*, 218 F.3d 19, 25 (1st Cir. 2000). "The Attorney General is the head of the Department of Justice," 28 U.S.C. § 503, vested with all the functions and powers of United States Attorneys and "other officers of the Department," *id.* § 509. Congress has specifically empowered the Attorney General to "direct all United States attorneys, assistant United States attorneys, and special attorneys appointed under [28 U.S.C. § 543] in the discharge of their respective duties." *Id.* § 519; *see id.* §§ 516, 518(b) (same). The Attorney General may delegate those functions to "any other officer, employee, or agency of the Department of Justice," *id.* § 510, and may direct any Department officer "or attorney specially appointed by the Attorney General under law" to "conduct any kind of legal proceeding, civil or criminal, ... which United States attorneys are authorized by law to conduct," *id.* § 515(a). The President may remove any United States Attorney from office, *id.* § 541(c); similarly, the Attorney General may remove any Assistant U.S. Attorney, *id.* § 542(b).

When a United States Attorney resigns or otherwise vacates her office, there are two ways for other individuals to fill that vacancy in the absence of a new presidentially appointed and Senate confirmed officeholder. First, under 28 U.S.C. § 546, the Attorney General may appoint an interim United States Attorney, subject to certain time limits. If that interim appointment expires, and the vacancy has not otherwise been filled, the district court may appoint an interim United States Attorney. *Id.* § 546(d). Second, under the Federal Vacancies Reform Act (FVRA), the First Assistant shall temporarily serve as the Acting United States Attorney, unless the President designates a different person to serve in that role. 5 U.S.C. § 3345(a)(1). Ultimately, the President has both constitutional and statutory authority to remove from office any U.S. Attorney—whether appointed by the President, the Attorney General, or the courts—and to replace that person, either himself or acting through the Attorney General, with someone he believes better suited to fulfill that role, for a temporary period.

**The Facts.** In November 2024, a federal grand jury in Newark, New Jersey returned a three-count indictment charging Giraud Jr. and Giraud III each with a separate drug-trafficking count and Giraud Jr. alone with possessing a firearm in furtherance of drug-trafficking. DE54. Then-United States Attorney Philip R. Sellinger, who was confirmed by the Senate in 2021, signed the indictment. DE54 at 7.

On December 8, 2024, Mr. Sellinger resigned from office. The then-First Assistant became Acting U.S. Attorney under the FVRA and retained that position until early March 2025, when the Attorney General appointed John Giordano as the United States Attorney on an interim basis under 28 U.S.C. § 546. The then-First Assistant resigned on March 27, 2025.

Meanwhile, on March 27, 2025, the Attorney General appointed Ms. Habba to replace Mr. Giordano as interim United States Attorney under § 546, effective March 28, 2025. Exhibit A. Ms. Habba was sworn in on March 28. The Attorney General later extended Ms. Habba's interim appointment through July 25, 2025. Exhibit B. That, in turn, tracked § 546, under which an interim appointment as United States Attorney expires 120 days after the appointment (here, at 12:00 a.m. Saturday, July 26).

In early April, Ms. Habba filled the vacant First Assistant position by promoting the then-Criminal Division Chief. That prosecutor served as First Assistant until removed at the direction of the Attorney General last Tuesday, July 22, 2025, under 28 U.S.C. § 542. Exhibit C. That followed entry of Standing Order 2025-03, under which the District Court for the District of New Jersey had designated the prosecutor to become United States Attorney under 28 U.S.C. § 546(d) upon the expiration of Ms. Habba's 120-day term. The First Assistant position thus became vacant.

The President had nominated Ms. Habba as United States Attorney on June 30, 2025. *See* Actions: PN379-12–119th Congress (2025–2026), available at https://www.congress.gov/nomination/119th-congress/379/12/ actions?q=%7B%22search%22%3A%22Habba%22%7D&s=3&r=1&overview= closed (last checked July 28, 2025). The President withdrew that nomination last Thursday, July 24. *Id.* The Senate had never acted on it, much less rejected it.

The same day, Ms. Habba resigned her interim position as United States Attorney. Exhibit D. The Attorney General then appointed her as a Special Attorney under 28 U.S.C. § 515, which appointment Ms. Habba accepted. Exhibits E & F. Exercising her authority under 28 U.S.C. §§ 509, 510, 515 and 542, among other provisions, the Attorney General also designated Ms. Habba as First Assistant, effective upon her resignation as United States Attorney. Exhibit G. All of this occurred on Thursday, July 24, before the 120-day limit period in § 546(c)(2) expired at 12:00 a.m., Saturday, July 26.

On Saturday, July 26, a senior Department of Justice official notified the former First Assistant that the President would have removed her from the position of United States Attorney if her judicial appointment to that office had somehow become effective. Exhibit H (adding that she could not lawfully have become the United States Attorney because she had already

been replaced as First Assistant before the 120-day limit had expired). A
White House official provided the former First Assistant with a similar notice
by email, which explained she could not lawfully have become the United
States Attorney because she had already been replaced as First Assistant
before the 120-day limit expired. Exhibit I. In taking that step, the President
was exercising his authority under Article II of the Constitution and 28
U.S.C. § 541(c). The former vests "the executive power in" the President; the
latter provides that "each United States Attorney is subject to removal by the
President."

Giraud Jr. then filed the present motion, DE99, which Giraud III
joined, DE101. At that point, jury selection for their trial before the
Honorable Edward S. Kiel, U.S.D.J., was to begin on Monday, August 4.
DE77. In addition, Judge Kiel had scheduled a *Franks* hearing and argument
on other matters for Monday, July 28. DE91. But after reviewing the motion,
Judge Kiel converted the hearing to a status conference, DE102, after which
he referred this case to the Honorable Michael A. Chagares, Ch. U.S.C.J., for
reassignment. Chief Judge Chagares then assigned this case and all related
ones to this Court. DE103.

## ARGUMENT

The Girauds' motion fails for many reasons. First, Ms. Habba is validly
serving as the Acting United States Attorney under the Federal Vacancies

Reform Act (FVRA), 5 U.S.C. § 3345 *et seq*. While Ms. Habba was still the interim United States Attorney, the Attorney General removed the First Assistant from her position, which the Attorney General could do under 28 U.S.C. § 542(b). Once (a) Ms. Habba resigned as interim United States Attorney, (b) the President withdrew her nomination for that position, and (c) the Attorney General appointed her as First Assistant (exercising authority under §§ 509, 510, 515, and 542(a)), Ms. Habba properly became the Acting United States Attorney under 5 U.S.C. § 3345(a)(1). Standing Order 2025-03 anticipated as much: By its own terms, the Standing Order's effective date was as of July 22 or the expiration of Ms. Habbas's 120-day term, "whichever [wa]s later."

Second, § 546(d) does not displace the FVRA. To the contrary, as many courts have recognized, the FVRA and officer-specific vacancy statutes like § 546 supplement each other. Neither one is the exclusive means of appointing someone to lead a United States Attorney's Office on a temporary basis pending the President's nomination and the Senate's confirmation of a permanent United States Attorney for that office. Rather, the President, through the Attorney General, can choose which means to use. Indeed, a prior First Assistant served as the Acting United States Attorney from December 2024 through March 2025, when the Attorney General chose to invoke § 546. Nothing prevented the Attorney General from ceasing to invoke

§ 546 and instead resuming use of the FVRA. And in any event, the condition precedent necessary for the judiciary to appoint a United States Attorney under § 546(d) never even occurred. Ms. Habba resigned her appointment as interim United States Attorney before the necessary expiration of the 120-day period to trigger § 546(d).

Third, the President can remove any United States Attorney, including ones judicially appointed through 28 U.S.C. § 546(d). Section § 541(c) of Title 28 of the United States Code provides without limitation that "each United States Attorney is subject to removal by the President." And Article II provides that the "executive power shall be vested in a President of the United States of America." U.S. Const. art. II, § 1, cl. 1. That executive power, in turn, includes the power to fire inferior officers like United States Attorneys, who operate at the direction and under the supervision of the Attorney General and exercise significant prosecutorial and policymaking power. *See Seila Law LLC v. CFPB*, 591 U.S. 197, 218 (2020) (explaining a removal restriction might be appropriate "for inferior officers with limited duties and no policymaking or administrative authority"). The real separation of powers violation in this case would be to force the President and Attorney General to permit a judicially appointed United States Attorney to remain in office despite their stated preference for someone else to lead that office.

Finally, and dispositively, even were Ms. Habba's ability to serve as Acting United States Attorney in doubt, there still would be no basis to dismiss the indictment or bar her or the Assistant U.S. Attorneys assigned to this case from supervising or prosecuting it. At minimum, the Attorney General validly appointed Ms. Habba as a Special Attorney under 28 U.S.C. § 515 and directed her to supervise the USAO-NJ. Whether or not Ms. Habba technically qualifies as Acting United States Attorney, the Attorney General has validly delegated to her the authority to supervise all pending prosecutions and other matters in the USAO-NJ, subject in turn to the supervision by the Attorney General and Deputy Attorney General, both of whom are Senate-confirmed. Similarly, the Assistant U.S. Attorneys assigned to those matters exercise the Attorney General's delegated authority subject to her supervision. And there is no basis in any event to disqualify the entire USAO-NJ from those matters.

A.    **Ms. Habba is validly serving as the Acting United States Attorney under the FVRA.**

Under the FVRA, when an Executive Branch office subject to Presidential appointment and Senate confirmation (a "PAS" office) becomes vacant due to the resignation of the incumbent officeholder, the office may be temporarily filled on an acting basis. *See* 5 U.S.C. § 3345(a). There is no dispute that the office of the United States Attorney for the District of New

Jersey is a PAS office, *see* 28 U.S.C. § 541, and that it is vacant. Accordingly, the FVRA permits the Executive Branch to temporarily fill that office.

Section 3345(a) identifies three categories of individuals who may fill a vacant office without having been nominated to that office by the President and confirmed by the Senate. The President may designate another PAS officer, or certain other agency officers or employees, to fill the office. 5 U.S.C. § 3345(a)(2)–(3). If the President does not make such a selection, the "first assistant to the office" shall, by default, "perform the functions and duties of the office temporarily in an acting capacity," subject to statutory time limits. § 3345(a)(1).

That default provision is at issue here. As explained, Ms. Habba resigned her interim position as United States Attorney on July 24, 2025, more than one day before her term was set to expire. Exhibit D. The same day, pursuant to 28 U.S.C. §§ 509, 510, 515 and 542, the Attorney General appointed Ms. Habba as a Special Attorney and designated her as the First Assistant—a position that had itself been vacant since July 22, 2025. Exhibits C, F–G. That vacancy resulted from the Attorney General's lawful exercise of her authority to "remov[e]" "[e]ach assistant United States attorney[.]" 28 U.S.C. § 542(b). The Attorney General designated Ms. Habba to fill that vacancy by exercising her authority "to appoint one or more assistant United States attorneys in any district when the public interest so

– 11 –

requires." *Id.* § 542(a). Having been lawfully designated as the First Assistant, Ms. Habba was then entitled to "perform the functions and duties of the office" of United States Attorney "in an acting capacity," subject to the time limits of the FVRA. 5 U.S.C. § 3345(a)(1).

Notwithstanding that straightforward statutory authorization, Giraud argues that Ms. Habba cannot perform the duties of the United States Attorney in an acting capacity because she is barred from serving in that role under another provision of the FVRA. He cites 5 U.S.C. § 3345(b)(1), which precludes an otherwise-qualified individual from serving as an acting officer under subsection (a)(1) if (i) she did not serve as the first assistant for at least 90 days within the year preceding the vacancy, and (ii) "the President submits a nomination of such person to the Senate for appointment to such office." 5 U.S.C. § 3345(b)(1)(A)–(B). Although Ms. Habba did not previously serve as the First Assistant, she is not subject to § 3345(b)(1)'s bar because she is not presently nominated to serve as United States Attorney in a permanent capacity (and was not even so nominated at the time of her appointment as First Assistant).

The purpose of subsection (b)(1) is to prevent the President from circumventing the Senate's advice-and-consent function by installing a pending nominee for an office on an acting basis before the Senate can act on the nomination. *See NLRB v. SW General, Inc.*, 580 U.S. 288, 295–96 (2017)

(tracing history of provision). Accordingly, "if a first assistant is serving as an acting officer under [subsection (a)(1)], he must cease that service if the President nominates him to fill the vacant PAS office," or else withdraw from nomination. *Id.* at 301; *see Hooks v. Kitsap Tenant Support Servs., Inc.*, 816 F.3d 550, 558 (9th Cir. 2016) ("Subsection (b)(1) thus precludes someone from continuing to serve as an acting officer after being nominated to the permanent position, unless he or she had been the first assistant for ninety days of the prior year.").

Subsection (b)(1) therefore presupposes a current nomination to an office that is pending before the Senate. Nothing in the FVRA, however, suggests that the mere fact of a past nomination for an office—withdrawn by the President and never considered or acted upon by the Senate—forever bars an individual from serving in that capacity on an acting basis. The statute precludes a person from serving as an acting officer once "the President ***submits*** a nomination of such person to the Senate for appointment to such office," 5 U.S.C. 3345(b)(1)(B) (emphasis added); it does not say that the person is barred from such service if the President ever submitted a nomination in the past, or continues to be barred once a nomination is withdrawn. *See, e.g.*, *Dole Food Co. v. Patrickson*, 538 U.S. 468, 478 (2003) (explaining that a statutory provision "expressed in the present tense" requires consideration of status at the time of the regulated action, not

before); *Nichols v. United States*, 578 U.S. 104, 110 (2016) (same).   Indeed, a lifetime ban of that sort would have no logical relationship to the distinct separation-of-powers problem that Congress sought to address in subsection (b)(1): Congress's desire to protect its ability to consider and act upon a pending nomination for an office can hardly be served if no nomination is pending.

Accordingly, subsection (b)(1) has no bearing here. Ms. Habba was, at one point, the President's nominee to serve as United States Attorney for the District of New Jersey. The President withdrew that nomination, and the Senate never acted on it—all before Ms. Habba ever became the USAO-NJ's First Assistant. Ms. Habba is not now—and, throughout her service as First Assistant and Acting United States Attorney, never has been—the United States Attorney nominee. The FVRA therefore permits her to "perform the functions and duties of the office" of United States Attorney "in an acting capacity" for as long as she serves as First Assistant, until the statutory time limits expire or a permanent officeholder is nominated and confirmed. 5 U.S.C. § 3345(a)(1).

## B.    Section 546(d) Does Not Displace the FVRA, and a Judicial Appointment under § 546(d) Is Not Authorized Where A Prior Attorney General Appointment Did Not Expire After 120 Days.

Nor does 28 U.S.C. § 546, which provides for appointment of interim United States Attorneys—trump the FVRA—not generally and especially not here. Rather, those statutes provide alternative, non-mutually exclusive methods for filling a PAS vacancy on a temporary basis. Indeed, that is particularly clear here because no one disputes that a former First Assistant U.S. Attorney validly served as the Acting U.S. Attorney from December 2024 to March 2025.   Nothing then required the Attorney General to immediately invoke § 546 and appoint an interim U.S. Attorney instead, and nothing now prevents the Attorney General and the President from ceasing to invoke § 546 and instead relying upon the FVRA once more.

Section 3347(a) of the FVRA, the Act's "exclusivity" provision, explains how the FVRA interacts with agency-specific statutes. It is the "exclusive means for temporarily authorizing an acting official" to serve in a position otherwise subject to the advice and consent of the Senate "unless ... a statutory provision expressly ... designates an officer or employee to perform the functions and duties of a specified office temporarily in an acting capacity." 5 U.S.C. § 3347(a). When another statutory provision provides a different way of temporarily filling the vacancy in question, the FVRA no

longer is the "exclusive" means of filling that vacancy. But critically, it still is an available means, unless the other statute expressly displaces the FVRA. A contrary reading would invert the meaning of the FVRA's exclusivity provision, transforming it from a rule about when the FVRA is exclusive of other statutes into one about when other statutes are exclusive of the FVRA.

Take, for example, 28 U.S.C. § 508 (the AG Act). Under that Act, "[i]n case of a vacancy in the office of Attorney General, or of his absence or disability, the Deputy Attorney General may exercise all the duties of that office, and for the purpose" of the FVRA's first assistant default rule, "the Deputy Attorney General is the first assistant to the Attorney General." *Id.* § 508(a). The AG Act then provides a further order of succession: "When by reason of absence, disability, or vacancy in office, neither the Attorney General nor the Deputy Attorney General is available to exercise the duties of the office of Attorney General, the Associate Attorney General shall act as Attorney General," and "[t]he Attorney General may designate the Solicitor General and the Assistant Attorneys General, in further order of succession, to act as Attorney General." *Id.* § 508(b).

But that does not make the most senior of those officers, if available, the ***only*** person who can temporarily fill a vacancy in the office of the Attorney General. To the contrary, the President can temporarily fill that vacancy using the FVRA's other options: 5 U.S.C. § 3345(a)(2) or (a)(3). *See*

*United States v. Smith*, 962 F.3d 755, 763 n.1 (4th Cir. 2020) (Wilkinson, J.) (rejecting statutory challenge to use of one of the FRVA's alterative options to designate an Acting AG); *Guedes v. Burea of Alcohol, Tobacco, Firearms & Explosives*, 356 F. Supp. 3d 109, 121, 138–144 (D.D.C.) (same), *aff'd on other grounds*, 920 F.3d 1 (D.C. Cir. 2019); *cf. United States v. Castillo*, 772 F. App'x 11, 13 (3d Cir. 2019) (non-precedential) ("More tellingly, in the time since Whitaker's designation, other courts have been asked to address the validity of his designation and have, thus far, uniformly concluded that it was proper."). "The plain text and structure of both statutes … demonstrate that they were intended to coexist: the AG Act provides a line of succession, and the FVRA gives the President discretion to depart from that line, subject to certain limitations[.]" *Guedes*, 356 F. Supp. 3d at 121.

So, too, with § 546. It provides that, with one condition, "the Attorney General ***may*** appoint a United States attorney for the district in which the office of United States attorney is vacant." 28 U.S.C. § 546(a) (emphasis added). But "'may' does not mean 'must.'" *Lichtenstein v. University of Pittsburgh Med. Ctr.*, 691 F.3d 294, 305 (3d Cir. 2012) (interpreting 29 C.F.R. § 825.303(b)). When the Attorney General previously chose to invoke § 546, she abided by the sole condition: she did not appoint "as United States attorney" someone "whose appointment by the President to that office the Senate refused to give advice and consent," § 548(b). Indeed, the President

– 17 –

had not even nominated Ms. Habba when the Attorney General appointed her under § 546(a). And more importantly for present purposes, the Attorney General has now chosen to exercise her discretion to cease invoking § 546 and resume reliance on the FVRA instead.

The FVRA's structure confirms that 5 U.S.C. § 3347 does not render the FVRA inapplicable in the face of an agency-specific vacancy statute like § 546. Congress addressed the inapplicability of the FVRA elsewhere in the statute. Section 3345 applies in general to vacancies in an "Executive agency." 5 U.S.C. § 3345(a); *see also* 5 U.S.C. § 105 (defining "Executive agency" to include any "Executive department," such as the Department of Justice). In a separate provision, entitled "Exclusion of certain officers," Congress qualified the scope of the statute by providing that "Section[] 3345 ... shall not apply" to certain specified officers in certain specified agencies. 5 U.S.C. § 3349c. United States Attorneys are not among the officers excluded from coverage under the FVRA by Section 3349c. *See id.*

Given the FVRA's text and structure, it comes as no surprise that the only Circuits to have resolved the question in precedential opinions have concluded that office-specific vacancy statutes do not displace the President's FVRA authority. In *Hooks v. Kitsap Tenant Support Servs., Inc.*, 816 F.3d 550 (9th Cir. 2016), the Ninth Circuit rejected the argument that the FVRA was inapplicable where an agency-specific statute "expressly provide[d] a means

for filling" the vacancy in question. *Id.* at 556 (discussing 29 U.S.C. § 153(d)). The "text of the respective statutes" "belied" any such argument. *Id.* at 555. The existence of an agency-specific statute means only that "neither the FVRA nor the [agency-specific statute] is the *exclusive* means of appointing" an acting officer, and "the President is permitted to elect between these two statutory alternatives." *Id.* at 556.

Likewise, in *United States v. Smith*, the Fourth Circuit held that § 508 did not displace the President's authority to designate Matthew Whitaker as Acting Attorney General under the FVRA. 962 F.3d at 763 n.1. Given § 347(a), the Fourth Circuit explained that "agency-specific succession statutes (like the AG Act) ordinarily supply an alternative to the FVRA, but not a mutually exclusive one, absent clear text to the contrary." *Id.* at 763 n.1. "After all, when Congress wants the FVRA not to apply, it says so." *Id.* (citing as examples 5 U.S.C. § 3349c and 6 U.S.C. § 113(g)). "But the AG Act offers no hint that Congress tried to displace the FVRA; in fact, every indication points the other way." *Id.*

Nor does it matter that the District Judges in the District of New Jersey designated someone else to be United States Attorney in lieu of Ms. Habba upon the completion of her 120-day term. The provision that allows a court to appoint an interim United States Attorney, 28 U.S.C. § 546(d), applies only "[i]f an appointment expires under subjection (c)(2)." In other

– 19 –

words, it applies only when (1) the Attorney General's own appointment of an interim United States Attorney has expired and (2) the office of United States Attorney remains vacant after that 120-day period has ended. *Colon v. United States Attorney for the District of Puerto Rico*, 576 F.2d 1, 6–7 (1st Cir. 1978). Here, Ms. Habba resigned her interim position as United States Attorney **before** her 120-day term expired. So the court had no authority to purport to appoint an interim United States Attorney—something the very terms of Standing Order 2025-03 appears to have recognized. Rather, the President through the Attorney General filled the vacancy under FVRA by withdrawing Ms. Habba's nomination to that office and naming her as the First Assistant instead. And in all events, as discussed next, the President validly removed the individual purportedly appointed by the New Jersey District Court.

### C.    The President Can Remove at Will Any United States Attorney, No Matter How They Take Office, and His Actions Here Do Not Violate the Appointments Clause.

Far from violating the separation of powers by encroaching upon a core Article III function, Ms. Habba's appointment as Special Attorney and First Assistant and her corresponding service as Acting United States Attorney protect a core Executive Branch function. "Investigative and prosecutorial decisionmaking is the special province of the Executive Branch, and the Constitution vests the entirety of the executive power in the President, Art.

II, § 1." *Trump v. United States*, 603 U.S. 593, 620 (2024) (cleaned up).

Moreover, "the Attorney General, as head of the Justice Department, acts as

the President's chief law enforcement officer who provides vital assistance to

[him] in the performance of [his] constitutional duty to preserve, protect, and

defend the Constitution." *Id.* (cleaned up). Congress could not constitutionally

restrict the President's ability to remove even confirmed United States

Attorneys because those officers neither have "limited jurisdiction" nor lack

"policymaking or significant administrative authority." *Seila Law*, 591 U.S.

at 218 (cleaned up).

Recognizing the important constitutional role reserved to the Executive

Branch, 28 U.S.C. § 541(a) vests the President with the power to appoint

United States Attorneys, and § 541(c) ensures that "[e]ach United States

attorney is subject to removal by the President." That "each" in § 541(c)

matters. It necessarily includes every United States Attorney, whether

appointed by the President and confirmed by the Senate or appointed on an

interim basis under § 546. Under § 541(c), for example, "the President may

override the judges' decision and remove an interim United States Attorney"

whom judges have appointed under § 546(d). *Hilario*, 218 F.3d at 27.

Exercising that statutory and Article II authority in this case, the President

has made clear that he will not permit anyone other than Ms. Habba to fill

the current vacancy in the office of the United States Attorney on a temporary basis. That is his prerogative; this Court cannot second-guess it.

Nor is the Appointments Clause at issue here. U.S. Const. Art. II, § 2, cl. 2. "That clause divides all constitutional officers into two classes: 'inferior officers' and 'noninferior officers'" (called "'principal officers'"). *Smith*, 962 F.3d at 763. "Principal officers must be appointed by the President with the advice and consent of the Senate." *Id.*; *see Edmond v. United States*, 520 U.S. 651, 660 (1997). "Inferior officers may be appointed in the same manner, but doing so is not constitutionally required." *Smith*, 962 F.3d at 763. "Instead, should it so choose, Congress may authorize the President alone [or the Head of a Department] to appoint inferior officers without the advice and consent of the Senate." *Id.*; *see* U.S. Const. Art. II, § 2, cl. 2.

Ms. Habba is an inferior officer for two reasons. First, United States Attorneys are themselves inferior officers. *See, e.g.*, *Hilario*, 218 F.3d at 24–36 (explaining why); *United States v. Gantt*, l94 F.3d 987, 999–1000 (9th Cir. 1999) (same), *overruled on other grounds by United States v. W.R. Grace*, 526 F.3d 499, 506 (9th Cir. 2008) (en banc). That necessarily means interim United States Attorneys and Acting United States Attorneys are inferior officers, too. *See, e.g.*, *Hilario*, 218 F.3d at 36. But even were that not so, an Acting United States Attorney "under the FVRA is 'only charged with the performance of the duty of the superior for a limited time and under special

– 22 –

and temporary conditions,'" which makes Ms. Habba "an inferior officer under" binding Supreme Court precedent. *Smith*, 962 F.3d at 764 (quoting *United States v. Eaton*, 169 U.S. 331, 343 (1898)). Indeed, even "*acting* heads of departments"—such as an Acting Attorney General—"are not principal officers because of the temporary nature of the office." *Smith*, 962 F.3d at 764 (citing cases). Accordingly, it was valid for Congress to authorize the Attorney General, as Head of the Department of Justice, to appoint Ms. Habba as First Assistant U.S. Attorney and thereby make her Acting U.S. Attorney by virtue of the FVRA.

> **D.    Dismissal of Indictment or Disqualification of the Entire USAO-NJ Is Not Warranted in Any Event. Ms. Habba Can Supervise this Prosecution in Her Capacity as Special Attorney; the Assigned Assistant U.S. Attorneys Can Continue Prosecuting the Case; and Disqualifying the USAO-NJ Would Flout a Wall of Precedent.**

Even were Ms. Habba not eligible to serve as the Acting U.S. Attorney, there would be no basis for dismissing this indictment or prohibiting everyone in the USAO-NJ from participating in this prosecution.

Although 28 U.S.C. § 547(1) does authorize the United States Attorney to "prosecute for all offenses against the United States" in her district, the authority to do so is not exclusive. All the functions of the United States Attorney, including the power to prosecute, are also vested in the Attorney General, 28 U.S.C. § 509, and the Attorney General has the power to

supervise and direct United States Attorneys and Assistant United States Attorneys in the discharge of their duties, 28 U.S.C. §§ 510, 515, 519. In particular, the Attorney General may "specifically direct[]" any DOJ officer or other "attorney specially appointed" by her to "conduct any kind of legal proceeding … which United States attorneys are authorized by law to conduct." 28 U.S.C. § 515(a). Accordingly, even if there is **no** United States Attorney—confirmed, interim, acting, or otherwise—the Attorney General may just specifically direct DOJ attorneys to conduct the work of the USAO and supervise how they do so. And that is precisely what she has done here.

In particular, Ms. Habba is at a minimum authorized to supervise this case because the Attorney General validly appointed her as a Special Attorney under 28 U.S.C. § 515 and directly delegated to her the authority to supervise all pending prosecutions and other matters in the USAO-NJ. Specifically, acting pursuant to 28 U.S.C. §§ 509, 510, 515 and 542, the Attorney General appointed Ms. Habba as a Special Attorney to the United States Attorney General and designated her as First Assistant United States Attorney for the District of New Jersey. Exhibits E, G. The Attorney General expressly authorized Ms. Habba to "conduct in the District of New Jersey, any kind of legal proceedings, civil or criminal . . . which United States Attorneys are authorized to conduct." Exhibit E. In this role, Ms. Habba is subject to the supervision by the Attorney General and Deputy Attorney

General, both of whom are Senate-confirmed. *See, e.g.*, Exhibit E. Accordingly, regardless of whether Ms. Habba technically qualifies as Acting United States Attorney, she could supervise this case pursuant to her direct delegation of authority from the Attorney General.[2]

Likewise, the Assistant U.S. Attorneys assigned to this case can continue prosecuting it because they also derive their power to prosecute directly from the Attorney General, and do not depend solely on a delegation of authority to them by the United States Attorney. Although United States Attorneys lack express statutory authority to appoint Assistant United States Attorneys, the Attorney General has that authority—and authority to remove them, too. 28 U.S.C. § 542(a) ("The Attorney General may appoint one or more assistant United States attorneys in any district where the public interest so requires."); *id* § 542(b) ("Each Assistant United States attorney is subject to removal by the Attorney General.").

For that very reason, courts have repeatedly recognized that:

> Assistant United States Attorneys derive their power to prosecute directly from the Attorney General, not from a United States Attorney. While United States Attorneys supervise and direct the Assistant United States Attorneys assigned to their offices, it does not follow that Assistant United States Attorneys lack the power to prosecute in the absence of a duly-appointed United States Attorney. Indeed, in the

---

[2] Nor would the FVRA preclude any United States Attorney who succeeds Ms. Habba from ratifying virtually any action she took in supervising this case or any other matter in the USAO-NJ. *See Kajmowicz v. Whitaker*, 42 F.4th 138 (3d Cir. 2022).

event of a vacancy in the office of the United States Attorney, Assistant United States Attorneys retain prosecutorial authority, as originally delegated to them by the Attorney General, subject to the supervision of the Attorney General and the Department of Justice.

*Baldwin,* 541 F. Supp. 2d at 1196 (citing 28 U.S.C. §§ 519, 542(a)). The First Circuit has likewise concluded that Assistant U.S. Attorneys' ability to act does not hinge on the authority of the local United States Attorney, but derives from the Attorney General's plenary power over litigation to which the United States is a party, *see* [28 U.S.C.] § 516." *Hilario.* 218 F.3d at 22.

Pursuant to that authority, the assigned Assistant U.S. Attorneys can continue to prosecute this case—which was initiated by a validly empaneled grand jury and a Senate-confirmed U.S. Attorney, *supra* at 4—under their own delegated authority from the Attorney General, subject to supervision by both Ms. Habba and Senate-confirmed officials in Main Justice, including the Attorney General and the Deputy Attorney General.

Therefore, even were Ms. Habba not eligible to serve as the Acting U.S. Attorney, "this Court could not dismiss the indictment on that basis." *United States v. Young*, 541 F. Supp. 2d 1226, 1235 (D.N.M. 2008); *see United States v. Ruiz Rijo*, 87 F. Supp. 2d 69, 71 (D.P.R. 2000) ("Even assuming that the United States Attorney's appointment is invalid, defendant's remedy would not be the dismissal of his indictment, for the appointment does not affect

defendant's basic constitutional rights."), *aff'd sub nom. United States v. Valdez-Santana*, 279 F.3d 143 (1st Cir. 2002).

Moreover, the Girauds' sweeping attempt to disqualify the entire USAO-NJ plainly fails. "[E]very circuit court that has reviewed an officewide disqualification has reversed." *United States v. Williams*, 68 F.4th 564, 572 (9th Cir. 2023) (reversing officewide disqualification); *see United States v. Bolden*, 353 F.3d 870 (10th Cir. 2003) (same); *United States v. Whittaker*, 268 F.3d 185 (3d Cir. 2001) (same); *United States v. Vlahos*, 33 F.3d 758 (7th Cir. 1994) (same); *United States v. Caggiano*, 660 F.2d 184 (6th Cir. 1981) (same); *cf. United States v. Shah*, 43 F.4th 356, 360, 362–64 (3d Cir. 2022) (affirming denial of similar motion).

Because "disqualifying government attorneys implicates separation of powers issues, the generally accepted remedy is to disqualify a specific" prosecutor, "not all the attorneys in the office." *Bolden*, 353 F.3d at 879 (cleaned up). And here, the defendants cannot justify disqualifying any prosecutor who worked on this case, let alone every prosecutor in the USAO-NJ. *See United States v. Lingala*, 91 F.4th 685, 694–96 (3d Cir. 2024) (affirming denial of motion to disqualify prosecution team). "The disqualification of the government's counsel is a drastic measure"—one "a court should hesitate to impose . . . except where necessary." *Bolden*, 353 F.3d at 878 (cleaned up).

CONCLUSION

For all these reasons, this Court should deny the pending motion and request that Chief Judge Chagares reassign this case back to Judge Kiel.

Respectfully submitted,

PAMELA J. BONDI
U.S. Attorney General

CHAD MIZELLE
Chief of Staff
Office of the Attorney General

ROBERT A. PARKER
Criminal Division

ALINA HABBA
Acting United States Attorney

By:    Mark E. Coyne
       Assistant U.S. Attorney
       Chief, Appeals Division
       (973) 297-2002

Date: July 29, 2025

– 28 –

## CERTIFICATION OF SERVICE

I hereby certify that on July 29, 2025, I caused a copy of this response and its attachments to be served by the notice of electronic filing generated by this Court's electronic case filing system upon all counsel of record in this case.

Mark E. Coyne
Assistant U.S. Attorney
Chief, Appeals Division

Dated: July 29, 2025