**OFFICERS**
Joshua C. Gillette, *President*
Jason J. LeBoeuf, *President Elect*
Robert C. Scrivo, *Vice President/Treasurer*
Adalgiza A. Nuñez, *Vice President*
Laura K. Gasiorowski, *Vice President*
Lorraine Gauli-Rufo, *Secretary*

**TRUSTEES**
David J. Bruno
Kevin A. Buchan
Mary J. Ciancimino
Anne M. Collart
Lois A. DeJulio
Adam M. Elewa
Timothy S. Farrow
Eric W. Feinberg
Andrew Gimigliano
Daniella Gordon
Alissa D. Hascup
Charles Kennedy
Brian D. Kenney
Marissa Koblitz Kingman
Marco A. Laracca
Tamar Lerer
Howard P. Lesnik
Jeffrey S. Mandel
James H. Maynard
Joseph M. Mazraani
Dillon J. McGuire
Marjan Moussavian
Emeka Nkwuo
Michael R. Rosas
Joseph J. Russo
Jennifer N. Sellitti
Michael T. Simon
Rachel E. Simon
Remi L. Spencer
Stephen Turano

**PAST PRESIDENTS**
Jennifer Mara
Matthew S. Adams
Mark H. Friedman
Aidan P. O'Connor
Linda D. Foster
John A. Azzarello
Sharon Bittner Kean
Judith B. Fallon
Christopher D. Adams
Michael A. Baldassare
Joseph D. Rotella
Darren M. Gelber
Timothy M. Donohue
Leslie Stolbof Sinemus
William H. Buckman (1953-2014)
Donald A. DiGioia
John C. Whipple
Justin T. Loughry
Blair R. Zwillman
Robert S. Bonney, Jr.
John P. McDonald
Maria D. Noto
Richard S. Lehrich
Lawrence S. Lustberg
David A. Ruhnke
Hon. Barry T. Albin
Alan L. Zegas
Brian J. Neary
Hon. Cathy L. Waldor
Raymond F. Flood
Hon. Harvey Weissbard
Michael Critchley
Alan Silber
Carl D. Poplar
Miles R. Feinstein (1941-2023)
Raymond M. Brown
Edwin J. Jacobs
Justin P. Walder
Francis J. Hartman
Joseph A. Hayden, Jr.
Ginny Whipple-Berkner, *Executive Director*



**ACDL-NJ**
**Association of Criminal Defense Lawyers of New Jersey**

P.O. Box 180 • West Allenhurst, New Jersey • 07711
(732) 517-1533 • Fax (732) 531-0397 • www.acdlnj.org

July 30, 2025

Hon. Matthew W. Brann
Chief United States District Judge
United States District Court for the District of New Jersey (by designation)
Mitchell H. Cohen Building & U.S. Courthouse
4th & Cooper Streets
Camden, NJ 08101

Re:   *United States v. Julien Giraud Jr.*, 1:24-cr-00768

Dear Chief Judge Brann:

    We write on behalf of the Association of Criminal Defense Lawyers of New Jersey ("ACDL-NJ"). This Court's ruling on the Defendant's motion will directly impact hundreds of other defendants whose cases are currently pending in the District of New Jersey. We therefore respectfully request that the ACDL-NJ be granted leave to participate as *amicus curiae* on the issues pending before the Court.

    Courts should grant a motion for leave to file an *amicus* brief when (1) the movant has an "adequate interest" and (2) the proposed participation is "desirable" and "relevant to the disposition of the case." *Neonatology Assocs., P.A. v. C.I.R.*, 293 F.3d 128, 131 (3d Cir. 2002) (Alito, J.) (citing Fed. R. App. P. 29(a)). These requirements should be "broadly interpreted" to allow leave to file *amicus* briefs unless "it is obvious" that the requirements are not met. *Id.* at 133. It is "preferable to err on the side of granting leave." *Id.* District courts in New Jersey follow these guidelines. *See, e.g., United States v. Alkaabi*, 223 F. Supp. 2d 583, 592 (D.N.J. 2002); *see also Pa. State Univ. v. Vintage Brand, LLC*, Case No. 4:21-cv-01091-MWB (Brann, C.J.), ECF 177 (Aug. 8, 2024 Order granting leave to file *amicus* brief).

**TRUSTEES EMERITI**
Matthew P. Boylan (1932-2009) • Raymond A. Brown (1915-2009) • S.M. Chris Franzblau • Richard L. Friedman
M. W. Pinsky • Michael A. Querques (1929-2013) • Theodore V. Wells, Jr. • Warren W. Wilentz (1924-2010)

Hon. Matthew W. Brann
Page 2

The ACDL-NJ easily satisfies this standard. Founded in 1984, it is the primary organized voice of the New Jersey criminal defense bar, with more than 500 members practicing daily in New Jersey's criminal courts. Because of its expertise, the ACDL-NJ has repeatedly been granted leave to appear as *amicus curiae* in significant criminal cases.[1] Our members collectively represent hundreds of defendants in the District of New Jersey whose cases will be directly affected by the Court's ruling.

Our members and their clients have a critical interest in this matter because the government has staked out an extreme position: that even if Ms. Habba's appointment is invalid under the Constitution or federal statutes, she nonetheless has unfettered power to continue to "supervise" every single one of the hundreds of cases pending in the United States Attorney's Office for the District of New Jersey. *See* ECF 108 at 10 ("Whether or not Ms. Habba technically qualifies as Acting United States Attorney, the Attorney General has validly delegated to her the authority to supervise all pending prosecutions and other matters in the USAO-NJ").

The ACDL-NJ's participation would not duplicate the parties' arguments. The government's position—that Ms. Habba may continue to supervise every pending matter even if her appointment is unlawful—has District-wide consequences for criminal defendants beyond Mr. Giraud, and neither that wider interest nor those defendants themselves are otherwise represented. The ACDL-NJ's submission would address the broader issues and the significant impact this Court's decision will have regardless of how narrowly drawn it may be.

This Court noted that "there is precedent to suggest that validly appointed Assistant United States Attorneys may continue with a prosecution notwithstanding questions about the legality of their superiors' appointments" (ECF 111 at 2 & n.4). However, that precedent addressed whether already-completed steps such as an indictment or conviction at trial required dismissal based on an alleged appointment

---

[1] *See, e.g., United States v. Lowson*, 2010 U.S. Dist. LEXIS 145647 (D.N.J. Oct. 12, 2010); *Taylor v. Oney*, 196 F. App'x 126 (3d Cir. 2006); *United States v. Pretlow*, 779 F. Supp. 758 (D.N.J. 1991); *United States v. Torres*, 926 F.2d 321, 322 (3d Cir. 1991); *M.A. v. J.H.M.*, 260 N.J. 522 (2025); *State v. Higginbotham*, 257 N.J. 260 (2024); *State v. Bullock*, 253 N.J. 512 (2023); *see generally* https://www.acdlnj.org/what-acdl-nj-does/amicus.

Hon. Matthew W. Brann
Page 3

defect in the past.² Those decisions did not confront—and therefore did not resolve—the distinct question whether an ineligible "Acting" U.S. Attorney may nevertheless continue to *supervise* all prosecutions. Here, by contrast, the government asks the Court to authorize Ms. Habba going forward to continue supervising every pending matter in the District even if doing so creates an ongoing statutory or constitutional violation.

Indeed, if Ms. Habba does not "technically qualif[y] as Acting United States Attorney" (ECF 108 at 10), then it is unlawful for her to perform the duties of Acting United States Attorney, which indisputably include "supervising" every pending case. The U.S. Supreme Court expressly so held in *NLRB v. SW General, Inc.*, 580 U.S. 288 (2017) (which the Government mentions only in passing, ECF 108 at 12-13). There, the Supreme Court held that "Subsection (b)(1) *prohibit[s]* any person who has been nominated to fill any vacant office *from performing that office's duties in an acting capacity*." *SW General*, 580 U.S. at 304 (emphasis added).

The government's claim that 5 U.S.C. § 3345(b)(1)(B) does not render Ms. Habba ineligible requires more specific analysis than has been presented to this Court given the understandably expedited timeline thus far. That claim bears directly on the issue of remedy, because the government is wrong: Subsection (b)(1) *does* disqualify Ms. Habba because she "has been nominated," and therefore "Subsection (b)(1) prohibit[s]" her "from performing that office's duties in an acting capacity." *SW General*, 580 U.S. at 304. Thus, *SW General* squarely forecloses the Government's radical claim that even if Ms. Habba's performing the U.S. Attorney's duties in an acting capacity violates the law, the Government may continue that ongoing violation by keeping Ms. Habba in supervisory control of all USAO-NJ

---

² *United States v. Ruiz Rijo*, 87 F. Supp. 2d 69, 72–74 (D.P.R. 2000) (declining to dismiss indictment even if U.S. Attorney's appointment was invalid); *United States v. Hilario*, 218 F.3d 19, 29 & n.6 (1st Cir. 2000) (finding no defect in interim U.S. Attorney's appointment but stating "we need not reach" the Government's argument that "even if Gil does not lawfully hold office, the district court nonetheless erred in dismissing the indictment"); *United States v. Gantt*, 194 F.3d 987, 998–1000 (9th Cir. 1999) (finding no defect in interim U.S. Attorney's appointment that would invalidate certification under 18 U.S.C. § 3731, but holding that "if the United States Attorney's appointment is invalid, then her delegation [of § 3731 certification to a subordinate] is similarly invalid" because "§ 3731 specifically requires certification by 'the United States Attorney' … Following the modern trend we choose not to ratify the actions of an improperly appointed officer of the United States … If the United States Attorney has not been validly appointed, the government has taken this appeal in violation of § 3731"); *United States v. Suescun*, 237 F.3d 1284, 1287–89 (11th Cir. 2001) (even if appointment as temporary United States Attorney was invalid under Appointments Clause, it did not deprive district court of jurisdiction to entertain case and adjudicate defendant guilty at jury trial).

Hon. Matthew W. Brann
Page 4

matters. All of this should receive more thorough analysis that cannot be presented under the present timeline.

Accordingly, whether or not the Indictment in this case should be dismissed, there may well be other remedies to which this and other defendants in the District of New Jersey are entitled, such as preventing Ms. Habba from supervising their cases in any manner, from obtaining new indictments, and other actions. That broader remedial question affects all defendants in the District, not only Mr. Giraud. And as the Court recognized, that remedial question "may be inextricably bound up with the extent of the statutory or constitutional violation, if any" (ECF 111 at 3), and necessarily implicates the merits.

Subject to Mr. Giraud's approval, the ACDL-NJ requests that the Court adjourn the trial until these matters of far-reaching public importance (which will affect hundreds of individuals whose liberty is at stake for years to come) can be fully analyzed and briefed for the Court by stakeholders such as the ACDL-NJ and individuals with expertise in the nuanced issues of first impression presented.

For these reasons, we respectfully request that the Court (1) not decide the broader remedial question affecting all defendants without full briefing, and (2) permit ACDL-NJ to participate as *amicus curiae* if and when the Court reaches the merits.

Respectfully submitted,

Joshua C. Gillette
President, ACDL-NJ
jgillette@acdlnj.org

cc:   All Counsel of Record (via ECF)