## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 1:24-CR-00768 |
| v. | (Chief Judge Brann)[*] |
| JULIEN GIRAUD JR., and JULIEN GIRAUD III, | |
| Defendants. | |

## MEMORANDUM OPINION

### AUGUST 1, 2025

Julien Giraud Jr. and Julien Giraud III ("the Girauds"), defendants in this criminal case, moved to dismiss the indictment or in the alternative to bar Acting United States Attorney for the District of New Jersey Alina Habba—and any Assistant United States Attorney acting at her direction—from prosecuting their case. They contend that Ms. Habba was illegally appointed to the position of Acting United States Attorney in violation of the Federal Vacancy Reform Act,[1] 28 U.S.C. § 546(d), the Appointments Clause of the Constitution, and the Due Process Clause of the Constitution. The Girauds are not entitled to dismissal of their case, but, if they are correct on the merits, the injunctive relief they seek appears appropriate. Accordingly, the motion to dismiss is denied in part and deferred in part. The Court

---

[*]    The Honorable Matthew W. Brann, Chief United States District Judge for the Middle District of Pennsylvania, sitting by designation.

[1]    5 U.S.C. § 3345.

will consider additional argument regarding the legality of Ms. Habba's appointment.

## I.    BACKGROUND

On November 21, 2024, a federal Grand Jury in the District of New Jersey returned a three-count indictment charging the Girauds with drug and firearm offenses.[2] That indictment was signed by then-United States Attorney for the District of New Jersey Philip R. Sellinger.[3] Mr. Sellinger was nominated for the United States Attorney role by former-President Joseph R. Biden, Jr. and confirmed to that position by the United States Senate by voice vote.[4]

The Girauds' case proceeded apace through the transition period between the administrations of former-President Biden and President Donald J. Trump and was scheduled for a jury trial to begin on Monday, August 4, 2025.[5] However, a parallel chain of events has raised questions about whether that prosecution can continue.

As is standard practice, Mr. Sellinger resigned from the United States Attorney position at the end of Mr. Biden's term to make way for the Trump Administration's nominee.[6] Upon Mr. Sellinger's resignation, First Assistant United

---

[2] Doc. 54 (Indictment) (charging violations of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 924(c)(1)(A)(i).

[3] *Id.* at 6.

[4] Nomination of Philip R. Sellinger for Department of Justice, 117th Congress (2021-2022), PN1301, 117th Cong. (2021), https://www.congress.gov/nomination/117th-congress/1301.

[5] Doc. 77 (Am. Scheduling Order).

[6] Press Release, *U.S. Attorney Philip R. Sellinger Announces His Resignation*, U.S. Attorney's Office for the District of New Jersey (Dec. 23, 2024), https://www.justice.gov/usao-nj/pr/us-attorney-philip-r-sellinger-announces-his-resignation (announcing resignation to take effect "at 11:59 p.m., Jan. 8, 2025"); *see* Doc. 115 (Correction Letter).

States Attorney Vikas Khanna became Acting United States Attorney pursuant to the Federal Vacancies Reform Act ("FVRA").[7] Mr. Khanna continued in the Acting role until March 3, 2025, when the Trump Administration appointed John Giordano to be Interim United States Attorney pursuant to 28 U.S.C. § 546(a)'s vacancy provisions.[8] Mr. Giordano held that role for approximately three weeks. On March 24, 2025, President Trump posted to his social media website, Truth Social, that "Alina Habba . . . will be our interim U.S. Attorney for the District of New Jersey . . . effective immediately," while Mr. Giordano "will now be nominated as the new Ambassador to Namibia."[9] The Government now represents that Ms. Habba's appointment was not "effective immediately." Instead, she was formally sworn in to the Interim position by Attorney General Pamela Bondi pursuant to section 546(a) on March 28, 2025.[10]

Interim appointments under section 546 are time limited. The statute provides that "[a] person appointed as United States attorney under this section may serve until the earlier of" the Senate's confirmation of the President's nominee to the full position, or "the expiration of 120 days after appointment by the Attorney General

---

[7]    *Id.*; *see* 5 U.S.C. § 3345(a)(1).
[8]    Press Release, *John Giordano Sworn In As 64th U.S. Attorney For District Of New Jersey*, U.S. Attorney's Office for the District of New Jersey (March 5, 2025), https://www.justice.gov/usao-nj/pr/john-giordano-sworn-64th-us-attorney-district-new-jersey (announcing that Mr. Giordano was sworn in on March 3, 2025).
[9]    Donald J. Trump (@realDonaldTrump), Truth Social (March 24, 2025, 10:37 AM), https://truthsocial.com/@realDonaldTrump/posts/114217913229258108.
[10]   Doc. 108-1 (Order of Appointment).

under this section."[11] For Ms. Habba, that meant that her term ended, at the latest, on Saturday, July 26, 2025.[12]

On June 30, 2025, with about one month remaining in her interim appointment, President Trump formally nominated Ms. Habba to be the United States Attorney.[13] But the Senate did not act, and the 120-day deadline grew nearer.

On July 22, 2025—120 days from March 24, 2025, when President Trump posted that Ms. Habba had been appointed "effective immediately"—the Judges of the United States District Court for the District of New Jersey invoked their statutory power to appoint a United States Attorney upon the expiration of an Interim United States Attorney's 120-day term pursuant to section 546(d).[14] The court issued a Standing Order appointing Desiree Grace (Ms. Habba's First Assistant) as the United States Attorney and, acknowledging the uncertainty regarding the commencement date of Ms. Habba's term as Interim United States Attorney (Ms. Bondi's Order appointing Ms. Habba does not appear to have been a matter of public record before this litigation), made that appointment effective "July 22, 2025 or 'upon the expiration of 120 days after appointment by the Attorney General' of the

---

[11]  28 U.S.C. § 546(c).

[12]  *See* Doc. 108-2 (Order Extending Appointment) (listing final date of 7/25/25).

[13]  Nomination of Alina Habba for Department of Justice, 119th Congress (2025-2026), PN379-12, 119th Cong. (2025), https://www.congress.gov/nomination/119th-congress/379/12.

[14]  28 U.S.C. § 546(d).

Interim U.S. Attorney Alina Habba, whichever is later."[15] Trump Administration officials were not pleased with that appointment.

Before the court issued its Standing Order, Deputy Attorney General Todd Blanche accused "[t]he district court judges in NJ [of] trying to force out [Ms. Habba] before her term expires at 11:59 p.m. Friday."[16] And after the Order was docketed, Ms. Bondi posted that "politically minded judges refused to allow [Habba] to continue in her position, replacing Alina with the First Assistant."[17] To counter those judges, Ms. Bondi stated that "the First Assistant United States Attorney in New Jersey"—Ms. Grace—"has just been removed."[18] Mr. Blanche affirmed Ms. Bondi's announcement and added that Ms. Grace's removal was "[p]ursuant to the President's authority."[19] It does appear that Ms. Grace was terminated from her position with the Department of Justice on July 22, 2025.[20] But that termination does not purport to come from President Trump, as Mr. Blanche suggested.[21]

Notwithstanding her termination from the Department of Justice, the next day, July 23, 2025, Ms. Grace posted that she intended to "follow that Order [of the

---

[15] *In re Appointment of United States Attorney for the District of New Jersey*, Standing Order 2025-03 (D.N.J. July 22, 2025).

[16] Todd Blanche (@DAGToddBlanche), X (July 22, 2025, 2:02 PM), https://x.com/DAGToddBlanche/status/1947718932908982301.

[17] Pam Bondi (@AGPamBondi), X (July 22, 2025, 5:18 PM), https://x.com/AGPamBondi/status/1947768353025556950.

[18] *Id.*

[19] Todd Blanche (@DAGToddBlanche), X (July 22, 2025, 5:19 PM), https://x.com/DAGToddBlanche/status/1947768601454514308.

[20] Doc. 108-3 (Termination Letter).

[21] *Id.*

District of New Jersey] and begin to serve in accordance with the law."[22] But Ms. Grace did not take a position on when her appointment was effective.

Trump Administration officials, knowing that Ms. Habba's term did not end until midnight on Friday, July 25, 2025, conceived a multi-step maneuver to keep her in the United States Attorney role. On July 24, 2025, the Administration made five moves. First, Ms. Habba's nomination to be the United States Attorney was withdrawn.[23] Second, Ms. Habba resigned from her position as Interim United States Attorney.[24] Third, Ms. Bondi appointed Ms. Habba as a "Special Attorney to the Attorney General" pursuant to 28 U.S.C. § 515 and "authorized [her] to conduct in the District of New Jersey, any kind of legal proceedings, civil or criminal, including Grand Jury proceedings and proceedings before United States Magistrates, which United States Attorneys are authorized to conduct."[25] Fourth, Ms. Bondi appointed Ms. Habba to the (vacant due to Ms. Grace's termination) position of First Assistant United States Attorney.[26] And fifth, Ms. Habba was automatically elevated to the position of Acting United States Attorney pursuant to the FVRA by virtue of her new role as First Assistant United States Attorney and the vacancy in the United

---

[22] Desiree Grace, LinkedIn (July 23, 2025), https://www.linkedin.com/posts/desiree-grace-78288115_it-has-been-the-honor-of-a-lifetime-to-represent-activity-7353908927010328576-ksOH?utm_source=li_share&utm_content=feedcontent&utm_medium=g_dt_web&utm_campaign=copy.

[23] Nomination of Alina Habba for Department of Justice, 119th Congress (2025-2026), PN379-12, 119th Cong. (2025), https://www.congress.gov/nomination/119th-congress/379/12 (the exact order of these events is not entirely clear).

[24] Doc. 108-4 (Resignation Letter).

[25] Docs. 108-5 & 108-6 (Appointment Letter).

[26] Doc. 108-7 (Appointment Letter).

States Attorney position that followed from her resignation—presumably moments earlier—from the Interim United States Attorney position.[27] Ms. Habba confirmed her view of the events that evening, posting "I am now the Acting United States Attorney for the District of New Jersey."[28]

Ms. Grace remained a loose end, given her express intent to accept her appointment by the District Court, so the Administration's last act was to nip that in the bud. On Saturday, July 26, 2025—the date when Ms. Grace's appointment would have become effective under sections 546(c) and (d)—Administration officials sent a letter and email to Ms. Grace informing her that her appointment had never become effective because Habba's term as Interim U.S. Attorney did not "expire" (she instead resigned and then became the Acting U.S. Attorney) and, just in case, stating that "the President of the United States has removed you from that office today, pursuant to his authority under 28 U.S.C. § 541(c) and Article II of the U.S. Constitution."[29]

Mr. Giraud Jr. filed his motion to dismiss the next day, Sunday, July 27, 2025, arguing that Ms. Habba's appointment to the Acting United States Attorney

---

[27] *See* Doc. 108 (Opp'n) at 6, 8 (citing 5 U.S.C. § 3345(a)(1)).

[28] Alina Habba (@USAttyHabba), X (July 24, 2025, 5:04 PM), https://x.com/USAttyHabba/status/1948489536507707793.

[29] Doc. 108-8 (Letter to Desiree Grace); *see* Doc. 108-9 (Email to Desiree Grace) (stating at 12:02 a.m. on Saturday, July 26, 2025, that "the President of the United States hereby removes you from office pursuant to his authority under 28 U.S.C. 541(c) and Article II of the Constitution.").

position was illegal,[30] and Mr. Giraud III moved to join in that motion on Monday, July 28, 2025.[31]

On Monday morning, July 28, 2025, the Honorable Edward S. Kiel, who was then presiding in this case, converted a previously scheduled motions hearing into a status conference and advised the parties that the trial and other pretrial proceedings would be stayed pending resolution of the motion to dismiss.[32] Shortly thereafter, the Honorable Michael A. Chagares, Chief Judge of the United States Court of Appeals for the Third Circuit, designated me for service in the District of New Jersey pursuant to 28 U.S.C. § 292(b) and reassigned this matter "and all related cases" to me.[33]

I ordered the Government to respond to the Girauds' motion by noon on Tuesday, July 29, 2025, and, after its brief was submitted, I held a joint status conference that afternoon to discuss the process for resolving the pending motion.[34] Following the conference, I ordered both sides to submit briefs on the "threshold" question of whether the Girauds were entitled to any relief assuming Ms. Habba's appointment was illegal.[35] Those briefs have since been submitted.[36]

---

[30] Doc. 99.
[31] Doc. 101 (Mot. for Joinder).
[32] Doc. 102 (Minute Entry).
[33] Doc. 103 (Designation Order).
[34] Doc. 110 (Minute Entry).
[35] Doc. 111 (Briefing Order).
[36] Doc. 113 (Giraud Threshold Brief); Doc. 114 (Gov't Threshold Brief).

The threshold question is now ripe for resolution; for the reasons that follow, the motion is DENIED IN PART and DEFERRED IN PART.

## II.    DISCUSSION

"[P]rinciples of constitutional avoidance and judicial restraint guide [the Court] not to consider" thorny constitutional or statutory questions when their resolution would not affect the relief available to the movant.[37] These values control "no matter how novel, significant, or interesting" the underlying question may be.[38] Applying them, courts considering FVRA and Appointments Clause challenges to the conduct of Government actors have avoided passing on the legality of the appointment when the result of that inquiry would not offer the movant any relief.[39]

Considering this precedent, I bifurcated briefing to determine whether the Girauds presented a valid case to reach the merits question of whether Ms. Habba's appointment was legal. I find this approach useful for two reasons. First, if no remedy is available, the Court can make that determination quickly and provide clarifying guidance for the District of New Jersey about how to manage cases in a similar posture to this one. Second, if a remedy is possible, the Court can refocus on the merits of Ms. Habba's appointment in a subsequent opinion after the benefit of

---

[37]  *Kajmowicz v. Whitaker*, 42 F.4th 138, 153 (3d Cir. 2022).
[38]  *Id.* at 154.
[39]  *Id.* at 147-50, 153; *United States v. Tafoya*, 541 F. Supp. 2d 1181, 1184 (D.N.M. 2008) ("It follows that the appointment of a United States Attorney for the District of New Mexico under 28 U.S.C. § 546(d) has no bearing on the relief that Defendant seeks in this case, and there is no need for the Court to address the merits of Defendant's constitutional claims under the circumstances presented here.").

more extensive briefing and without the distraction of extraneous justiciability matters.

The Girauds argue that they should have remedies by contending that the remedies available are coextensive with the constitutional violations affecting them. The Government briefly addresses the premise, arguing that Assistant United States Attorneys ("AUSAs") may conduct a prosecution under the authority of the Attorney General even without a validly appointed United States Attorney. However, much of the Government's argument focuses on a merits contention: no remedy is available *because*, under their theories, Ms. Habba is acting and may continue to act lawfully. To the extent the parties' arguments rely on the resolution of the merits issues, I do not decide them as beyond the scope of the question presented for this briefing.

I resolve the threshold question by considering the viability of the types of relief the Girauds have requested. I begin with dismissal of the indictment, which I conclude is not available, and then turn to injunctions against Ms. Habba and anyone acting under her authority, which I conclude would be appropriate if the Girauds prevail on the merits.

### A.    Dismissal of the Indictment

The Girauds maintain that the proper remedy for Ms. Habba's appointment, if illegal, is dismissal of the indictment.[40] But that argument is unmoored from any

---

[40]    Doc. 113 at 2, 3, 9-10.

clear legal hook. The Girauds fail to identify any defect with the issuance of the indictment or any reason why Ms. Habba's appointment at this stage in the prosecution should require its dismissal. So dismissal is not an available remedy.

To start, the Court agrees with the Government that the indictment remains facially valid. In this case, a grand jury—"an investigative body 'acting independently of either prosecuting attorney or judge'"[41]—investigated the Girauds and determined that there was probable cause to believe that they had committed the crimes with which they are charged.[42] The indictment the grand jury returned was signed by "an attorney for the government"[43] whose authority no one disputes: Mr. Sellinger. That is generally enough to preclude dismissal: "[i]t is well-established that an indictment returned by a legally constituted and unbiased grand jury, if valid on its face, is enough to call for trial of the charge on the merits."[44] The Girauds do not describe any defect in the "structural protections of the grand jury . . . [so severe] as to render the proceedings fundamentally unfair, allowing the presumption of prejudice,"[45] nor any issue that would raise a "grave doubt" that "the violation substantially influenced the grand jury's decision to indict."[46]

---

[41] *United States v. Williams*, 504 U.S. 36, 49 (1992) (quoting *United States v. Dionisio*, 410 U.S. 1, 16 (1973)) (emphasis omitted).

[42] *Williams*, 504 U.S. at 48; *Ex parte United States*, 287 U.S. 241, 249-50 (1932); *see Kaley v. United States*, 571 U.S. 320, 328 (2014).

[43] Fed. R. Crim. P. 7(c)(1).

[44] *United States v. Huet*, 665 F.3d 588, 594-95 (3d Cir. 2012) (quoting *United States v. Vitillo*, 490 F.3d 314, 320 (3d Cir. 2007)) (cleaned up).

[45] *United States v. Gussie*, 51 F.4th 535, 539 (3d Cir. 2022) (quoting *Bank of Nova Scotia v. United States*, 487 U.S. 250, 257 (1988)).

[46] *Id.* (quoting *Nova Scotia*, 487 U.S. at 256).

That the Girauds cannot marshal an argument to dismiss the indictment under these familiar principles is unsurprising. The only relevant dispute they have with their prosecution is Ms. Habba's appointment as Acting United States Attorney on July 24, 2025, months after they were indicted. It escapes logic to contend that that appointment somehow retroactively taints the indictment, or any aspect of the prosecution that preceded it; indeed, courts generally should not rely on "postindictment [constitutional] violations" as a basis for questioning the indictment.[47] Without a viable argument that Ms. Habba's appointment infects the grand jury issued indictment, there is no clear basis to dismiss it.

This conclusion accords with those of other courts to consider appointment-based challenges to indictments that were issued by an independent and properly constituted grand jury. Several courts have addressed the instant situation in which a defendant's indictment was signed by a Government attorney acting under a Senate-confirmed Attorney General and a Senate-confirmed United States Attorney, and all have concluded that a subsequent illegitimate appointment of a United States Attorney would not require dismissal of the indictment.[48] Courts have also

---

[47] *Nova Scotia*, 487 U.S. at 258-59.

[48] *Tafoya*, 541 F. Supp. 2d at 1183-84 (noting that operative superseding indictment was returned before challenged appointment and was not signed by appointee, and holding that "[u]nder these circumstances, questions about the constitutionality of the appointment of a United States Attorney 'would not affect the validity of indictments'"); *United States v. Baldwin*, 541 F. Supp. 2d 1184, 1214 (D.N.M. 2008) ("Baldwin offers no explanation why the Court should dismiss a validly obtained indictment, filed during the tenure of a duly-appointed United States Attorney and signed by an Assistant United States Attorney, if the Court defectively appoints a subsequent United States Attorney.").

concluded that an indictment signed by an unquestioned United States Attorney and AUSA need not be dismissed due to an appointment issue with the Attorney General,[49] and have ruled similarly even when the United States Attorney's appointment was in question at the time of the indictment.[50]

Moreover, the bases for a Court to dismiss a prosecution for postindictment events are limited. A court may exercise its inherent supervisory authority to dismiss an indictment "if the Government engaged in misconduct, the defendant was prejudiced, and no less severe remedy [is] available to address the prejudice."[51] But that test is a poor fit for the Girauds' complaint. The *Wright* test is inherently backwards looking and is designed to remedy prejudice that has already occurred. But here, thanks to the diligence of the Girauds' counsel, there has been no opportunity for the Government to engage in the misconduct that they fear, nor have

---

[49] *United States v. Brooks*, 841 F. App'x 346, 349 (3d Cir. 2020); *United States v. Valencia*, No. 5:17-CR-0882, 2018 WL 6182755, at *7 (W.D. Tex. Nov. 27, 2018) (finding legitimacy of Acting Attorney General's appointment irrelevant to the validity of an indictment); *United States v. Peters*, No. 6:17-CR-0055, 2018 WL 6313534, at *6-7 (E.D. Ky. Dec. 3, 2018) (reasoning that a defendant must show that the illegitimately appointed individual had an "influence or role" in the grand jury proceeding for dismissal under *Nova Scotia*); *United States v. Santos-Caporal*, No. 1:18-CR-0171, 2019 WL 468795, at *7 (E.D. Mo. Jan. 9, 2019) (following *Valencia* based on similar facts except indictment was returned under Acting Attorney General's term).

[50] *United States v. Ruiz Rijo*, 87 F. Supp. 2d 69, 71 (D.P.R. 2000) ("The Court does not believe the constitutionality of [United States. Attorney] Gil's appointment controls the validity of an indictment."); *United States v. Cardarella*, No. 07-CR-0007, 2007 WL 1545849, at *4 (W.D. Mo. May 29, 2007); *see United States v. Gantt*, 194 F.3d 987, 998 (9th Cir. 1999) *overruled in part on other grounds by United States v. W.R. Grace*, 526 F.3d 499 (9th Cir. 2008) (en banc) ("The constitutionality of § 546(d) would not affect the validity of indictments, by contrast, as indictments need only be signed by an 'attorney for the government.'").

[51] *United States v. Wright*, 913 F.3d 364, 371 (3d Cir. 2019) (citing *Nova Scotia*, 487 U.S. at 254-56).

they suffered any prejudice yet. Moreover, to the extent that any remedy should be afforded under the *Wright* test at this time, it is not dismissal. As stated, the validity of the Girauds' prosecution up to this point is unquestioned. By raising their complaint of misconduct at the moment it began, the Court is well-positioned to provide a far narrower remedy to address any imminent prejudice: preventing it from happening.

Similarly, postindictment constitutional violations can result in dismissal, but only when the constitutional violation results in some prejudice to the defendant and "no lesser remedial action is available."[52] So even in the constitutional context, dismissal of the indictment is a "drastic remedy," and the "general rule [is that] remedies should be tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests."[53] This is true even for some of the most egregious violations of constitutional rights, for which prejudice must be assumed.[54] For example, a *Batson* violation can be remedied in the moment by "discharg[ing] the venire and select[ing] a new jury from a panel not previously associated with the case . . . or  . . . disallow[ing] the discriminatory challenge[s] and resum[ing] selection with the improperly challenged jurors

---

[52] *United States v. Struckman*, 611 F.3d 560, 575 (9th Cir. 2010) (quoting *United States v. Barrera-Moreno*, 951 F.2d 1089, 1092 (9th Cir. 1991)).

[53] *United States v. Morrison*, 449 U.S. 361, 364, 365 n.2 (1981).

[54] *United States v. Hasting*, 461 U.S. 499, 508 n.6 (1983) (citing authority that admission of a coerced confession and violations of the right to counsel or to an impartial judge can never be harmless).

reinstated on the venire."[55] And even after a trial and conviction that were tainted by such a violation, the remedy is a new trial, not outright dismissal.[56] Similarly, a violation of a defendant's Sixth Amendment right to counsel does not require dismissal, and instead courts should "suppress the evidence [obtained in violation of the right] or . . . order a new trial if the evidence has been wrongfully admitted and the defendant convicted."[57] And "retrial is normally the most severe sanction available for a *Brady* violation."[58] In sum, "in all jurisdictions, dismissal with prejudice is in practice a rare sanction for any constitutional violation."[59]

To be sure, dismissal of the indictment for a postindictment constitutional violation is *possible*, but the standard is incredibly high. That "harsh sanction" should only be granted when both the level of prejudice to the movant and the need for deterring the Government's misconduct weigh heavily in that direction.[60] Here, dismissal is not necessary for any constitutional violation that may flow from Ms. Habba's appointment because the prejudice to the Girauds has not occurred. Instead, the properly tailored remedy is to purge the harm of that violation by excising

---

[55] *Batson v. Kentucky*, 476 U.S. 79, 99 n.24 (1986).

[56] *See Riley v. Taylor*, 277 F.3d 261, 293-94 (3d Cir. 2001) (remanding case for new trial upon finding that there may have been a *Batson* violation); *Simmons v. Beyer*, 44 F.3d 1160, 1171 (3d Cir. 1995) ("The usual remedy for a *Batson* violation is to grant a petition for habeas corpus, but allow the state an opportunity to retry the petitioner before a properly selected jury."); *cf. Johnson v. Rankins*, 104 F.4th 194, 198-99 (10th Cir. 2024) (holding that *Batson* reconstruction hearing should be held when possible before granting new trial).

[57] *Morrison*, 449 U.S. at 364-65.

[58] *Gov't of Virgin Islands v. Fahie*, 419 F.3d 249, 255 (3d Cir. 2005).

[59] *Id.* at 254.

[60] *Id.* at 253-54; *see id.* at 254 ("[A] court fashioning a remedy for a *Brady* violation should take into account the particular character and consequences of the government's actions.").

proceedings infected by it or preventing them from happening. As noted, the indictment itself is not affected, and dismissal is therefore not the proper remedy.

Finally, the Girauds' reliance on *United States v. Trump* as a basis for dismissal is misplaced.[61] The Honorable Aileen Cannon, writing for the United States District Court for the Southern District of Florida, determined that the defendant's success on his argument that Special Counsel Jack Smith was unconstitutionally appointed in violation of the Appointments Clause required dismissal of the indictment.[62] But that conclusion did not follow as a matter of course from the fact of the constitutional violation. Instead, Judge Cannon explained that the "proper remedy [for an Appointments Clause violation] is invalidation of the *ultra vires* action."[63] In other words, she tailored the remedy "to the injury suffered from the constitutional violation."[64] Judge Cannon then went on to review the "actions of Special Counsel Smith in connection with this proceeding" to "set [them aside]."[65] Mr. Smith's involvement in the case had been essentially ubiquitous, and critically "includ[ed] his seeking of the Superseding Indictment on which [the] proceeding" hinged.[66] In contrast, Ms. Habba had nothing to do with the Girauds' indictment. Nor has she engaged in their prosecution during the period in

---

[61] Doc. 113 at 2-3 (citing *United States v. Trump*, 740 F. Supp. 3d 1245 (S.D. Fla. 2024)).

[62] *Trump*, 740 F. Supp. 3d at 1302.

[63] *Id.* (citing *Collins v. Yellen*, 594 U.S. 220, 258 (2021)).

[64] *Morrison*, 449 U.S. at 364.

[65] *Trump*, 740 F. Supp. 3d at 1303.

[66] *Id.*

which her authority is questioned[67] except for the submission of a reply brief, a short motion in limine, and the instant briefing.[68] So, at this stage, there has been essentially no "*ultra vires* action" to "invalidate."[69]

In sum, where an indictment was returned by a validly composed grand jury and signed by a properly appointed United States Attorney, the illegal or unconstitutional appointment of a subsequent United States Attorney does not necessarily require dismissal of the charges. And when the defendant objects to that appointment before the questioned United States Attorney has substantially participated in his prosecution, dismissal is not the proper remedy. Accordingly, the Girauds' request to dismiss the indictment is denied.

## B.  Enjoining Ms. Habba from Participation

The Girauds argue in the alternative that Ms. Habba should be enjoined from prosecuting their case, and that any AUSAs acting under her supervision be similarly barred.[70] As discussed in the previous section, the Court generally agrees that this remedy would be the appropriate response to the constitutional and statutory violations the Girauds claim. This relief raises two questions: (1) can the Court bar Ms. Habba from participating in the Girauds' prosecution, and (2) does a bar on Ms. Habba's participation extend to AUSAs?

---

[67]  The Girauds do not argue that Ms. Habba's term as Interim United States Attorney was illegitimate.
[68]  Docs. 97 & 98.
[69]  *Trump*, 740 F. Supp. 3d at 1302.
[70]  Doc. 99 at 2; Doc. 113 at 2.

### 1.    Barring Ms. Habba

As to the first question, I conclude that the answer is yes. The Girauds argue that Ms. Habba was illegally appointed to serve as Acting United States Attorney in violation of the Appointments Clause of the Constitution and several statutes. They also raise a general separation of powers challenge to her authority.[71] The Supreme Court has advised that these types of claims go to "the Constitution's structural integrity" and affect the interests of "not . . . any one branch of Government but of the entire Republic."[72] Accordingly, the Court has stated that "one who makes a timely challenge to the constitutional validity of the appointment of an officer who adjudicates his case is entitled to a decision on the merits of the question and whatever relief may be appropriate if a violation indeed occurred."[73] There is no reason to limit the permissive approach to Appointments Clause claims and remedies where a defendant challenges the appointment of the party bringing criminal charges against him, as opposed to the party adjudicating the case.[74] The same "structural" interests are at stake, because the allegation is that one branch has attempted to "aggrandiz[e] its power at the expense of another branch" and thereby "diffus[e] the appointment power."[75]

---

[71]  Doc. 99 at 4.

[72]  *Freytag v. C.I.R.*, 501 U.S. 868, 878, 880 (1991).

[73]  *Ryder v. United States*, 515 U.S. 177, 182-83 (1995).

[74]  *See Trump*, 740 F. Supp. 3d at 1302 (quoting *Ryder* and omitting "who adjudicates his case"); *N.L.R.B. v. SW Gen., Inc.*, 580 U.S. 288, 297, 299 (2017) (permitting FVRA challenge to appointment of NLRB's acting general counsel, who had "'final authority' to issue complaints alleging unfair labor practices").

[75]  *Freytag*, 501 U.S. at 878 (citing *Mistretta v. United States*, 488 U.S. 361, 382 (1989)).

Accepting that Giraud may bring his challenge to Ms. Habba's appointment, his requested remedy is also appropriate. When an appointment violates the Appointments Clause from the jump, the actor has "exercise[d] power that [she] did not lawfully possess."[76] Such ultra vires conduct is generally remediated by declaring it "void."[77] This remedy should also obtain in a prospective case, so long as the threat of illegally exercised power employed against the movant is "actual or imminent, not conjectural or hypothetical."[78] In such a case, if the appointment is illegal or unconstitutional, the Court can prospectively invalidate any illegal exercise of power by enjoining the appointee from acting in that office.

Here, the threat that Ms. Habba will exercise the powers of the office of the United States Attorney in Mr. Giraud's case "is certainly impending or there is [at least] a substantial risk that the harm will occur."[79] It is apparent from the Government's briefing that Ms. Habba intends to supervise the Girauds' prosecution

---

[76] *Collins*, 594 U.S. at 258.

[77] *See Collins*, 594 U.S. at 257-58 (collecting such cases but distinguishing them from the case at hand which involved a valid appointment but an unconstitutional removal provision); *see Lucia v. Sec. & Exch. Comm'n*, 585 U.S. 237, 251-52 (2018) (holding that remedy for hearing conducted by improperly appointed officer was entirely new hearing "'before a properly appointed' official" (quoting *Ryder*, 515 U.S. at 183)). Similar remedies are available for FVRA violations. *SW Gen., Inc.*, 580 U.S. at 298, 309 (affirming Court of Appeals's decision to invalidate enforcement order resulting from unfair labor practices complaint issued by individual appointed in violation of FVRA); *see Seago v. O'Malley*, 91 F.4th 386, 389-90 (5th Cir. 2024) (citing *Lucia* when discussing potential remedy for FVRA violation).

[78] *Clemens v. ExecuPharm Inc.*, 48 F.4th 146, 152 (3d Cir. 2022) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)).

[79] *Clemens*, 48 F.4th at 152 (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)) (internal quotations omitted).

and otherwise act as the United States Attorney.[80] Indeed, Ms. Habba's name has appeared on the signature block of each of the Government's briefs in this case bearing the title "Acting United States Attorney."[81] Assuming that Ms. Habba is legally barred from holding that office, as I am for the purposes of this opinion, such involvement would be illegal and subject to invalidation under the Appointments Clause or statute.[82]

The Government's argument to the contrary puts the cart before the horse. It argues that no remedy is available to the Girauds by simply rejecting the premise—which I ordered them to assume—that Ms. Habba has been illegally appointed,[83] instead contending that she is legally exercising the powers of the United States Attorney through a delegation of the Attorney General's power to conduct and supervise "all litigation to which the United States . . . is a party"[84] as a "Special Attorney" or in her role as the First Assistant United States Attorney.[85] But that is explicitly a merits argument: the Girauds are only entitled to no remedy if the Court finds that Ms. Habba's appointment as a Special Attorney is valid or that Ms. Bondi can delegate a First Assistant a level of authority commensurate with the United

---

[80] Doc. 108 at 14, 24-25; Doc. 114 at 1-2, 4, 7.
[81] Doc. 108 at 28; Doc. 114 at 10.
[82] *See Collins*, 594 U.S. at 257-60.
[83] Doc. 111 at 3 (ordering briefing on "the threshold issue of whether any relief is available to the Girauds *even assuming that Ms. Habba's appointment is illegal*.").
[84] 28 U.S.C. § 519.
[85] Doc. 114 at 4 (citing 28 U.S.C. §§ 510, 515, 518, 542).

States Attorney's. Because it violates my Order, I do not consider the argument at this stage.

The Court declines to take the issue up at this time for the additional reason that it lacks adversarial development. The Girauds have not yet given serious response to the "Special Attorney" issue because it was not clear that Ms. Habba had been so appointed at the time of their initial motion (filed just days after the appointment occurred), and in their supplemental brief they correctly limited their lead arguments to what remedies might be possible assuming that the appointment was not permitted at all. The Government's position has extreme implications that it openly embraces: by using the Special Attorney designation and delegation, Ms. Habba may exercise all of the powers of the United States Attorney without being subject to *any of the statutory limitations on that office*.[86] Whether the Attorney General may statutorily or constitutionally delegate all of the powers of a specific office created by separate statute and constrained by its own statutory limitations in order to evade those limitations is a completely novel question, and one that inherently implicates the Appointments Clause and thus the merits of the Girauds' motion. I defer resolving it until it has been fully briefed.

---

[86] *See* Doc. 114 at 1 ("[N]one of those grants of authority depends on whether Ms. Habba may serve as the Acting United States Attorney, because they all flow directly from the Attorney General's own authority to conduct and supervise the work of the U.S. Attorney's Office, wholly apart from whether there is any United States Attorney ***at all***.") (emphasis in original).

The Government offers no other argument that Ms. Habba may personally participate in the Girauds' prosecution assuming that she was illegally appointed. Accordingly, the legality of Ms. Habba's appointment is squarely presented.[87] The Court will order additional briefing to develop the arguments on that issue.

### 2.    Barring AUSAs

Finally, the Girauds request that AUSAs "acting under [Ms. Habba's] purported authority" also be enjoined from prosecuting them.[88] They base that contention on the argument that "[t]he AUSAs are acting *in her name*, and the legitimacy of their authority is tethered to hers."[89] The Government responds that the AUSAs "derive their power to prosecute directly from the Attorney General" and can therefore continue to prosecute cases.[90]

The Court generally agrees with the Government that AUSAs' power fundamentally stems from the Attorney General. In several cases in which the validity of a United States Attorney's appointment was challenged, courts have upheld AUSAs' continued prosecution of the case pursuant to the Attorney General's delegation of authority.[91] But the Attorney General is not the sole fount of

---

[87] *See Baldwin*, 541 F. Supp. 2d at 1188 (reaching the merits of the constitutional issues because "Baldwin's requested remedy . . . is that the Court require the Department of Justice to have the Attorney General personally direct his case, or to have an Assistant Attorney General for the Criminal Division sign all pleadings and have assistants directly accountable to him prosecute this case" as opposed to the challenged United States Attorney).

[88] Doc. 99 at 2; Doc. 113 at 2.

[89] Doc. 113 at 5.

[90] Doc. 108 at 25-26.

[91] *Tafoya*, 541 F. Supp. 2d at 1184; *Baldwin*, 541 F. Supp. 2d at 1196; *see United States v. Hilario*, 218 F.3d 19, 22 (1st Cir. 2000); *Gantt*, 194 F.3d at 998 ("An infirmity in the United States

AUSAs' power. An AUSA's authority can stem exclusively from the local United States Attorney, even when the Attorney General's appointment is questionable.[92] Based on these lines of case law and the Attorney General's and United States Attorney's complementary statutory authority to oversee litigation in their respective jurisdictions,[93] the Court concludes that whether an AUSA is acting under the authority of the Attorney General or the United States Attorney is a fact-based question.[94] If the facts should show that an AUSA is operating at the express

---

Attorney's appointment would not generally affect the jurisdiction of this court so long as a proper representative of the government participated in the action."); *cf. United States v. Suescun*, 237 F.3d 1284, 1287 (11th Cir. 2001) (in dicta stating "[a]n appointment of a United States Attorney that is not made as provided by the Appointments Clause does not affect the Government's power to prosecute.").

[92]  *Brooks*, 841 F. App'x at 349 ("Brooks was prosecuted by the United States Attorney for the District of the Virgin Islands who was independently empowered by statute to prosecute cases and duly appointed by a district court."); *United States v. Castillo*, 772 F. App'x 11, 15 (3d Cir. 2019) ("[T]he legality of Whitaker's service as Acting Attorney General has no bearing on the validity of criminal prosecutions or sentences."); *United States v. Patara*, 365 F. Supp. 3d 1085, 1092 (S.D. Cal. 2019) ("[T]he United States Attorney has statutory authorization, independent of any authorization by the office of the Attorney General, to conduct prosecutions."); *United States v. Peters*, No. 6:17-CR-0055, 2018 WL 6313534, at *6-7 (E.D. Ky. Dec. 3, 2018); *Valencia*, 2018 WL 6182755, at *7 (reasoning that prosecution of defendants "by the United States Attorney for the Western District of Texas 'within his district' under 28 U.S.C. § 547" may continue notwithstanding questions about Attorney General's appointment); *cf.* U.S. Attorney's Manual, Dep't of Justice § 3-2.210 ("Assistant United States Attorneys are responsible to the United States Attorney for the performance of duties assigned by that official.") (replaced by Justice Manual, Dep't of Justice in 2018).

[93]  28 U.S.C. §§ 519, 547; *see* Justice Manual, Dep't of Justice § 9-2.001 ("The United States Attorney, within his/her district, has plenary authority with regard to federal criminal matters. This authority is exercised under the supervision and direction of the Attorney General and his/her delegates. *The statutory duty to prosecute for all offenses against the United States (28 U.S.C. § 547) carries with it the authority necessary to perform this duty.* The USA is invested by statute and delegation from the Attorney General with the broadest discretion in the exercise of such authority.") (emphasis added); *Thomas v. I.N.S.*, 35 F.3d 1332, 1339 (9th Cir. 1994) ("Congress expressly assigned overlapping authority to both the Attorney General and to United States Attorneys . . . . A United States Attorney in Denver does indeed exercise authority without the need for delegation from the Attorney General.").

[94]  *See Valencia*, 2018 WL 6182755, at *7 (considering "Acting Attorney General Whitaker's 'indirect involvement with this case'"); *Peters*, 2018 WL 6313534, at *7 (considering fact of

direction of an official who is improperly appointed, the Court can validly bar them from doing so: "if the United States Attorney's appointment is invalid, then her delegation is similarly invalid."[95]

Here, as stated, there is ample reason to believe that Ms. Habba will continue directing litigation in the District of New Jersey. And given that possibility, the Court cannot foreclose the potential need to bar AUSAs from prosecuting cases under her authority, if it is illegal.

To be clear, the Court is not suggesting that it might impose the "officewide disqualification" the Government fears. Instead, the Court agrees that a valid remedy for the violations the Girauds' assert, if I find that they occurred, may be to bar AUSAs from engaging in prosecutions when they do so under Ms. Habba's authority.[96] That kind of targeted disqualification based on the scope of a conflict or violation and requiring individualized fact finding about the chain of command in

---

"utterly no influence by or role of Whitaker in the prosecution"); *Castillo*, 772 F. App'x at 14; *see also United States v. Easton*, 937 F.2d 160, 161 (5th Cir. 1991) (discussing District Court's decision not to disqualify entire United States Attorney's Office by virtue of United States Attorney's conflict "[b]ased on affidavits submitted by the government which indicated that [United States Attorney] had not meaningfully participated in the criminal prosecution against [Defendant].").

[95] *Gantt*, 194 F.3d at 998.

[96] *See United States v. Williams*, 68 F.4th 564, 571 (9th Cir. 2023) (acknowledging that courts may disqualify prosecutors when their participation would be "a violation of . . . the Constitution, a federal statute, or a procedural rule." (quoting *United States v. Jennings*, 960 F.2d 1488, 1491 (9th Cir. 1992)). The Court also notes that if Ms. Habba is enjoined from prosecuting the Girauds, so long as she follows that Order, no AUSAs would need to be disqualified.

each instance stops well short of officewide disqualification.[97] The Court sees no reason why AUSAs acting directly under the delegated authority of Ms. Bondi, or possibly another Department of Justice official with sufficient authority to extend Ms. Bondi's powers to AUSAs in New Jersey, would need to be disqualified.[98] Moreover, so long as it is clear that they are acting under Ms. Bondi's—and not Ms. Habba's—authority (essentially a temporary recusal until this matter is resolved), there would appear to be no issue with all of District of New Jersey's AUSAs moving prosecutions forward now.

Again, the Court does not decide at this time whether Ms. Bondi's delegation of the entirety of the United States Attorney's authority to Ms. Habba as a Special Attorney or as First Assistant is valid. That answer to that question is far less clear than whether Ms. Bondi may delegate authority to AUSAs to prosecute specific offenses. AUSAs are directly appointed by the Attorney General without any input from the Senate,[99] and "their ability to act . . . derives from the Attorney General's

---

[97] *See United States v. Bolden*, 353 F.3d 870, 880 (10th Cir. 2003) ("[T]he district court must make attorney-specific factual findings and legal conclusions before disqualifying attorneys from the USA's office."); *cf. United States v. Vlahos*, 33 F.3d 758, 762-63 (7th Cir. 1994) (reversing officewide disqualification because some attorneys in office did not have conflict of interest that justified disqualification of others); *United States v. Lorenzo*, 995 F.2d 1448, 1452-53 (9th Cir. 1993) (rejecting officewide disqualification because AUSA who prosecuted case was not involved in conflict).

[98] *See Hilario*, 218 F.3d at 22. The Court offers no opinion as to which Department of Justice officials may be validly able to wield Ms. Bondi's delegated authority to direct prosecutions in New Jersey, but "Senate-confirmed officials in main justice" seems like a good start. Doc. 108 at 26; *see* 28 U.S.C. § 506.

[99] 28 U.S.C. § 542.

plenary power over litigation to which the United States is a party."[100] United States Attorneys, on the other hand, are appointed by the President,[101] confirmed by the Senate,[102] are removable only by the President,[103] and have an independent source of statutory authority.[104] Temporary appointees to the office are subject to statutory time limits.[105] Whether it is statutorily or constitutionally permissible for the Attorney General to delegate all of the statutory powers of a United States Attorney to a Special Attorney or the First Assistant, without any of the statutory limitations on United States Attorneys, is not immediately apparent to the Court, and should be addressed in the briefing on the merits issues.

To summarize, I conclude that the Girauds are entitled to injunctive relief precluding Ms. Habba from participating in their prosecution if they are correct that she was appointed in violation of statute or the Constitution. And that injunctive relief should extend to AUSAs purporting to operate pursuant to Ms. Habba's authority. Because relief will be available to them if they are correct, the Court should reach the merits of the Girauds' claims. I defer that decision pending further briefing and oral argument.

---

[100] *Hilario*, 218 F.3d at 22 (citing 28 U.S.C. § 516).
[101] 28 U.S.C. § 541(a).
[102] *Id.*
[103] *Id.* § 541(c).
[104] *Id.* § 547.
[105] 28 U.S.C. § 546(c)(2) (120 days for interim appointees); 5 U.S.C. § 3346(a)(1) (210 days for acting appointees, subject to specific extensions).

## III.    CONCLUSION

For the above-stated reasons, the Girauds' motion to dismiss the indictment or in the alternative to enjoin Ms. Habba and AUSAs operating under her authority from participating in their prosecution is denied in part and deferred in part.

An appropriate Order follows.


BY THE COURT:


*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge for
the Middle District of Pennsylvania
Specially Presiding