**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>    **v.**<br><br>**JULIEN GIRAUD JR. AND JULIEN GIRAUD III,**<br><br>        ***Defendants*.** | **No. 24-CR-768 (MWB)** |

**BRIEF OF *AMICUS CURIAE* ASSOCIATION OF CRIMINAL DEFENSE
LAWYERS OF NEW JERSEY**

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................1

LEGAL BACKGROUND ....................................................................................... 2

FACTUAL BACKGROUND ................................................................................... 4

ARGUMENT ........................................................................................................... 5

I.    United States Attorneys Exercise Extraordinary Authority and Discretion. ............. 6

II.    The Attorney General's July 24 Order Was Unlawful. ................................................. 8

   A.    Neither Section 541 nor Section 546 supports Ms. Habba's appointment. ........... 9

   B.    The Attorney General's purported designation of Ms. Habba as a "Special Attorney" and invocation of the Federal Vacancies Reform Act does not make Ms. Habba the acting U.S. Attorney. .......................................................... 10

   C.    The Attorney General cannot delegate Ms. Habba the authority to lead the U.S. Attorney's Office as a Special Attorney. ................................................................... 16

CONCLUSION ......................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                                                    **Page(s)**

*Baraka v. Habba et al.,*
    No. 25-cv-06846 (D.N.J. 2025) ...................................................................................... 8

*Ewing v. Mytinger & Casselberry,*
    339 U.S. 594 (1950) ...................................................................................................... 7

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.,*
    561 U.S. 477 (2010) .................................................................................................... 12

*Freytag v. Comm'r,*
    501 U.S. 868 (1991) ................................................................................................. 2, 5

*INS v. Chadha,*
    462 U.S. 919 (1983) ..................................................................................................... 5

*Kennedy v. Braidwood Management, Inc.,*
    145 S. Ct. 2427 (2025) .............................................................................................. 12

*Knight v. Comm'r,*
    552 U.S. 181 (2008) .................................................................................................... 10

*L.M.-M. v. Cuccinelli,*
    442 F. Supp. 3d 1 (D.D.C. 2020) ......................................................................... 14, 16

*Morrison v. Olson,*
    487 U.S. 654 (1988) ..................................................................................................... 6

*Myers v. United States,*
    272 U.S. 52 (1926) ...................................................................................................... 12

*N.L.R.B. v. New Vista Nursing and Rehab.,*
    719 F.3d 203 (3d Cir. 2013) ....................................................................................... 15

*N.L.R.B. v. Noel Canning,*
    573 U.S. 513 (2014) .................................................................................................... 14

*N.L.R.B. v. SW Gen., Inc.,*
    580 U.S. 288 (2017) ....................................................................................... 3, 5, 12, 14

*In re Grand Jury Proc.,*
    671 F. Supp. 5, 7 (D. Mass. 1987) ............................................................................. 16

*In re Persico,*
    522 F.2d 41 (2d Cir. 1975) ......................................................................................... 11

*Seila L. LLC v. Consumer Fin. Prot. Bureau,*

591 U.S. 197 (2020) ......................................................................... 11-12, 14

TRW Inc. v. Andrews,

534 U.S. 19 (2001) ................................................................................... 16

United States v. Armstrong,

517 U.S. 456 (1996) ................................................................................... 6

United States v. Arthrex, Inc.,

594 U.S. 1 (2021) ............................................................................... 15-16

United States v. Baraka,

No. 25-mj-11131 (D.N.J. 2025).............................................................. 8

United States v. Batchelder,

442 U.S. 114 (1979) ................................................................................... 6

United States v. Edmond,

520 U.S. 651 (1997) ............................................................................... 7-8

United States v. Gantt,

194 F.3d 987 (9th Cir. 1999) ................................................................ 19

United States v. Serubo,

604 F.2d 807 (3d Cir. 1979) ................................................................ 6, 7

United States v. Trump,

740 F. Supp. 3d 1245 (S.D. Fla. 2024) ............................................... 10

United States v. Weyrauch,

544 F.3d 969 (9th Cir. 2009) (per curiam) ....................................... 19

## Constitution, Statutes, Regulations and Rules

U.S. Const. art. II, § 2, cl. 2 .......................................................... 1, 2, 5

5 U.S.C. § 3345 ................................................................................... passim

5 U.S.C. § 3345(a)(1)-(2) ....................................................................... 16

5 U.S.C. § 3346(b)(1) ............................................................................. 15

5 U.S.C. §§ 3346(a)-(b)(1) ...................................................................... 3

5 U.S.C. § 3348(d) .............................................................................. 3, 13

5 U.S.C. § 7513 ....................................................................................... 18

18 U.S.C. § 3731 .................................................................................... 19

28 U.S.C. § 509 ...................................................................................... 10

28 U.S.C. § 510 ...................................................................................... 10

iv

28 U.S.C. § 515 ...................................................................................... *passim*

28 U.S.C. § 541 ...................................................................................... *passim*

28 U.S.C. § 541(b) .......................................................................................... 3

28 U.S.C. § 542 ............................................................................... 12, 17, 18

28 U.S.C. § 543 ............................................................................................ 11

28 U.S.C. § 545 ............................................................................................ 18

28 U.S.C. § 545(a) ...................................................................................... 18

28 U.S.C. § 546 ...................................................................................... *passim*

28 U.S.C. § 546(b) ................................................................................... 3, 9

28 U.S.C. § 546(c) .......................................................................................... 3

28 U.S.C. § 546(c)(2) .................................................................... 9, 12, 15

28 U.S.C. § 547 .............................................................................................. 6

28 C.F.R. § 0.137 ....................................................................................... 18

44 Cong. Rec. 4544 (1909) ..................................................................... 11

An Act to Establish the Department of Justice, ch. 150, § 17, 16 Stat. 162, 164-65 (1870) .................................................................................................... 11

H.R. Rep. No. 59-2901 (1906) ............................................................... 11

Judiciary Act, § 35, 1 Stat. 73 (1789) ................................................... 11

Senate Rule XXXI(6) ............................................................................... 16

## Other Authorities

*Designation of Acting Associate Attorney General,*
    25 Op. O.L.C. 177 (2001) .................................................................. 14

*Guidance on Application of Federal Vacancies Reform Act of 1998,*
    23 Op. O.L.C. 60 (1999) .................................................................... 14

*Temporary Filling of Vacancies in the Office of United States Attorney,*
    27 Op. O.L.C. 149 (2003) .................................................................. 17

3 J. Story, *Commentaries on the Constitution of the United States* § 1524, at 376 (1833) § 1524 ........................................................................................................... 5

The Federalist No. 76, at 513 (J. Cooke ed. 1961) ............................... 5

Memorandum of Samuel A. Alito, Jr., Deputy Assistant Attorney General, Office of Legal Counsel, to William P. Tyson, Director, Executive Director, Executive Office of United States Attorneys 3 (Nov. 13, 1986) ................................................................ 9, 16

R. Jackson, *The Federal Prosecutor*, Address Delivered at the Second Annual Conference of United States Attorneys, April 1, 1940. ........................................................ 7

United States Attorney's Office for the District of New Jersey, Meet the U.S. Attorney (last visited Aug. 13, 2025). ................................................................................................ 5

## INTRODUCTION

Alina Habba purports to be the acting United States Attorney for the District of New Jersey—but that cannot be.  The Attorney General appointed Ms. Habba in March to be the interim United States Attorney under 28 U.S.C. § 546, but that term has expired, and she is ineligible to serve a successive term under Section 546.  She was nominated in June by the President to serve permanently as the U.S. Attorney, but the Senate did not act.  The district court for the District of New Jersey refused to appoint Ms. Habba to the post in July, instead appointing Desiree Grace, who had been serving as the First Assistant U.S. Attorney, to the position.  The President then withdrew the nomination.  Meanwhile, because the Senate did not act on her nomination, Ms. Habba is ineligible to serve as an acting U.S. Attorney under the Federal Vacancies Reform Act ("FVRA").

To circumvent the laws that Congress passed to govern the appointment of U.S. Attorneys, the Attorney General did something unprecedented: She purported to install Ms. Habba via a convoluted method: (i) making Ms. Habba a "Special Attorney" under 28 U.S.C. § 515; (ii) designating Ms. Habba as the First Assistant (having already removed Ms. Grace); and then (iii) asserting that Ms. Habba was the acting U.S. Attorney under the FVRA.  To our knowledge, no prior Attorney General has ever attempted this.

Neither Section 515 nor the FVRA can sustain the Attorney General's novel order, which ultimately violates the Appointments Clause of the U.S. Constitution.  U.S. Const. art. II, § 2, cl. 2.  The Appointments Clause provides Congress sole authority to define the offices that the President may fill and the method of their appointment.  For U.S. Attorneys, Congress enacted detailed provisions delineating who may serve in the position on a permanent or acting capacity, and for how long.  It is inconceivable that Congress intended to empower the executive to sidestep its otherwise comprehensive statutes—and install whomever the President wants—in such a roundabout manner.  The same is true even if the government describes Ms. Habba not as the acting U.S. Attorney,

but instead as "merely performing functions" of the office under authority delegated by the Attorney General.  *See* ECF No. 127 at 18.

The legal issue presented by Ms. Habba's unlawful appointment is no technical matter, and the practical stakes extend far beyond this single criminal case.  The government's machinations here undermine the constitutional and statutory rights of thousands of criminal defendants and 9.5 million residents subject to the jurisdiction of the top federal prosecutor for New Jersey.  *See Freytag v. Comm'r*, 501 U.S. 868, 880 (1991) ("The structural interests protected by the Appointments Clause are not those of any one branch of Government but of the entire Republic.").  Acutely conscious that the "manipulation of official appointments" was a "powerful weapon" in the Crown's hands, *id.* at 883 (citation omitted), the Framers provided Congress, not the executive branch, the role of defining offices and methods of appointment.  The Court should scrupulously enforce the statutes Congress passed with respect to the awesome position of U.S. Attorney—a unique office that wields great responsibilities for securing justice and protecting civil liberties—by concluding that Ms. Habba is barred from serving as the acting U.S. Attorney in this or any other case in the District of New Jersey.  The Court should also prevent the same result by another means and reject the government's alternative theory that Ms. Habba is exercising power delegated directly from the Attorney General.

## LEGAL BACKGROUND

The Appointments Clause provides that officers of the United States shall be appointed by the President with the advice and consent of the Senate. U.S. Const. art. II, § 2, cl. 2.  But Congress "may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments."  *Id.*  By law, the President must nominate, and the Senate must confirm, all U.S. Attorneys.  28 U.S.C. § 541(a).  A U.S. Attorney serves "a term of four years" but

presumptively "continues to perform the duties of his office until his successor is appointed and qualifies." § 541(b).

To address circumstances in which a U.S. Attorney position is vacant, Congress enacted 28 U.S.C. § 546. Under Section 546, the Attorney General may appoint an acting U.S. Attorney when a vacancy arises, § 546(a), so long as the Attorney General's appointee is not a person that the President nominated to the same office and to whom "the Senate refused to give advice and consent," § 546(b). An acting U.S. Attorney appointed under Section 546(a) serves until the earlier of the "qualification" of a presidentially appointed and Senate-confirmed nominee or 120 days. § 546(c). If the 120 days expires, the district court in the relevant judicial district "may appoint" a U.S. Attorney "to serve until the vacancy is filled." § 546(d).

Congress has also long supplied the President with "limited authority to appoint acting officials to temporarily perform the functions . . . without first obtaining Senate approval" in an office that otherwise requires presidential appointment and Senate confirmation.[1] *N.L.R.B. v. SW Gen., Inc.*, 580 U.S. 288, 294 (2017). The current law, enacted in 1998, is the Federal Vacancies Reform Act, 5 U.S.C. §§ 3345 *et seq.* (the "FVRA"), which identifies three types of government officials who may perform acting service in a PAS office, *see* § 3345(a)(1)-(3), and sets a time limit of 210 days from the date of the vacancy, providing for tolling and additional time while a nomination is pending or "rejected . . . , withdrawn, or returned," §§ 3346(a)-(b)(1). The FVRA also prohibits any person otherwise qualified to serve as an acting officer "if the President has nominated them to fill the vacant office permanently." *SW Gen.*, 580 U.S. at 293. "[A]ny function or duty of vacant office" undertaken by someone not properly serving in that role "shall have no force or effect" and "may not be ratified." § 3348(d).

---

[1] Such offices are referred to as "PAS" offices.

## FACTUAL BACKGROUND

Because the Court and the parties have extensively discussed the relevant factual background, *see, e.g.*, ECF No. 116 at 1-7, only a summary of the relevant timeline regarding Ms. Habba's appointment follows.

On March 3, John Giordano was named interim U.S. Attorney under 28 U.S.C. § 546(a). On March 24, the President posted that Ms. Habba would replace Mr. Giordano as interim U.S. Attorney "effective immediately." Four days later, on March 28, the Attorney General appointed Ms. Habba interim U.S. Attorney under 28 U.S.C. § 546(a). On June 30, while Ms. Habba was still serving as interim U.S. Attorney, the President submitted Ms. Habba's nomination as U.S. Attorney to the Senate. As Ms. Habba's interim term was set to expire, on July 22, the District Court judges in New Jersey did not appoint Ms. Habba but instead named then-First Assistant Desiree Grace as interim U.S. Attorney under 28 U.S.C. § 546(d) effective that day or "upon the expiration of 120 days after appointment by the Attorney General." In communications sent on July 22 and on July 26, the Department of Justice announced that Ms. Grace had been removed from the interim U.S. Attorney position and the Department entirely, and that Ms. Habba's 120-day term under Section 546 had not expired.

On July 24, three things happened. First, Ms. Habba's nomination to be U.S. Attorney was withdrawn. Second, Ms. Habba resigned as interim U.S. Attorney. Third, in a single order, the Attorney General (i) appointed Ms. Habba as a "Special Attorney to the Attorney General" under 28 U.S.C. § 515; (ii) designated Ms. Habba as the "First Assistant United States Attorney" for New Jersey; and (iii) stated that Ms. Habba "will have authority to serve" as acting U.S. Attorney "upon a vacancy in that office" under the Federal Vacancies Reform Act. *See* ECF No. 108-7.

Since March, Ms. Habba has been exercising the authority of an acting U.S. Attorney for the District of New Jersey, including issuing press releases and signing indictments as "Acting U.S. Attorney Alina Habba." *See generally* United States

Attorney's Office for the District of New Jersey, News, https://www.justice.gov/usao-nj/pr (last visited Aug. 13, 2025). The "Meet the U.S. Attorney" page of the Office's website is more circumspect. Apparently last updated on August 11, 2025, it introduces Ms. Habba as the "Acting U.S. Attorney and Special Assistant to the United States Attorney General"; a previous version, dated July 30, 2025, omitted the "Special Assistant" designation. *See id.*, Meet the U.S. Attorney, https://www.justice.gov/usao-nj/meet-us-attorney (last visited Aug. 13, 2025) (attached as Exhibit 1, along with the July 30, 2025, version). According to data obtained from the Federal Public Defender for the District, well over 2,000 individuals are being prosecuted by Ms. Habba's office, with more than 600 in custody, as of August 11, 2025.

## ARGUMENT

"[T]he power of appointment to offices was deemed the most insidious and powerful weapon of eighteenth century despotism." *Freytag*, 501 U.S. at 883 (internal quotation marks and quoted source omitted). The Framers had "lived under a form of government that permitted arbitrary governmental acts to go unchecked" and "recognized the serious risk for abuse and corruption posed by permitting one person to fill every office in the Government." *SW Gen., Inc.*, 580 U.S. at 317 (Thomas, J., concurring) (quoting *INS v. Chadha*, 462 U.S. 919, 959 (1983)) (citing The Federalist No. 76, at 513 (J. Cooke ed. 1961); 3 J. Story, *Commentaries on the Constitution of the United States* § 1524, at 376 (1833)). With that in mind, the Framers crafted the Appointments Clause to empower Congress to define the duties of officers; provide the Senate the critical role in confirming the appointment of all principal officers; and allow Congress to vest the appointment of inferior officers in the President, the heads of department, or the Courts, as Congress sees fit. *See* U.S. Const. art. II, § 2., cl. 2.

Congress has exercised that power with respect to U.S. Attorneys by requiring Senate approval for U.S. Attorney appointments and carefully restricting who may serve

as a U.S. Attorney temporarily in the case of a vacancy.  Under law, Ms. Habba is disqualified from further serving as U.S. Attorney for the District of New Jersey on an acting or interim basis.  She is also ineligible to perform as though she were the U.S. Attorney by acting under authority delegated from the Attorney General.

## I.  United States Attorneys Exercise Extraordinary Authority and Discretion.

The position of United States Attorney is precisely the kind of extraordinarily mighty office that prompted the Framers to adopt the Appointments Clause in the first place.  United States Attorneys exercise the "vast power" and "immense discretion" of a prosecutor at the highest level.  *Morrison v. Olson*, 487 U.S. 654, 727 (1988) (Scalia, J., dissenting).  The Fourth, Fifth, and Sixth Amendments of the Constitution fall within their ambit.  They decide how "to enforce the Nation's criminal laws," and courts afford "the presumption of regularity" to their "prosecutorial decisions."  *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (quotation marks omitted); *see* 28 U.S.C. § 547(1) (duties of United States Attorneys).

Given the office's enormous authority, it is imperative for courts to enforce the laws that Congress enacted to regulate who may wield the tremendous power of a District's top federal prosecutor.  To be sure, the defense bar and the courts play a critical role in protecting the rights afforded by the Constitution against prosecutorial abuse once a case has been filed, but "[w]hether to prosecute and what charge to file or bring before a grand jury are decisions that generally rest in the prosecutor's discretion" alone.  *United States v. Batchelder*, 442 U.S. 114, 124 (1979).  Indeed, "grand jury proceedings are secret, Ex parte[,] and largely under the control of the federal prosecutor."  *United States v. Serubo*, 604 F.2d 807, 816-18 (3d Cir. 1979).  In that setting, "the prosecutor operates without the check of a judge or a trained legal adversary, and virtually immune from public scrutiny."  *Id.* at 817.  As the Third Circuit has explained, there is "great" "potential" that the prosecutor can abuse the grand jury process, "and the consequences of a mistaken

indictment" are "serious" such that "the obligation of the judiciary to protect against even the appearance of unfairness" is "correspondingly heightened." *Id.*  In the case of less serious offenses where the Fifth Amendment's Grand Jury Clause does not apply, a prosecutor may charge someone directly in court by information, making allegations publicly without even the involvement of a grand jury. *See Ewing v. Mytinger & Casselberry*, 339 U.S. 594, 599 (1950) (noting the "impact" of an "indictment" or "information" "on the reputation or liberty of a man" and the "incalculable" "harm" caused "by the mere institution of proceedings").

In an address to U.S. Attorneys, then-Attorney General Robert H. Jackson identified "the most dangerous power of the prosecutor: that he will pick people that he thinks he should get, rather than cases that need to be prosecuted."  R. Jackson, *The Federal Prosecutor*, Address Delivered at the Second Annual Conference of United States Attorneys, April 1, 1940, available at http://www.justice.gov/sites/default/files/ag/legacy/2011/09/16/04-01-1940.pdf (last visited Aug. 13, 2025).  His address continued by describing the abuse he sought to warn his colleagues against:

> It is here that law enforcement becomes personal, and the real crime becomes that of being unpopular with the predominant or governing group, being attached to the wrong political views, or being personally obnoxious to or in the way of the prosecutor himself.

*Id.*

Given the expansive powers and critically important role of U.S. Attorneys, it is no wonder Congress has not left their selection to a single branch of government.  Instead, it has enacted a statutory scheme that requires presidential appointment followed by Senate confirmation.  *See* 28 U.S.C. § 541(a).  In this system, it is not only the President, but the senators for every state who must answer politically for their selections.  *See United States v. Edmond*, 520 U.S. 651, 660 (1997) ("By requiring the joint participation of the President and the Senate, the Appointments Clause was designed to ensure public

accountability for both the making of a bad appointment and the rejection of a good one.").

The Court should enforce the constitutional and statutory safeguards against improper or ill-advised U.S. Attorney appointments. Notably, in addition to the district court for the District of New Jersey's decision not to appoint Ms. Habba under Section 546(d), at least one judge in that District has raised specific concerns regarding the actions of the U.S. Attorney's Office under Ms. Habba's leadership. *See United States v. Baraka*, Case No. 25-mj-11131, ECF No. 15 (D.N.J.) (May 21, 2025) (prosecution's conduct "suggests a failure to adequately investigate, to carefully gather facts, and to thoughtfully consider the implications of your actions before wielding your immense power"); *see also Baraka v. Habba et al.*, Case No. 25-cv-06846, ECF No. 1 (D.N.J.) (filed June 3, 2025) (civil suit citing Judge's remarks). This background further underscores the importance of enforcing the checks and balances provided for in the Constitution and by Congress.

## II.    The Attorney General's July 24 Order Was Unlawful.

None of the laws that Congress has provided to appoint a U.S. Attorney supports Ms. Habba's putative appointment on July 24, 2025. Appropriately forswearing reliance on Section 541 or 546, the Attorney General's order on that date purported to appoint Ms. Habba as a "Special Attorney" under 28 U.S.C. § 515, designate her the First Assistant U.S. Attorney in the New Jersey U.S. Attorney's Office, and authorize her to serve as the acting U.S. Attorney "upon a vacancy in that office"—a vacancy that had, on the government's view, arisen the same day because of Ms. Habba's resignation as the interim U.S. Attorney—under the FVRA. *See* ECF No. 118-7. That order misuses Section 515, a provision wholly unrelated to the appointment of U.S. Attorneys, and misinterprets the FVRA, which is not available for a recent U.S. Attorney nominee like Ms. Habba. And the combined effect of using those statutes, particularly when used in conjunction with Section 546 as in Ms. Habba's case, is the precise type of executive-branch circumvention

against which the Appointments Clause protects.  Moreover, the Attorney General's many powers do not include the authority to circumvent these protections by delegating authority to Ms. Habba to operate on the Attorney General's behalf.

### A. Neither Section 541 nor Section 546 supports Ms. Habba's appointment.

It is undisputed that neither Section 541 nor Section 546 would enable Ms. Habba to serve as the U.S. Attorney in New Jersey.  Although the President nominated Ms. Habba as U.S. Attorney under Section 541(a), the Senate did not confirm her to that position, and the President later withdrew the nomination.  Even assuming Ms. Habba validly served as the acting U.S. Attorney for at least some period under Section 546(a), the government does not rely on that provision now.[2]  *See* ECF No. 108-7 (Attorney General order not citing Section 546).  For good reason, as she would be doubly ineligible. She was appointed to an office for which the Senate "refused to give advice and consent." § 546(b).  And she has already served the maximum statutorily allocated time of 120 days. *See* § 546(c)(2).

---

[2] Several factual and legal questions surround the timing and validity of Ms. Habba's appointment under Section 546.  If Section 546 contemplates only the appointment of a single person for a single 120-day term, *see* Memorandum of Samuel A. Alito, Jr., Deputy Assistant Attorney General, Office of Legal Counsel, to William P. Tyson, Director, Executive Director, Executive Office of United States Attorneys 3 (Nov. 13, 1986) ("Alito Memo"), then Ms. Habba was ineligible following Mr. Giordano's appointment.  If Section 546 allows multiple appointments but can extend no longer than 120 days in total, then Ms. Habba's appointment would have ended on July 1, 2025.  *See* ECF No. 121 at 9-11.  If Section 546 permits Ms. Habba to serve for 120 days from the date of her appointment, it is unclear whether that appointment began on March 24 or March 28.  *See id.* at 11-12. To answer the question presented in this matter, *see* ECF No. 116 at 21-22; ECF No. 117 at 2—whether Ms. Habba's putative current appointment as a special attorney designated to serve as the First Assistant United States Attorney and acting as the United States Attorney under the FVRA is valid for purposes of any future injunction that she no longer serve in that role—the Court need not address those questions.

**B. The Attorney General's purported designation of Ms. Habba as a "Special Attorney" and invocation of the Federal Vacancies Reform Act does not make Ms. Habba the acting U.S. Attorney.**

The government instead invokes a novel legal theory that combines the Attorney General's power to appoint and designate a "Special Attorney" under 28 U.S.C. § 515 with its reading that Ms. Habba would, as a result of her own resignation as the interim U.S. Attorney, become the acting U.S. Attorney under the FVRA. The Court should reject that cynical effort to manipulate the appointment process, which suffers three—two statutory, and one constitutional—critical flaws.

1. The Attorney General's use of Section 515 effectively to appoint Ms. Habba as the acting U.S. Attorney for the District of New Jersey is inconsistent with that provision's text, purpose, and history, as well as the larger statutory scheme governing U.S. Attorney appointments.[3]

Start with text. Section 515 enables the Attorney General to appoint "special attorney[s]" or "special assistant[s]," § 515(b), and to empower them to "conduct any kind of legal proceeding, civil or criminal . . . *which United States attorneys are authorized by law to conduct*," § 515(a) (emphasis added). By granting the Attorney General the authority to appoint a "special attorney" or a "special assistant" with powers analogous to a duly-authorized U.S. Attorney, Congress necessarily distinguished those "special" positions from the U.S. Attorney. Congress "could easily have" said in Section 515 that an Attorney-General-appointed "special attorney" could serve "as" a U.S. Attorney, and it "presumably would have" if it intended the result the government seeks here. *Knight v. Comm'r*, 552 U.S. 181, 188 (2008).

Context leads to a similar conclusion. Congress has legislated a default rule of presidential nomination and Senate confirmation (in Section 541), a U.S. Attorney-

---

[3] The order also cites 28 U.S.C. §§ 509 and 510, but neither Section 509 nor Section 510 supplies "an officer-appointing power." *See United States v. Trump*, 740 F. Supp. 3d 1245, 1266 (S.D. Fla. 2024).

specific vacancy provision (in Section 546), and a broader interstitial mechanism for addressing executive-branch vacancies that can be applied to U.S. Attorneys (in the FVRA). It has also authorized the Attorney General to appoint special attorneys to assist U.S. Attorneys. *See* 28 U.S.C. § 543. But what Congress has not done is empower the Attorney General to appoint a special attorney for herself under Section 515 and orchestrate a series of removals and resignations to transform that special attorney—to whose nomination under Section 541 the Senate refused to consent and who is not eligible under Section 546, *see supra* at 8-9, or the FVRA, *see infra* at 12-14—into an acting U.S. Attorney. Abiding that result here would almost certainly fuel future efforts at circumvention.

Finally, Section 515's history confirms its narrow purpose. The office of the U.S. Attorney is venerable and was established shortly after the founding under the 1789 Judiciary Act (although at the time, the position was known as a "district attorney"). *See* Judiciary Act, § 35, 1 Stat. 73 (1789). Not until 1870—when creating the Department of Justice—did Congress provide the Attorney General authority to appoint assistants for herself and for district attorneys. *See* An Act to Establish the Department of Justice, ch. 150, § 17, 16 Stat. 162, 164-65 (1870). Congress intended the Attorney General to use this authority where necessary to "employ special counsel in special cases." H.R. Rep. No. 59-2901, at 2 (1906). It was never intended to displace the longstanding separate regime for the appointment and operation of U.S. Attorneys. Indeed, although "Attorneys General [have] made extensive use of special attorneys," *In re Persico*, 522 F.2d 41, 54 (2d Cir. 1975), including to prosecute U.S. Attorneys, *see* 44 Cong. Rec. 4544 (1909), the July 24 order appears to be the first time an Attorney General has used the special-attorney appointment provision in Section 515 or its predecessors to install an acting U.S. Attorney. *Cf. Seila L. LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 220 (2020) ("Perhaps the most telling indication of [a] severe constitutional problem' with an

11

executive entity 'is [a] lack of historical precedent' to support it.") (quoting *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 505 (2010)).

2. The Attorney General's order also relies on a flawed reading of the FVRA. That law provides that a "first assistant" can temporarily fill an executive-branch vacancy,[4] 5 U.S.C. § 3345(a)(1), but only if certain conditions are met, *see* § 3345(b)(1). Specifically, Section 3345(b)(1) forbids a person from serving as an acting officer if "(A) during the 365-day period preceding the date of the death, resignation, or beginning of inability to serve, such person" either "(ii) did not serve in the position of first assistant to the office of such officer," or "(ii) served in the position of first assistant to the office of such officer for less than 90 days," and "(B) the President submits a nomination of such person to the Senate for appointment to such office." There is no dispute that Ms. Habba does not satisfy Section 3345(b)(1)(A) because to the extent she served as the first assistant, her service was far shorter than 90 days.

In the government's view, however, Section 3345(b)(1)'s prohibition does not apply because the President withdrew her nomination. The FVRA's text refutes that mistaken interpretation. Section 3345(b)(1) "prohibit[s] any person *who has been nominated* to fill any vacant office from performing that office's duties in an acting capacity." *SW Gen.*, 580 U.S. at 304 (emphasis added).[5] That prohibition readily applies

---

[4] The record is unclear on whether the U.S. Attorney position in the District of New Jersey was in fact vacant on July 24 when the Attorney General issued the order purporting to make Ms. Habba the Acting U.S. Attorney. If Ms. Habba's 120-day period under Section 546(c)(2) had lapsed, then Ms. Grace's appointment under Section 542(d) filled the office. The executive branch promptly sought to remove Ms. Grace, who does not appear to have exercised the office's powers, but to the extent "the 'power of removal of executive officers' is 'incident to the power of appointment,'" *Kennedy v. Braidwood Management, Inc.*, 145 S. Ct. 2427, 2444 (2025) (quoting *Myers v. United States*, 272 U.S. 52, 119 (1926)), it would have been the judiciary, and not the executive branch, that had the authority to remove Ms. Grace.

[5] Perhaps recognizing that the Supreme Court's analysis in *SW General* undermines its reading, the government pivots in subsequent briefing to argue that even if the FVRA does not authorize Ms. Habba to serve as the acting U.S. Attorney, she could nonetheless prosecute criminal defendants as the first assistant exercising delegated authority from

to Ms. Habba, whose nomination to the U.S. Attorney position on June 30 came less than a month before the Attorney General purported to install her as the acting U.S. Attorney through Section 515 and the FVRA, and whose nomination withdrawal apparently occurred mere minutes or seconds before the appointment that purported to place her in the acting U.S. Attorney role. It follows that "any function or duty" that Ms. Habba performs while improperly serving as the acting U.S. Attorney has "no force or effect" and "may not be ratified." § 3348(d).

Moreover, the timeline of Ms. Habba's supposed appointment defeats the government's fanciful concern that "the mere fact of a past nomination" will "forever bar" a person from serving in an acting capacity in the office to which the person had been nominated. ECF No. 108 at 13; *see also* ECF No. 127 at 9 (describing this as a "proposed lifetime ban"). When the executive both has nominated and seeks to install the same person as an acting officer within the same congressional session, *see* Senate Rule XXXI(6) (noting that unacted-upon nominations are returned to the White House at the end of a congressional session)—indeed, within a day—there is no specter of a lifetime ban on serving in an acting capacity in that particular office. In any event, Congress may well have intended such a permanent ban for U.S. Attorney positions. *See* 28 U.S.C. § 546(b) (forbidding the Attorney General from appointing as an acting U.S. Attorney "a person to whose appointment by the President to that office the Senate refused to give advice and consent," without providing a time limitation).

History also undercuts the government's position. Recall that Ms. Habba was designated as the First Assistant U.S. Attorney only after the vacancy arose. In prior litigation in another case, the government "failed to identify a single example of a post-

---

the Attorney General. *See* ECF No. 114 at 8; ECF No. 127 at 15-22. Whatever the merits of that claim—and it is flawed, *see infra* at 16-19—it does not answer the question whether Ms. Habba is lawfully serving as the acting U.S. Attorney, as the Court's Order directed, *see* ECF No. 117 at 2.

vacancy first assistant serving in an acting capacity prior to enactment of the FVRA," a history that "casts some doubt on whether Congress intended the phrase 'first assistant' to encompass those appointed to the first-assistant position after the vacancy arose." *L.M.-M. v. Cuccinelli*, 442 F. Supp. 3d 1, 28-29 (D.D.C. 2020).[6]  It strains credulity to imagine that any examples exist of what occurred here: the individual installed as the post-vacancy first assistant was elevated to fill a vacancy created only moments earlier by her very own resignation from the position.  The absence of any historical practice supporting the government's unorthodox approach to a question that "concern[s] the allocation of power between two elected branches of Government" is a "significant weight" against it.  *See N.L.R.B. v. Noel Canning*, 573 U.S. 513, 524 (2014); *Seila L.*, 591 U.S. at 220.

3.  Accepting the July 24 order's strained reading of how Section 515 and the FVRA interact to install Ms. Habba's as the acting U.S. Attorney "necessarily raises the question whether that appointment complied with the Appointments Clause." *SW Gen.*, 580 U.S. at 312 (Thomas, J., concurring).  It does not.  At bottom, the July 24 order's untenable legal theory operates in service of the "ignoble" aim of "enabling the President to circumvent the Senate's role in the appointment process." *Noel Canning*, 573 U.S. at 580 (Scalia, J., concurring).  Consider what has happened so far.  Following Ms. Habba's initial appointment under Section 546 as the interim U.S. Attorney, which remains

---

[6] The Office of Legal Counsel has issued conflicting opinions on whether the FVRA requires that the individual who serves as the acting officer by virtue of being the first assistant must have been the first assistant at the time the vacancy arose.  *Compare Guidance on Application of Federal Vacancies Reform Act of 1998*, 23 Op. O.L.C. 60, 63-64 (1999) ("the better understanding is that you must be the first assistant when the vacancy occurs in order to be the acting officer"), *with Designation of Acting Associate Attorney General*, 25 Op. O.L.C. 177, 181 (2001) (taking the opposite view).  If the former view is correct, then Ms. Habba would be legally barred from serving as the acting United States Attorney by virtue of her post-vacancy first-assistant designation.  The government does not acknowledge (ECF No. 127 at 6) OLC's first opinion on the subject, despite later in its brief (*id.* at 18-19) relying on that opinion for a different point.

clouded with questions about its legitimacy, she served at least a full 120-day term under Section 546(c)(2) and potentially even more. *See* note 2, *supra*. At that point, when the judiciary, consistent with its role under Section 546(d), decided to appoint a different person to serve as U.S. Attorney, the executive removed that person (a removal of questionable legality *see* note 4, *supra*), and sought another way to reinstall Ms. Habba as the (acting) U.S. Attorney—this time under the FVRA, apparently (at least on the government's theory) giving Ms. Habba another 210 days on the job all without scrutiny by the Senate. And to achieve that result, the executive *withdrew* Ms. Habba's nomination, meaning the Senate is unable to perform its critical advice-and-consent function for the top federal prosecutor in New Jersey.[7] The executive branch's conduct in pressing Ms. Habba into the acting U.S. Attorney role has thus bypassed not only the Senate's role envisioned in Section 541, but also the additional separation-of-powers safeguard through the judiciary that Congress provided in Section 546(d).

If the Court does not put a stop to this unconstitutional maneuvering, further mischief could lie ahead. The FVRA provides that an acting officer may continue on the job an additional 210 days when the President submits either a first or second nomination, if that nomination is "rejected by the Senate, withdrawn, or returned to the President." § 3346(b)(1). In other words, through a gerrymandered process of nomination submission and withdrawals, the executive branch could potentially seek to keep Ms. Habba as the acting U.S. Attorney while shielding her from Senate review for well over a year. Permitting such conduct would "eviscerate the divided-powers framework" that the Appointments Clause establishes. *N.L.R.B. v. New Vista Nursing and Rehab.*, 719 F.3d 203, 230 (3d Cir. 2013).

A conclusion that Ms. Habba is not validly serving as the acting U.S. Attorney furthers the accountability the Appointments Clause was designed to guarantee, *see*

---

[7] As the government concedes, "[i]ndeed, the President submitted no nomination whatsoever since then." ECF No. 127 at 17.

*United States v. Arthrex, Inc.*, 594 U.S. 1, 12 (2021), without preventing the filling of the vacancy through lawful operation of the FVRA and Section 546. The FVRA provides the President with other "tools," *L.M.-M*, 442 F. Supp. at 34, to temporarily fill vacancies before the Senate confirms a presidential nominee. Those include relying on an experienced first assistant (like Ms. Grace), § 3345(a)(1), or another PAS officer or sufficiently senior agency official to assume the role, *see* § 3345(a)(1)-(2). And where (unlike here) a district court fails to act under Section 546(d), that provision may also permit a "second interim appointment," *In re Grand Jury Proc.*, 671 F. Supp. 5, 7 (D. Mass. 1987); Alito Memo at 4, albeit not for Ms. Habba for the reasons given above, *see* note 2, *supra*.

### C. The Attorney General cannot delegate Ms. Habba the authority to lead the U.S. Attorney's Office as a Special Attorney.

While accusing the defendants in this criminal case of "invent[ing] a requirement," ECF No. 127 at 4, that the government itself had previously treated as such, *see* note 6 *supra*, the government pioneers yet another rationale to keep Ms. Habba in charge of the U.S. Attorney's Office, *see* ECF No. 127 at 15-22. In its view, Ms. Habba need not actually serve as the acting U.S. Attorney because she can simply perform that job without the title while in fact exercising powers delegated from the Attorney General. That proconsul theory of federal prosecutorial power would render superfluous the statutory scheme for U.S. Attorney appointments, run roughshod over the U.S. Attorney residency requirement, and give rise to "extreme implications" that the government apparently "openly embraces." ECF No. 116 at 21. The Court should reject it.

Superfluity is the first problem with the government's delegation theory. Courts should avoid an interpretation that is "contrary to Congress' apparent intent" and that would have the "practical effect" of rendering a statutory scheme "entirely superfluous in all but the most unusual circumstances." *TRW Inc. v. Andrews*, 534 U.S. 19, 29 (2001).

Yet that is precisely what the government advocates here. Never mind that Congress has provided no fewer than three ways to fill a U.S. Attorney vacancy: presidential nomination and Senate confirmation, 28 U.S.C. § 541; a time-limited Attorney-General appointment followed by a within-district judiciary appointment, 28 U.S.C. § 546; and a longstanding mechanism for filling vacant executive-branch PAS offices that the government has used interchangeably with Section 546, 5 U.S.C. §§ 3345 *et seq.*; *see Temporary Filling of Vacancies in the Office of United States Attorney*, 27 Op. O.L.C. 149, 149-50 (2003) (explaining government's view that both Section 546 and FVRA are available to fill U.S. Attorney vacancies). If the Attorney General can simply handpick her preferred lawyers— lawyers who under Section 515 could have been private citizens only moments before being appointed as a "special attorney"—to run the ninety-plus U.S. Attorney's offices throughout the country under her delegated authority, Congress need not have bothered with such a system.

The government insists that its Attorney-General-delegation theory is necessary to avoid "crippl[ing] the operations of the federal government." ECF No. 127 at 22 (citation omitted). Whatever the merits of that concern may be in some situations, it would blink reality to invoke it here. The district court for the District of New Jersey had acted under Section 546(d) to ensure that Ms. Grace, an experienced federal prosecutor, could step into the U.S. Attorney position after Ms. Habba's tenure under Section 546 ended. Even assuming the executive was intent on creating a vacancy by removing Ms. Grace, it may also have been possible for the Attorney General or the President to appoint someone other than Ms. Habba under Section 546(a) or the FVRA. The continuity of the U.S. Attorney's office in New Jersey was not under threat—until the executive removed Ms. Grace and the Attorney General issued the legally flawed July 24 order.[8]

_____

[8] The government's claim (ECF No. 127 at 12) that "the Attorney General had every right to" fire Ms. Grace not only from her court-appointed position, but from her position as an

The delegation theory also undermines another statute governing U.S. Attorneys: the residency requirement.  Under 28 U.S.C. § 545, a U.S. Attorney "shall reside in the district for which he is appointed."  § 545(a).  That requirement ensures that U.S. Attorneys understand the district over which their prosecutorial power extends.  The government points out (ECF No. 127 at 21) that Ms. Habba's role as a Special-Attorney-delegated-authority-to-act-as-though-she-were-a-U.S.-Attorney means that no one needs to comply with this residency requirement.[9]  But that is a bug, not a feature.  The upshot of the government's delegation theory is that the executive can ignore the congressionally enacted residency requirement whenever it sees fit.  It also means that the Attorney General has effectively confirmed herself as the U.S. Attorney for the District of New Jersey.

This imperial approach to the remote operation of U.S. Attorney's offices has at least two "extreme implications."  ECF No. 116 at 21.  First, this Court observed that it

Assistant United States Attorney is misleading, or at best incomplete.  The government relies upon 28 U.S.C. § 542(b), which provides that "[e]ach assistant United States attorney is subject to removal by the Attorney General," *id.*, but omits mention of the "for cause" limitation on the Attorney General's removal power under the Civil Service Reform Act, *see* 5 U.S.C. § 7513(a).  By failing to account for that limitation, the government's brief conceals the radical nature of firing Ms. Grace from the civil service—one of several radical maneuvers used to install Ms. Habba into her current position.  The government also ignores the FVRA's limitations on the Attorney General's power, relying upon 28 C.F.R. § 0.137(b) to claim that the Attorney General could remove Ms. Grace as First Assistant and install Ms. Habba in her stead.  ECF No. 127 at 12; *see* 28 C.F.R. § 0.137(b) ("Where there is no position of Principal Deputy to the PAS office, the First Assistant shall be the person whom the Attorney General designates in writing.").  But the regulation cannot trump the statute: As explained above, notwithstanding § 0.137(b), the FVRA excludes individuals like Ms. Habba who served for less than 90 days and for whom the President has submitted a nomination to the office.  *See supra* at 12-14.

[9] Perhaps the government is aware that as of August 13, 2025, Ms. Habba's New Jersey attorney registration represents that her employer is "OUT OF STATE" in Washington, DC.  *See* New Jersey Courts, Attorney Search – Alina Habba, available at http://portal attysearch-cloud.njcourts.gov/prweb/PRServletPublicAuth/app/Attorney/-amRUHgepTwWWiiBQpI9_yQNuum4oN16*/!STANDARD (last visited Aug. 13, 2025) (attached as Exhibit 2).

would allow Ms. Habba to "exercise all of the powers of the United States Attorney without being subject to *any of the statutory limitations on that office*." *Id.* While the government candidly concedes that an acting officer could potentially serve for "years" under the FVRA, *see* ECF No. 127 at 11; *see also supra* at 15 (noting the possibility for manipulation of the FVRA system to keep an acting official in that role), it does not likewise acknowledge that its delegation theory would impose no time limits at all. It instead offers the anodyne description of someone in Ms. Habba's role as "merely performing functions of an office pursuant to a delegation" and thus "not subject to the statutory requirements for appointing and confirming a full-fledged U.S. Attorney." ECF No. 127 at 18.

Second, the government appears so committed to its dubious delegation theory to keep Ms. Habba in a leadership role in the New Jersey U.S. Attorney's Office that it is willing to forgo the possibility of pursuing certain critical government appeals. Federal law provides that the government can appeal adverse decisions involving the suppression or exclusion of evidence or requiring the government to return seized property only where "*the United States attorney* certifies to the district court that the appeal is not taken for purpose of delay and that the evidence is a substantial proof of a fact material in the proceeding." 18 U.S.C. § 3731 (emphasis added). Another attorney operating with substantial authority is not sufficient, *see United States v. Weyrauch*, 544 F.3d 969, 974-75 (9th Cir. 2009) (per curiam); *United States v. Gantt*, 194 F.3d 987, 988-1000 (9th Cir. 1999)—as the government here fully recognizes, *see* ECF No. 127 at 22. Even the Attorney General's say-so would not comply with the statute. If the government were truly committed to safeguarding the continued functioning of federal prosecutorial power in New Jersey and to avoid "crippling" interruptions, it is hard to imagine that it would take a step that jeopardizes its ability to appeal adverse judicial decisions.

**CONCLUSION**

For the foregoing reasons, the Court should conclude that Ms. Habba is not validly appointed to serve as the acting U.S. Attorney for the District of New Jersey and cannot lead that office exercising the delegated powers of the Attorney General.

Respectfully submitted,

/s/ James I. Pearce
JAMES I. PEARCE†
MARY L. DOHRMANN††
NATHANIEL A.G. ZELINSKY
WASHINGTON LITIGATION GROUP
5335 Wisconsin Ave NW, Suite 440
Washington, D.C. 20015
202-617-2640
jpearce@washingtonlitigationgroup.org
mdohrmann@washingtonlitigationgroup.org
nzelinsky@washingtonlitigationgroup.org
† Admitted only in New York and North Carolina; practicing under the supervision of D.C. Bar Members
†† Admitted only in New York; practicing under the supervision of D.C. Bar Members

*Counsel for Amicus Association of Criminal Defense Lawyers of New Jersey*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 13, 2025, I caused a copy of this document to be served by the notice of electronic filing generated by this Court's electronic case filing system upon all counsel of record in this case.

<u>/s/ James I. Pearce</u>
JAMES I. PEARCE*
WASHINGTON LITIGATION GROUP
5335 Wisconsin Ave NW, Suite 440
Washington, D.C. 20015
202-204-0212
jpearce@washingtonlitigationgroup.org
 * Admitted only in New York and North Carolina; practicing under the supervision of D.C. Bar Members

21