UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JULIEN GIRAUD JR. and<br>JULIEN GIRAUD III,<br>            Defendants | Crim. No. 24-768 (MWB) |
| UNITED STATES OF AMERICA<br><br>v.<br><br>CESAR HUMBERTO PINA,<br>            Defendant | Crim. No. 25-436 (MWB) |

POST-ARGUMENT BRIEF OPPOSING MOTION TO BAR
ALINA HABBA FROM SUPERVISING THE PROSECUTION OF THIS CASE

PAMELA J. BONDI
U.S. Attorney General

HENRY C. WHITAKER
Counselor to the Attorney General

ALINA HABBA
Acting U.S. Attorney
Special Attorney

ROBERT A. PARKER
KATHERINE TWOMEY ALLEN
Criminal Division

MARK E. COYNE
Assistant U.S. Attorney
Chief, Appeals Division
(973) 297-2002

TABLE OF CONTENTS

**Page**

I.   Ms. Habba is validly serving as Acting U.S. Attorney ............................ 2

    1.    General/specific canon ................................................................. 2

    2.    Non-incumbent First Assistants are permissible. ......................... 3

    3.    Withdrawn nominations do not preclude service under § 3345(a)(1) ............. 4

    4.    Ms. Habba was validly appointed Special Attorney and designated FAUSA ................................................................. 5

    5.    There *is* a vacancy, and § 546 permits successive appointments .................... 6

II.  At minimum, Ms. Habba can validly lead the USAO-NJ pursuant to the Attorney General's express delegation of authority ......................................... 6

III. Dismissal of the *Pina* Indictment is not proper ..................................... 11

IV.  Nor is injunctive relief proper .............................................................. 15

CONCLUSION ........................................................................................... 15

Recognizing the importance of the functioning of the Executive Branch, Congress has authorized multiple ways for the continued exercise of the powers of an executive office in the event of a vacancy. For a U.S. Attorney, those methods include acting service under the FVRA, interim service under § 546, and the exercise of nonexclusive duties that have been delegated in accordance with statute. Each of these methods has precise rules, benefits, and drawbacks. It is typically up to the President, or the principal officers acting on his behalf, to decide which method is best suited to the circumstances. Critically, those methods supplement—rather than displace—each other. There is no conflict between the FVRA, § 546, and the various delegation statutes at issue, and the government's interpretation does not render any of them superfluous. These statutes address distinct though related topics and each applies in its own sphere.

This case involves an unusual situation where one method—an interim appointment under § 546—proved unworkable when the court and President could not agree on the best person for the job. Accordingly, the Executive Branch came at the problem from a different angle and installed an Acting U.S. Attorney under the FVRA instead of an interim one. In doing so, it acted in accordance with longstanding executive practice most often used during Presidential transitions. Even if this Court disagreed that Ms. Habba may serve as Acting U.S. Attorney, that would not mean that the U.S. Attorney's Office ceases to function. The Attorney General appoints First Assistants for precisely this reason—to ensure that someone continues to supervise the prosecution of crimes in a district even if there is no U.S. Attorney at all. Ms. Habba is the First Assistant U.S. Attorney and can continue exercising that delegated authority here. It is important that a Department of Justice component is overseen by someone who has the backing of the Executive Branch, and that the USAO can continue with its important work even when there is no Senate-confirmed, interim, or acting U.S. Attorney.

In sum, the government lawfully followed the complex rules that apply equally across the Executive Branch. This Court should not call into question longstanding executive prac-

tice or distort broadly applicable rules regarding acting service and delegation based on unwarranted concerns about the atypical circumstances here.

I.    **Ms. Habba is validly serving as Acting U.S. Attorney.**

As explained in our prior briefs, Ms. Habba is validly serving under the FVRA as the Acting U.S. Attorney. DE108 at 10–23; DE127 at 2–15. Below we address specific points raised at oral argument and in defendant Pina's briefs.

**1. General/specific canon.** The specific-governs-the-general cannon does not apply here, and Pina's reliance on *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639 (2012) is misplaced. *Pina* DE52-1 at 12–17. The canon is "most frequently applied to statutes in which a general permission or prohibition is *contradicted* by a specific prohibition or permission." 566 U.S. at 645 (emphasis added). The canon also applies where there is a structural *conflict* because "a general authorization and *a more limited,* specific authorization exist side-by-side." *Id.* (emphasis added). In that case, the point of the canon is to avoid "the superfluity of a specific provision that is swallowed by the general one." *Id.* at 645. But as previously explained, applying the FVRA does not "contradict" § 546 or render it "superfluous" because the statutes simply address different, albeit related, topics: § 546 governs the appointment of an *interim* U.S. Attorney, while the FVRA governs the designation of an *acting* U.S. attorney. DE127 at 10–12; *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 510 (2018). While each position is a means of addressing the vacancy of a Senate-confirmed U.S. Attorney, each position is subject to different rules and constraints.

The canon also "is not an absolute rule" and, even if it applied, would be "overcome by textual indications that point in the other direction" here. *RadLAX*, 566 U.S. at 646–47. In particular, the FVRA expressly provides that it is the exclusive means for designating an acting official, unless there is an officer-specific acting statute, in which case the FVRA is non-exclusive *but still available*, as courts have consistently held. *See* 5 U.S.C. 3347(a)(1); DE108 at 15-19. And § 546 expressly harmonizes itself with the President's appointment power set forth

in § 541. *See* 28 U.S.C. § 546(c)(1) (providing that an interim U.S. Attorney only serves until a PAS U.S. Attorney qualifies under § 541).[1]

**2. Non-incumbent First Assistants are permissible.** The plain text of the FVRA provides for acting service by the first assistant "to the office" that is vacant. 5 U.S.C. § 3345(a)(1). It is not limited to the first assistant to the particular "officer" who becomes unable to perform the duties. Thus, there is no requirement that the first assistant already be serving in that role at the time that the vacancy arises. DE127 at 4–8. This interpretation of subsection (a)(1) does not render subsections (a)(2) and (a)(3) superfluous. Subsections (a)(2) and (a)(3) play a distinct role when the first assistant position is itself a PAS office. In that circumstance, (a)(1) is unavailable because the Executive Branch cannot unilaterally designate someone to be first assistant; instead, the President must use (a)(2) or (a)(3). That would be true, for example, in the Department of State if the office of the Secretary of State were vacant because the Deputy Secretary is a PAS office. 22 U.S.C. § 2651a(a)(2). Furthermore, (a)(2) and (a)(3) also play a distinct role when the President wants to leave the current first assistant in place and appoint someone else to be the acting officer—*e.g.*, because the individual serving as first assistant is the best suited to perform the important second-in-command functions of a first assistant.

Defendants offer no response to the routine executive practice that occurs during Presidential transitions in which new first assistants are appointed at or after noon on Inauguration Day precisely so that they can serve as acting officials for PAS offices under § 3345(a)(1). DE127 at 6; Tr. 57. The Girauds state that Presidential transitions are "unique," Tr. 71, but there is no textual basis to read (a)(1) to apply differently during transitions than at other times—especially since the FVRA *elsewhere* creates different rules for transitions, *see* 5 U.S.C. § 3349a. Defendants are asking this court to effectively overrule decades of executive practice

---

[1] In all events, the general/specific canon provides no support for Pina's strange suggestion that § 546 is the more specific statute only if the Attorney General invokes it, but until the Attorney General does so, the more general FVRA allows acting service (including prior to Ms. Habba's interim appointment here). Dkt 52-1 at 12–14; DE61 at 14.

and disrupt the transition of power when administrations change political parties and are unwilling to use holdover acting officials.

This Court asked about the Senate Report's statements that if there is no first assistant, the President must use the other statutory method for appointing acting officers, Tr. 79–80. If anything, the Senate Report supports the government's interpretation because it was describing an earlier bill that used critically different language—it limited the default service to the first assistant "of such officer." S. Rep. No. 105-250 at 25 (1998). By contrast, the enacted statute applies to the first assistant "*to the office* of such officer." 5 U.S.C. § 3345(a)(1) (emphasis added). That change should be given effect, especially because the statute elsewhere makes distinctions based on whether the first assistant was an incumbent—including in § 3345(b)(1), which expressly contemplates the possibility of a first assistant serving as acting *despite* being a non-incumbent.

**3. Withdrawn nominations do not preclude service under § 3345(a)(1).** The ACDL-NJ suggested that their interpretation of § 3345(b)(1)(B) would not result in a lifetime bar on "Acting" service for previously nominated individuals because the prohibition would lift when the current "Congressional session ends." Tr. 20. There is no textual support for that attempt to limit the absurdity of reading § 3345(b)(1)(B) to cover *past* nominations. Instead, as the Court acknowledged Friday, Tr. 86–87, § 3345(b)(1)(B)'s use of the present tense—"submits"—shows that for the bar to apply, a nomination must be pending. So does the Supreme Court's use of the present-perfect tense to describe what triggers the bar: "Subsection (b)(1) of the FVRA prevents a person *who has been nominated* for a vacant PAS office from performing the duties of that office in an acting capacity." *NLRB v. SW General, Inc.*, 580 U.S. 288, 299 (2017) (emphasis added). The "present-perfect tense conveys to a listener that the event in question continues to be true or valid." *Hewitt v. United States*, 145 S. Ct. 2165, 2172 (2025). Allowing individuals whose nominations have been withdrawn to serve as acting does

not end-run the Senate's confirmation process. To the contrary, the FVRA expressly contemplates that even those whose nominations *are rejected* can serve as acting officials for the time periods specified in § 3346(b).[2]

**4. Ms. Habba was validly appointed Special Attorney and designated FAUSA.** In response to the Court's question, Tr. 99, there is no requirement that the Attorney General limit an appointment under 28 U.S.C. § 515 to a specific case or cases. *See, e.g.*, *United States v. Prueitt*, 540 F.2d 995, 1003 (9th Cir. 1976) ("Section 515(a) does not confine its application to particular types of cases or defendants[.]"); *United States v. Wrigley*, 520 F.2d 362, 369 (8th Cir. 1975) ("Nothing would be gained by requiring the Attorney General to designate the type of case to be prosecuted by the special attorneys when there is no limitation to the scope of his authority."); *In re Persico*, 522 F.2d 41, 62 (2d Cir. 1975) ("[A] special attorney's commission need not specify the statutes under which the attorney is to investigate and prosecute or the specific prospective defendants.").

Moreover, 28 U.S.C. § 515 is a freestanding grant of appointment authority: it refers to "special assistant to the Attorney General," an office that appears nowhere else in Title 28. But even if § 515 is not a freestanding grant of appointment authority, 28 U.S.C. §§ 542 and 543 plainly are. The former is titled "Assistant United States attorneys"; the latter "Special attorneys." Ms. Habba's appointment order did not have to cite either provision for them to apply. The order stated that the Attorney General was appointing Ms. Habba "as a Special Attorney" by "virtue of the authority vested in the Attorney General by law, *including*" §§ 509, 510 and 515. DE108-7 (emphasis added). And by "designating" Ms. Habba "as First *Assistant United States Attorney*," *id.* (emphasis added), the order necessarily invoked § 542.

Nor is the problem that confronted the court in *United States v. Trump*, 740 F. Supp. 3d 1245 (S.D. Fla. 2024), present here. In that case, the Special Counsel did not have to report

---

[2] The pending nomination bar would have applied to Bill Lann Lee had he been subject to the FVRA when it became effective in October 1998, because his second nomination was still pending. *See* https://www.congress.gov/nomination/105th-congress/865?q=%7B%22searc h%22%3A%22%5C%22Bill+Lann+Lee%5C%22%22%7D&s=6&r=2

– 5 –

to the U.S. Attorney, whereas here, Ms. Habba's appointment as Special Attorney and FAUSA would require her to report to the U.S. Attorney once one is confirmed. That also explains why *L.M.-M. v. Cuccinelli*, 442 F. Supp. 3d 1 (D.D.C. 2020), is inapposite. Unlike the appointment there, Ms. Habba's appointment is not limited to the duration of the vacancy in the office of U.S. Attorney. That there does not happen to be a U.S. Attorney at the moment cannot invalidate the appointment: the Special Attorney is charged with assisting whomever holds that office. If the Attorney General had appointed a Special Attorney to assist the last confirmed U.S. Attorney, no one thinks that appointment would have become ineffective when the U.S. Attorney resigned.

**5. There *is* a vacancy, and § 546 permits successive appointments.** It does not matter whether Ms. Habba's resignation as interim U.S. Attorney and the President's removal of her purported judicially appointed successor created a "new" vacancy under § 3345(a)(1) or merely perpetuated the old vacancy that arose when the last confirmed U.S. Attorney resigned. Either way, there is a vacancy now. And on July 24, a new 210-day FVRA clock started, either because the withdrawal of Ms. Habba's nomination triggered a new 210-day period, or because a new vacancy opened upon her resignation. *See* 5 U.S.C. § 3346(b)(1) ("If the first nomination for the office is … withdrawn, … the person may continue to serve as the acting officer for no more than 210 days after the date of such … withdrawal[.]"). Meanwhile, for the reasons we explain in our prior briefing, DE127 at 13–14, and at argument, Tr. 26–29, 35–38, 40–41, § 546 permits successive appointments, at least where, as here, the 120-day limit was never reached for any of those appointments.

**II.    At minimum, Ms. Habba can validly lead USAO-NJ pursuant to the Attorney General's express delegation of authority.**

Even if Ms. Habba were not validly serving as the Acting U.S. Attorney, the FVRA's exclusivity provision would not prohibit the Attorney General's delegation of prosecutorial and supervisory authority to Ms. Habba as a non-acting official. The FVRA authorizes temporary service "in an acting capacity" when a PAS office is vacant, 5 U.S.C. § 3345(a)(1), and

sets a time limit on the service of such "acting officer[s]," *id.* § 3346. Section § 3347(a) states that §§ 3345 and 3346 are the "exclusive means for temporarily authorizing an *acting official* to perform the functions and duties of any office of an Executive agency … for which appointment is required to be made by the President, by and with the advice and consent of the Senate," subject to two exceptions. *Id.* § 3347(a) (emphasis added). By its own terms, § 3347(a) applies only to "acting" service and therefore does not apply to the delegation of functions to non-acting officials. Critically, § 3347(a) does not state that the FVRA is "the exclusive means for temporarily authorizing *[anyone]* to perform the functions and duties" of a vacant PAS office. That reading would render the phrase "acting official" superfluous. Service as an acting official is important for two reasons: (1) the title of "Acting" official (as opposed to delegee) is valuable and (2) an acting official can perform both the delegable and nondelegable functions of the vacant office.

Other provisions of the FVRA confirm that analysis. First, § 3347 distinguishes between acting service statutes and delegation statutes. Section 3347(a)(1) provides an exception to the FVRA's exclusive means for acting service when another statute expressly authorizes designation of "an officer or employee to perform the functions and duties of a specified office temporarily in an *acting capacity*." *Id.* § 3347(a)(1) (emphasis added). And § 3347(b), in turn, states that "[a]ny statutory provision providing general authority to the head of an Executive agency … to delegate duties statutorily vested in that agency head to, or to reassign duties among, officers or employees of such Executive agency, is not a statutory provision to which subsection (a)(1) applies." *Id.* § 3347(b). In other words, § 3347(b) states that general delegation statutes do *not* count as office-specific *acting* service statutes under § 3347(a)(1). Both courts of appeals that have considered § 3347(b) have agreed. *See Gonzales & Gonzales Bonds & Insurance Agency Inc. v. U.S. Dept. of Homeland Security*, 107 F.4th 1064, 1078 & n.7 (9th Cir. 2024); *Arthrex, Inc. v. Smith & Nephew, Inc.*, 35 F.4th 1328, 1338 (Fed. Cir. 2022), *cert. denied*, 143 S. Ct. 2493 (2023). So the government cannot use delegation statutes to create an acting

– 7 –

official without complying with the FVRA. But the government can, as it did here, use delegation statutes to delegate functions to *non*-acting officials.

Second, the FVRA's remedy provision confirms that, even when acting service is no longer authorized under the FVRA, the delegable functions of a vacant PAS office may still be performed by another official. Section 3348(d) provides that the performance of "any function or duty of a vacant office" by a person not properly serving under the FVRA "shall have no force or effect" and "may not be ratified," but § 3348(a) narrowly defines "function or duty" as *nondelegable* duties—*i.e.*, any "function or duty" that is required by statute or regulation "to be performed by the applicable officer (*and only that officer*)." 5 U.S.C. § 3348(d), (a)(2)(A)(ii), (a)(2)(B)(i)(II) (emphasis added). Every court of appeals that has considered the meaning of § 3348—including the Third Circuit in a binding published opinion—has agreed that the statute applies only to nondelegable duties. *See Kajmowicz v. Whitaker*, 42 F.4th 138, 148 (3d Cir. 2022); *Arthrex*, 35 F.4th at 1336; *Gonzales & Gonzales Bonds*, 107 F.4th at 1073; *Stand Up for California! v. U.S. Dep't of the Interior*, 994 F.3d 616, 622 (D.C. Cir. 2021); *Schaghticoke Tribal Nation v. Kempthorne*, 587 F.3d 132, 135 (2d Cir. 2009) (per curiam).

As this Court suggested at oral argument, this narrow definition limited to nondelegable duties applies only in § 3348, and the ordinary meaning of the term "functions and duties," which includes both delegable and nondelegable functions and duties, applies to the other sections of the FVRA. *See* Tr. 102–03; 5 U.S.C. § 3348(a) (providing meaning for terms "[i]n this section"). That is entirely consistent with the government's position. Indeed, when § 3345(a) authorizes certain officials to "perform the functions and duties of the vacant office temporarily in an acting capacity," that authority includes *all* of the functions of the vacant office—both delegable and nondelegable. Likewise, when § 3347(a) states that the FVRA is generally the "exclusive means for temporarily authorizing an acting official to perform the functions and duties" of a PAS office, it means that the FVRA is the exclusive means for authorizing an *acting official* to perform *all* of the functions of the office—both delegable and nondelegable. As explained, § 3347(a) applies only to acting service, so its use of the ordinary

– 8 –

meaning of "functions and duties" does not invalidate *all* temporary delegations of PAS functions and duties. The remedies in § 3348(d) apply only to the improper exercise of nondelegable functions, which confirms that delegations to non-acting officials are still permissible.

At oral argument, this Court asked about the legislative history regarding § 3347. *See* Tr. 111–12. The Senate Report adopted the same interpretation that the government advances: "any statutory provision providing general authority to the head of an executive agency to delegate or reassign duties within that executive agency is not a statutory provision that qualifies within the exception contained in section 3347(a)(2) for existing statutes that provide for the filling of a vacancy in a specific office." S. Rep. No. 105-250 at 17.[3] As this Court noted, the Senate Report and other legislative history criticized DOJ for arguing that its general delegation statutes superseded the prior version of the FVRA and allowed "for designation of acting officials" outside of that statute. *See id.* at 3, 17. That is not the government's argument here. As explained, the government agrees that the FVRA applies and that § 3347(b) forecloses the use of general delegation statutes to designate *acting officials*. *Supra* at 7–8; Tr. 130; *see also Gonzales & Gonzales Bonds*, 107 F.4th at 1078 n.7. Moreover, the very same Senate Report explained that the remedies were limited to nondelegable duties and many PAS offices "lack any meaningful statutory duties," so the statute had defined nondelegable duties to include those that were made nondelegable by regulation during the previous 180 days. S. Rep. No. 105-250 at 17–18. And, importantly, the Senate Report also recognized that "[d]elegable functions of the [vacant PAS] office could still be performed by other officers or employees." *Id.* at 18. The minority views also emphasized that the remedies are limited to "nondelegable duties" and the exercise of delegable duties "would continue," so that the statute "does not cause an unintended shutdown" of the agency with the vacancy. *Id.* at 31; *see also id.* at 36 ("It is imperative that the bill unequivocally ensure that the affected functions and duties of the office are only those that are expressly deemed nondelegable by statute or

---

[3] Section 3347(a)(2) of the proposed bill became § 3347(a)(1) of the enacted bill.

– 9 –

regulation. Absent that clarity, whole components of federal agencies would have to stop their work."). The legislative history supports the government's interpretation.

The defendants have no answer to the longstanding executive practice that further supports this view: as explained, first assistants routinely continue to exercise the delegable functions of a vacant PAS office, without the title of "Acting" official, when the FVRA time-limit expires. *See* DE127 at 20–21; DE114 at 8–9; Tr. 104–05. In the Executive Branch, OLC has interpreted the FVRA to allow such delegations since it was enacted, including for numerous Principal Deputy Assistant Attorneys General who have run Main Justice components over the past two decades; in the Legislative Branch, the Government Accountability Office has repeatedly agreed that the nonexclusive duties of a vacant PAS office can be performed by an official delegated those functions without violating the FVRA; and in the Judicial Branch, every court of appeals to consider the issue has agreed with the government's plain-text interpretation of the FVRA. *See* DE127 at 18–20.

Two decisions are particularly important. *Kajmowicz* is a binding published decision in which the Third Circuit held that § 3348(d)'s ratification bar does not apply to delegable duties. 42 F.4th at 148-52. The Third Circuit relied on the plain text of § 3348(a) and rejected arguments "rooted in the [FVRA's] purpose and legislative history," including the claim "that we risk defanging the [FVRA]," noting that the plaintiff "must raise his policy concerns elsewhere." *Id.* at 150. *Kajmowicz* involved ratification and did not present the precise circumstance here—performance of a vacant PAS function pursuant to a delegation—but the Third Circuit's interpretation of § 3348 and its general reasoning apply here. Indeed, the court relied heavily (42 F.4th at 148, 151) on the Federal Circuit's decision in *Arthrex*, where the delegation issue was squarely presented and the delegation was upheld.

In *Arthrex*, the Federal Circuit held that the FVRA does not prohibit a subordinate official from exercising a delegated function of a vacant PAS office pursuant to a wholesale delegation of functions. 35 F.4th at 1335–39. The office of the Under Secretary of Commerce

– 10 –

for Intellectual Property (the Director for Patents), which is a PAS office, was vacant. Pursuant to statute, the Deputy Under Secretary of Commerce for Intellectual Property (Deputy Director) was vested with the authority to act as Director in the event of a vacancy. *Id.* at 1332 & n.1 (citing 35 U.S.C. § 3(b)(1)). But that office was also vacant. *Id.* A previous Director, however, had exercised his authority to delegate his powers, 35 U.S.C. § 3(b)(3)(B), to issue a standing order that provided: "If both the [Director] and the Deputy [Director] positions are vacant, the Commissioner for Patents ... will perform the non-exclusive functions and duties of the [Director]." *Arthrex*, 35 F.4th at 1332. The Commissioner for Patents acted pursuant to that wholesale delegation when he took the action that Arthrex challenged. *Id.*

The Federal Circuit rejected a challenge to the exercise of the Director's authority. The court held that the "FVRA applies only to non-delegable duties, and because deciding rehearing requests is a delegable duty, we hold that the FVRA does not apply here." *Id.* at 1335; *see also id.* at 1339. The court first explained that the plain text of the FVRA "is unambiguous" because the § 3348(a) narrowly defines the term "functions and duties" to mean nondelegable duties. *Id.* at 1335-36. The court then rejected Arthrex's reliance on the legislative history, explaining that it simply "demonstrates the competing considerations that went into the statute's adoption" and could not trump the plain text of the statute. *Id.* at 1336-37. The court also rejected Arthrex's argument that its interpretation would effectively render the FVRA's remedy and exclusivity provisions a nullity. The court explained that Congress enacted § 3348(a)(2) knowing that may offices lack nondelegable duties and that § 3347(b) "merely provides that a statute granting the head of an agency 'general authority … to delegate [his] duties' does not *exempt* the agency from the FVRA." *Arthrex*, 35 F.4th at 1337–38 (emphasis added). The Federal Circuit's reasoning applies fully here, and none of the defendants provides any response to that decision.

### III. Dismissal of the *Pina* Indictment is not proper.

Even if, contrary to all of the foregoing, this Court concludes that Ms. Habba cannot serve as the Acting U.S. Attorney, cannot supervise the *Pina* prosecution as Special Attorney

– 11 –

and FAUSA, and was no longer validly interim U.S. Attorney when the *Pina* Indictment was issued, dismissal of that Indictment still would not be proper. Pina's arguments to the contrary (*Pina* DE52-1 at 35–37) overlook the independent role of the grand jury in this matter. See DE116 at 11–12. The indictment was returned by the grand jury, which "is a constitutional fixture in its own right," *United States v. Williams*, 504 U.S. 36, 47 (1992) (cleaned up), and "act[s] independently of either prosecuting attorney or judge," *Stirone v. United States*, 361 U.S. 212, 218 (1960). "An indictment returned by a legally constituted and unbiased grand jury ... is enough to call for trial of the charge on the merits." *Costello v. United States*, 350 U.S. 359, 363 (1956). And failures by the Executive Branch—even prosecutorial misconduct before the grand jury—provide a court "no authority to dismiss the indictment ... absent a finding that [the defendant] w[as] prejudiced by such misconduct." *Bank of Nova Scotia v. United States*, 487 U.S. 250, 263 (1988).

Pina points to no such prejudice here, much less "prejudice" that "preclude[s] remedies other than dismissal." *United States v. Gussie*, 51 F.4th 535, 539 (3d Cir. 2022). Instead, citing three cases, including two predating the Depression, he contends that "it is routine for courts to dismiss the indictment" where "a federal prosecutor lacks the proper authority to act." *Pina* DE52-1 at 36. Not so. *See, e.g.*, *United States v. Smith*, 962 F.3d 755, 765–66 (4th Cir. 2020) ("Smith has cited no authority—nor could he—for his root-to-branch theory that as long as Whitaker's tenure as Acting Attorney General was unlawful, then the integrity of his prosecution" was "*necessarily* marred."); *United States v. Plesinski*, 912 F.2d 1033, 1038 (9th Cir. 1990) ("Nor did Feldman's unauthorized presence before the grand jury require a dismissal of the indictment."); *United States v. Ruiz Rijo*, 87 F. Supp. 2d 69, 71 (D.P.R. 2000) ("Even" the United States Attorney's "appointment is unconstitutional, Defendant's remedy would not be" dismissal, "for the appointment does not affect Defendant's basic constitutional rights."), *aff'd sub nom. United States v. Valdez-Santana*, 279 F.3d 143 (1st Cir. 2002).

"[D]ismissal of the indictment" in such a case "is appropriate only if it is established that the violation substantially influenced the grand jury's decision to indict, or if there is

grave doubt that the decision to indict was free from the substantial influence of such violations." *Bank of Nova Scotia*, 487 U.S. at 256 (cleaned up). Here, Ms. Habba did not present any evidence or the Indictment to the grand jury, nor did she attend those presentations to the grand jury.[4] Nor does Pina identify any other way in which Ms. Habba's precise role in the USAO-NJ affected the Indictment's substance. "Without a viable argument that Ms. Habba's appointment infects the grand jury issued indictment, there is no clear basis to dismiss it." DE116 at 12 (denying the Girauds' similar motion).

Nor would dismissal be proper under the Federal Rules of Criminal Procedure. An indictment or information "must be signed by an attorney for the government." Fed. R. Crim. P. R. 7(c). An "'Attorney for the government'' includes: "the Attorney General or an authorized assistant"; "a United States attorney or an authorized assistant"; and "any other attorney authorized by law to conduct proceedings under these rules as a prosecutor." Fed. R. Crim. P. R. 1(b)(1). Even if Ms. Habba was no longer the interim U.S. Attorney, she was still a Department of Justice attorney when her signature was affixed to the *Pina* Indictment. But even if that would not qualify her as "an authorized assistant" under Rule 7(c), the "signature of the prosecuting attorney is not an essential part of" the indictment; "nor is improper signing of the instrument a defect such as to invalidate it." *United States v. Wright*, 365 F.2d 135, 137 (7th Cir. 1966).

The *Pina* Indictment "was found by the grand jury, signed by the foreman, and filed according to law." *United States v. Easton*, 937 F.2d 160, 162 (5th Cir. 1991). The backer lists five AUSAs, *Pina* DE44 at 21, each of whom could sign the Indictment as "an attorney for the government" under Rule 7(c). Including their names on the backer demonstrates that they approved the Indictment. *See United States v. Kelley*, 404 F. Supp. 3d 447, 451 (D. Mass. 2019)

---

[4] We are submitting directly to the Court *ex parte* the relevant grand jury transcript and internal documents showing which AUSAs reviewed and approved the Indictment. The government nonetheless respectfully submits that such fact-specific information should not be necessary to show the Indictment was lawfully issued, even if Ms. Habba's appointment were somehow invalid.

(holding that "a criminal indictment is not rendered invalid … due to a defect associated with [the] attorney's signature on the indictment when other evidence demonstrates that the government has approved and endorsed the prosecution"). Because "any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded," Fed. R. Crim. P. 52(a), dismissal of the Indictment for failure to include an AUSAs' signature would not be proper. *See United States v. Boruff*, 909 F.2d 111, 118 (5th Cir. 1990) (finding harmless error under Rule 52(a) where "no government attorney had signed" the operative indictment).

Finally, although the Court need not reach the question, the centuries-old "*de facto* officer doctrine confers validity upon acts performed by a person acting under the color of official title even though it is later discovered that the legality of that person's appointment or election to office is deficient." *Ryder v. United States*, 515 U.S. 177, 180 (1995). Under that doctrine, a court may treat the "acts of an officer *de facto*" as "valid and binding," even if she was not "an officer *de jure*." *Phillips v. Payne*, 92 U.S. 130, 132 (1876).

The Supreme Court has "relied upon" the *de facto* officer doctrine "in several cases involving challenges by criminal defendants to the authority of a judge who participated in some part of the proceedings leading to their conviction and sentence." *Ryder*, 515 U.S. at 181 (discussing cases). There is no reason not to apply that doctrine to the statutory challenges Pina mounts to Ms. Habba's appointment. She is, after all, a member of the Executive Branch. Applying the *de facto* officer doctrine here would "involve[] no trespass upon the executive power of appointment." *McDowell v. United States*, 159 U.S. 596, 598 (1895).

Accordingly, any defect in Ms. Habba's appointment does not render invalid the official acts undertaken on her behalf. As the Court previously noted, DE116 at 15–16, 19, 24–25, it could redress an unlawful appointment through forward-looking relief such as a disqualification order. But that is the most Pina could obtain if Ms. Habba lacks authority to act in his case—which, as we have explained, is wrong.

**IV.  Nor is injunctive relief proper.**

Finally, injunctive relief against the government, and interlocutory review of the denial of such relief under 28 U.S.C. § 1292(a)(1), is exceedingly rare in criminal cases. *See Stolt-Nielsen, S.A. v. United States*, 442 F.3d 177, 183 (3d Cir. 2006) (except in rare cases involving chilling effects on First Amendment rights, courts generally lack authority to enjoin government from prosecuting a criminal case); *United States v. McIntosh*, 833 F.3d 1163, 1172 (9th Cir. 2016) ("In almost all federal criminal prosecutions, injunctive relief and interlocutory appeals will not be appropriate."). When a defendant alleges errors—even constitutional errors—in his prosecution or trial, he cannot seek to enjoin the rest of his prosecution and immediately appeal if his request is denied. "An order by a federal court that relates only to the conduct or progress of litigation before that court ordinarily is not considered an injunction and therefore is not appealable under § 1292(a)(1)." *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 279 (1988). Instead, the defendant must await final judgment and appeal at that time. *Cf. Flanagan v. United States*, 465 U.S. 259, 266 (1984) (interlocutory order disqualifying defense counsel is not immediately appealable as collateral order); *United States v. Barron*, 703 F.2d 270 (7th Cir. 1983) (per curiam) (interlocutory order denying motion to disqualify U.S. Attorney's office is not immediately appealable).[5] Thus, even if this Court concludes that Ms. Habba lacks the authority to supervise defendants' prosecutions—even as a Special Attorney and FAUSA—the most they would be entitled to is an order disqualifying Ms. Habba from participating in their cases, which should not be considered an injunction.

## CONCLUSION

For all these reasons and those the Government advanced in its prior briefing, this Court should deny the pending motions and request that Chief Judge Chagares reassign these cases back to their original District Judges.

---

[5] By contrast, orders disqualifying government counsel are immediately appealable as collateral orders because they are otherwise unreviewable after final judgment. *See, e.g.*, *United States v. Whittaker*, 268 F.3d 185, 191-93 (3d Cir. 2001).

Respectfully submitted,

PAMELA J. BONDI
U.S. Attorney General

HENRY C. WHITAKER
Counselor to the Attorney General

ALINA HABBA
Acting U.S. Attorney
Special Attorney

ROBERT A. PARKER
KATHERINE TWOMEY ALLEN
Criminal Division

By:   */s/ Mark E. Coyne*
     Mark E. Coyne
     Assistant U.S. Attorney
     Chief, Appeals Division
     (973) 297-2002

Date: August 18, 2025

**CERTIFICATION OF SERVICE**

      I hereby certify that on August 18, 2025, I caused a copy of this brief to be served by the notice of electronic filing generated by this Court's electronic case filing system upon all counsel of record in this case.

                                            Mark E. Coyne
                                            Assistant U.S. Attorney
                                            Chief, Appeals Division

Dated: August 18, 2025