PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

Nos. 25-2635 & 25-2636

———

UNITED STATES OF AMERICA,
Appellant

v.

JULIEN GIRAUD, JR.; JULIEN GIRAUD, III
(D.C. Criminal No. 1:24-cr-00768-001&002)

CESAR HUMBERTO PINA,
also known as Flipping NJ
(D.C. Criminal No. 2:25-cr-00436-001)

———

On Appeal from the United States District Court
for the District of New Jersey
District Judge:  Honorable Matthew W. Brann

———

Argued October 20, 2025

Before:  RESTREPO, SMITH and FISHER, *Circuit Judges*.


(Filed: December 1, 2025)


Pamela J. Bondi, Attorney General
Todd Blanche, Deputy Attorney General
Katherine T. Allen
Matthew R. Galeotti
Henry C. Whitaker [ARGUED]
United States Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530

Alina Habba, Acting U.S. Attorney & Special Attorney
Mark E. Coyne
Office of United States Attorney
970 Broad Street, Room 700
Newark, NJ 07102
        *Counsel for Appellant*

R. Trent McCotter
Catholic University of America
School of Law
3600 John McCormack Road NE
Washington, DC 20064
        *Counsel for Separation of Powers Clinic, Amicus Appellant*

Thomas S. Mirigliano
Law Office of Thomas S. Mirigliano
40 Wall Street, 32nd Floor

New York, NY 10005

Gina A. Amoriello
1515 Market Street
Philadelphia, PA 19102
        *Counsel for Julien Giraud, Jr., and Julien Giraud, III,*
*Appellees in No. 25-2635*

John P. Bolen
David A. Kolansky
Abbe D. Lowell [ARGUED]
Isabella M. Oishi
Lowell & Associates
1250 H Street NW, Suite 250
Washington, DC 20005

Gerald Krovatin
Krovatin Nau
60 Park Place, Suite 1100
Newark, NJ 07102
        *Counsel for Cesar Humberto Pina, Appellee in No. 25-*
*2636*

James I. Pearce [ARGUED]
Washington Litigation Group
5335 Wisconsin Avenue NW, Suite 440
Washington, DC 20015
        *Counsel for Association of Criminal Defense Lawyers*
*of New Jersey, Amicus Appellee*

Debra Loevy
Loevy & Loevy
311 N Aberdeen Street, 3rd Floor

Chicago, IL 60607
*Counsel for Former United States Attorneys, Amicus Appellee*

Thomas A. Berry
Cato Institute
1000 Massachusetts Avenue NW
Washington, DC 20001
*Counsel for CATO Institute, Amicus Appellee*

Mark A. Berman
Hartmann Doherty Rosa Berman & Bulbulia
433 Hackensack Avenue, Suite 1002
Hackensack, NJ 07601
*Counsel for Lloyd Doggett, Wayne T. Gilchrest, Stephen F. Lynch, Frank Pallone Jr., Bennie Thompson, Nydia M. Velazquez, Amicus Curiae*

Anne Burton-Walsh
Aguilar Bentley
171 E Ridgewood Avenue, Suite 201
Ridgewood, NJ 07450
*Counsel for Christopher Shays, John Leboutillier, Mickey Edwards, Peter Smith, Tom Petri, Jim Greenwood, David Trott and Barbara Comstock, Amicus Curiae*

———

OPINION OF THE COURT

———

FISHER, *Circuit Judge*.

The United States Attorneys' offices are some of the most critical agencies in the Federal Government. They play an important role in the criminal and civil justice systems and are vital in keeping our communities safe. The U.S. Attorney leading each office is an officer whose appointment requires Senate confirmation. Where a vacancy exists, Congress has shown a strong preference that an acting officer be someone with a breadth of experience to properly lead the office. It is apparent that the current administration has been frustrated by some of the legal and political barriers to getting its appointees in place. Its efforts to elevate its preferred candidate for U.S. Attorney for the District of New Jersey, Alina Habba, to the role of Acting U.S. Attorney demonstrate the difficulties it has faced—yet the citizens of New Jersey and the loyal employees in the U.S. Attorney's Office deserve some clarity and stability.

Congress has crafted various means through which agency authority is exercised absent a Senate-confirmed officer. When a presidentially appointed and Senate-confirmed officer resigns, the generally applicable Federal Vacancies Reform Act (FVRA) authorizes certain people to perform that officer's duties in an acting capacity subject to time limitations. In addition to the FVRA, other statutes expressly authorize the President, a court, or the head of an agency to designate

someone to perform the duties of specified offices in an acting or interim capacity. Parallel to these grants of acting or interim authority, many statutes grant agency heads broad authority to delegate their own duties to other employees of their agencies.

These cases require us to consider the intersection of these various statutes to determine whether Habba is lawfully acting as U.S. Attorney for the District of New Jersey under the FVRA or has been lawfully delegated the full scope of powers of an Acting U.S. Attorney. The defendants in two criminal cases moved to dismiss their indictments and to disqualify Habba from participating in their prosecutions, arguing that she is unlawfully serving as Acting U.S. Attorney. The District Court denied the motions to dismiss, but it granted the motions to disqualify Habba from the prosecutions. The Government appeals. We will affirm.

## I.

### A.

The Constitution requires that "Officers of the United States" be nominated by the President and confirmed by the Senate, except that Congress may authorize certain other means of appointment for "inferior Officers." U.S. Const. art. II, § 2, cl. II. An officer is "any appointee exercising significant authority pursuant to the laws of the United States." *Buckley v. Valeo*, 424 U.S. 1, 126 (1976). This presidential appointment and Senate confirmation process is widely referred to as the PAS process.

Congress has required the appointment of U.S. Attorneys to follow the PAS process. 28 U.S.C. § 541(a); *see also United States v. Arthrex, Inc.*, 594 U.S. 1, 12 (2021) (noting that the default method of appointment for principal and inferior officers is the PAS process). The PAS process can be lengthy, so Congress has provided various means by which

someone can fill the PAS officer's role in an acting or interim capacity until the Senate confirms a presidentially appointed nominee. Such acting or interim service is permitted, despite the Constitution's Appointments Clause, for a "limited time, and under special and temporary conditions." *United States v. Eaton*, 169 U.S. 331, 343 (1898).

The FVRA is the generally applicable statute for temporarily filling vacant PAS positions. *See* 5 U.S.C. §§ 3345–47. "If an officer of an Executive Agency . . . whose appointment to office is required to be made by the President, by and with the advice and consent of the Senate, dies, resigns, or is otherwise unable to perform the functions and duties of the office," then certain people can fill the role in an acting capacity. *Id.* § 3345(a). The FVRA first provides that "the first assistant to the office of such officer shall perform the functions and duties of the office temporarily in an acting capacity subject to" time limitations. *Id.* § 3345(a)(1). First assistants "automatically assume acting duties under (a)(1)," with no action required by the Executive. *See NLRB v. SW Gen., Inc.*, 580 U.S. 288, 305 (2017). Alternatively, "the President (and only the President) may" override the automatic elevation of the first assistant and instead direct a different PAS officer, 5 U.S.C. § 3345(a)(2), or an employee with the requisite amount of experience within the agency, *id.* § 3345(a)(3), to fill the role in an acting capacity.

The FVRA further limits who can fill the role. "[A] person may not serve as an acting officer for an office under this section, if . . . during the 365-day period preceding the [vacancy], such person" either never was the first assistant or was the first assistant for fewer than ninety days, "and the

7

President submits a nomination of such person to the Senate for appointment to such office." *Id.* § 3345(b)(1).

Finally, service as an acting officer under the FVRA is time-limited. "[T]he person serving as an acting officer . . . may serve in the office . . . for no longer than 210 days beginning on the date the vacancy occurs." *Id.* § 3346(a)(1). The 210-day clock is tolled during the time a nomination for the vacant office is pending before the Senate. *Id.* § 3346(a)(2). A rejection or withdrawal of the nomination triggers a new 210-day clock for acting service under the FVRA, again subject to tolling during the pendency of a second nomination. *Id.* § 3346(b).

The FVRA provides that it is "the exclusive means for temporarily authorizing an acting official to perform the functions and duties of" a PAS office. *Id.* § 3347(a). There is an exception if some other "statutory provision expressly . . . authorizes the President, a court, or the head of an Executive department, to designate an officer or employee to perform the functions and duties of a specified office temporarily in an acting capacity." *Id.* § 3347(a)(1)(A). However, a "statutory provision providing general authority to the head of an Executive agency . . . to delegate duties statutorily vested in that agency head to, or to reassign duties among, officers or employees of such Executive agency" is not a statutory provision that falls within the exception to the FVRA's exclusivity provision. *Id.* § 3347(b). In other words, general vesting and delegation statutes cannot be used to "temporarily authoriz[e] an acting official to perform the functions and duties" of a PAS office. *Id.* § 3347(a).

Congress expressly authorized additional means of temporarily filling vacant U.S. Attorney offices in 28 U.S.C. § 546(a): "[T]he Attorney General may appoint a United States

attorney for the district in which the office of United States attorney is vacant." An interim U.S. Attorney appointed this way may not be someone whose nomination the Senate previously rejected, but the Attorney General otherwise has ample discretion in her choice. *See id.* § 546(b). However, an interim selection under § 546 is subject to a shorter 120-day time limit. *Id.* § 546(c)(2). After 120 days, "the district court for such district may appoint a United States attorney to serve until the vacancy is filled." *Id.* § 546(d).

Separate and apart from the preceding statutes, which authorize the temporary assumption by certain people of an officer's powers, Congress has granted the Attorney General broad delegation authority. "All functions" of the Department of Justice "are vested in the Attorney General," subject to exceptions not relevant here. *See id.* § 509. The Attorney General may authorize "any other . . . employee . . . of the Department of Justice" to perform "any function of the Attorney General." *Id.* § 510. Additionally, the Attorney General is empowered to appoint special attorneys "to assist United States attorneys." *Id.* § 543(a). And the Attorney General may "specifically direct[]" a special attorney, or any officer of the Department of Justice, to "conduct any kind of legal proceeding, civil or criminal, . . . which United States attorneys are authorized by law to conduct." *Id.* § 515(a).

## B.

On January 8, 2025, the presidentially appointed and Senate-confirmed U.S. Attorney for the District of New Jersey, Phillip R. Sellinger, resigned. Then-First Assistant U.S. Attorney Vikas Khanna automatically assumed the functions and duties of the office pursuant to the FVRA and became the Acting U.S. Attorney for New Jersey. 5 U.S.C. § 3345(a). On March 3, under the new presidential administration, Attorney

9

General Pamela Bondi appointed John Giordano as Interim U.S. Attorney for New Jersey pursuant to 28 U.S.C. § 546(a). Giordano resigned three weeks later, at which time the Attorney General appointed Alina Habba as Interim U.S. Attorney, also pursuant to § 546(a). Habba was sworn in on March 28. On June 30, President Donald Trump nominated her for the permanent role. The Senate never acted on the nomination.

As § 546's 120-day deadline approached, the United States District Court for the District of New Jersey issued a standing order pursuant to 28 U.S.C. § 546(d) providing that Desiree Grace—the First Assistant U.S. Attorney at the time—would be Interim U.S. Attorney effective upon the expiration of Habba's 120-day term under § 546.[1] In response, the Department of Justice terminated Grace's employment. Then, on July 24, the Trump administration took several steps: (1) the President withdrew Habba's nomination for U.S. Attorney; (2) Habba resigned as Interim U.S. Attorney; (3) the Attorney General issued an order appointing Habba as "Special Attorney" to the Attorney General, accompanied by a letter authorizing Habba to conduct "any kind of legal proceedings . . . which United States Attorneys are authorized to conduct" pursuant to 28 U.S.C. § 515, App. 161–62, 165; and (4) in the same order, the Attorney General also designated Habba as First Assistant U.S. Attorney, which purported to mean that Habba automatically became Acting U.S. Attorney pursuant to the FVRA, 5 U.S.C. § 3345(a)(1). As a result of these moves,

---

[1] The date on which the 120-day limit expired was disputed before the District Court. *See* App. 49. But it is not an issue presented in this appeal.

the Government contends that Habba is the Acting U.S. Attorney for the District of New Jersey.

## C.

With his criminal trial for drug trafficking and firearm charges approaching, Julien Giraud Jr. filed a motion to dismiss his indictment on July 27, arguing that Habba's appointment was unlawful. Julien Giraud III, indicted on the same charges as Giraud Jr., joined that motion the following day. The District Court stayed all trial and pretrial matters, and our Court designated and assigned Judge Matthew W. Brann, Chief Judge of the United States District Court for the Middle District of Pennsylvania, for the disposition of this "and all related cases." D. Ct. Dkt. 103.

The District Court ruled on August 1 that the Girauds were not entitled to dismissal of their indictments, but deferred ruling on their motion to disqualify Habba pending further briefing. Cesar Pina then filed a motion to dismiss his wire fraud, money laundering, and bribery charges on August 11, raising many of the same arguments as the Girauds. Pina's case was reassigned to Judge Brann, and the Girauds and Pina agreed to combine their motions for a single oral argument.

On August 21, the District Court issued an opinion and order. As it had done with the Girauds' motion, the District Court denied Pina's motion to dismiss his indictment. But the District Court granted the Girauds' and Pina's motions to disqualify Habba from their prosecutions. The District Court also stayed its order pending resolution of any appellate proceedings. This timely appeal quickly followed.

## II.

The District Court had jurisdiction under 18 U.S.C. § 3231 (offenses against the laws of the United States). We

11

ordinarily lack jurisdiction over an appeal from a pre-trial order issued in a criminal proceeding. *United States v. Whittaker*, 268 F.3d 185, 191 (3d Cir. 2001). However, the collateral order doctrine permits a small class of orders to be appealed before a final judgment on the merits. *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949). Such an order must (1) conclusively determine a disputed question, (2) resolve an important issue separate from the merits of the action, and (3) be effectively unreviewable on appeal. *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 375 (1981). Here, the District Court's order (1) conclusively determines the disputed question of Habba's ability to prosecute these proceedings, (2) resolves the issue of her power to act, which is important and separate from the merits of the two criminal cases, and (3) is effectively unreviewable on appeal because the Government ordinarily will not appeal a conviction and generally cannot appeal an acquittal. *See Whittaker*, 268 F.3d at 192. Therefore, we have jurisdiction to review the order disqualifying Habba under 28 U.S.C. § 1291 pursuant to the collateral order doctrine.[2]

In considering the District Court's disqualification order, we review factual findings for clear error. *United States v. Shah*, 43 F.4th 356, 362 n.4 (3d Cir. 2022). We consider the District Court's assessment of the proper legal framework and

---

[2] The orders denying the motions to dismiss the indictments in these cases are unreviewable interlocutory orders and are not at issue in this appeal. *See United States v. Soriano Nunez*, 928 F.3d 240, 243 (3d Cir. 2019). Additionally, the appeal is limited to prospective relief (Habba's disqualification) and Habba's current role, so we do not consider the validity of her interim appointment or the District Court's appointment of Desiree Grace.

12

questions of statutory interpretation *de novo*. *See Whittaker*, 268 F.3d at 193–94; *United States v. Junius*, 86 F.4th 1027, 1030 (3d Cir. 2023). We review the District Court's ultimate decision about whether disqualification is appropriate for abuse of discretion. *Whittaker*, 268 F.3d at 194.

III.

A.

The Government argues that Habba is the Acting U.S. Attorney for New Jersey under the FVRA by virtue of her designation as First Assistant U.S. Attorney. In considering this claim, we must decide: (1) whether only the first assistant in place at the time of a PAS officer's resignation automatically assumes acting officer duties under § 3345(a)(1); and (2) whether the nomination bar in § 3345(b)(1) prevents a person from assuming acting officer duties even if her nomination is no longer pending before the Senate. We answer both questions in the affirmative.

These questions require us to interpret the FVRA, and "we will 'start where we always do: with the text.'" *Al-Hasani v. Sec'y United States Dep't of Homeland Sec.*, 81 F.4th 291, 296 (3d Cir. 2023) (quoting *Van Buren v. United States*, 593 U.S. 374, 381 (2021)). But "[w]e do not examine the language in isolation." *Hayes v. Harvey*, 903 F.3d 32, 41 (3d Cir. 2018). "Rather, in examining the statutory language, 'we take account of the specific context in which that language is used, and the broader context of the statute as a whole.'" *Id.* (quoting *Disabled in Action of Pa. v. Se. Pa. Transp. Auth.*, 539 F.3d 199, 210 (3d Cir. 2008)). "In doing so, 'we must give effect, if possible, to every clause and word of [the] statute.'" *Fischer v. United States*, 603 U.S. 480, 486 (2024) (quoting *Williams v. Taylor*, 529 U.S. 362, 404 (2000)). The statutory structure—

13

and, when necessary, statutory history—can aid our textual analysis. *See Snyder v. United States*, 603 U.S. 1, 10 (2024).

### 1.

The Government claims that Habba became Acting U.S. Attorney under the FVRA by virtue of the automatic first-assistant provision, 5 U.S.C. § 3345(a)(1), because the Attorney General designated her First Assistant U.S. Attorney on July 24, and the office of U.S. Attorney was vacant at that time. It challenges the District Court's holding that the FVRA permits a first assistant automatically to fill the vacant office only if the first assistant is already in that role at the time the vacancy occurs. *United States v. Giraud*, __ F. Supp.3d __, No. 1:24-CR-00768, 2025 WL 2416737, at *14 (D.N.J. Aug. 21, 2025). The question, then, is whether an administration can appoint a new first assistant at any time during a vacancy in a PAS office (subject to the FVRA's time limits) and have that later-appointed first assistant automatically become the acting officer.

The text of subsection (a)(1) alone is, at first glance, silent as to whether the first assistant must be in the role at the time of the vacancy. 5 U.S.C. § 3345(a)(1). Nevertheless, the answer can be found in the overall structure of the statutory scheme and by reading subsection (a)(1) within the context of its surrounding subsections. Section 3345(a)(1) provides that, if a PAS office becomes vacant, "the first assistant to the office" shall serve as the acting officer. As the District Court observed, "the vacancy provision and the first assistant provision function in a simple if-then form, indicating that the promotion of the first assistant occurs automatically at the moment of the vacancy." *Giraud*, 2025 WL 2416737, at *14; *see also SW Gen., Inc.*, 580 U.S. at 305 (describing a first assistant's "automatic" assumption of acting duties). The

14

President may essentially override the automatic first assistant appointment by choosing a different person who qualifies under subsections (a)(2) or (a)(3), but neither the President nor anyone else has a role in the automatic elevation of the first assistant when the vacancy occurs. *See* 5 U.S.C. § 3345(a).

Subsection (a)(2) allows the President to direct another PAS officer to assume the acting officer role, and subsection (a)(3) allows the President to direct an employee with the requisite amount of experience within the agency to assume the acting officer role. *Id.* § 3345(a)(2), (3). In subsection (b), Congress further narrowed who can take on an acting role by barring a person otherwise eligible under subsection (a) if the President nominates that person to the office. *Id.* § 3345(b)(1). Taken together, the text of subsections (a)(2), (a)(3), and (b) indicate that Congress intended to honor the Senate's advice-and-consent role, but also recognized a need for some flexibility in choosing an acting officer—so it cabined the pool of eligible people to those the Senate has already confirmed or those with experience within the agency.

The Government argues that "the FVRA does not require a first assistant to be the incumbent at the time the vacancy first arose" to qualify for automatic elevation to acting status. Appellant's Br. 18. The Government points out that the statute does not state that the first assistant must be in the role at the time of the vacancy, and a vacancy is a "continuing state," so—it says—the first assistant provision applies any time during the vacancy. *Id.* at 18–19. It also observes that the statute refers to the first assistant "to the office," not "the first assistant to a particular PAS officeholder at a particular time." *Id.*

There is, however, contrary textual evidence to suggest that § 3345(a)(1) triggers at the moment the vacancy arises,

15

thereafter leaving (a)(2) and (a)(3) as the only means of selecting a different acting officer. First, § 3345(a) uses present-tense verbs ("dies, resigns, or is otherwise unable to perform") indicating a single, immediate occurrence, as opposed to, for example, the present perfect tense (has died, has resigned), which could indicate past actions with continued relevance. *Hewitt v. United States*, 606 U.S. 419, 427–28 (2025). Further, to the extent the Government relies on the phrase "is otherwise unable to perform" (in contrast to "dies" or "resigns") to demonstrate that § 3345(a) refers to a continuing state, Gov. Br. at 19, such an argument fails. Here, the residual "otherwise" provision is limited by the list of specific examples that precede it. Like "dies" and "resigns," "otherwise unable to perform" must be read to refer to a single instance. *Fischer*, 603 U.S. at 489–90. (holding that the "otherwise" clause in 18 U.S.C. § 1512(c)(2) is limited by preceding examples in (c)(1)).

The Girauds cogently respond that the statute's use of the definite article "the" in reference to "the first assistant," rather than "a" first assistant, "clearly refers to the deputy already in place at the time the vacancy arises." Giraud Br. 15. According to the Girauds, this interpretation of (a)(1) avoids "the elaborate safeguards in subsections (a)(2), (a)(3), and (b)(1) collaps[ing] into irrelevance." *Id.* at 18. Pina's argument is similarly apt: he points out that the FVRA repeatedly makes expressly clear that "the President (and only the President)" may select the acting officer and that the Government's approach would violate that language by giving the Attorney General broad discretion under the FVRA to appoint acting PAS officers by designating them first assistants. Pina Br. 27–28; *see also* 5 U.S.C. § 3345(a)(2), (a)(3), (c)(1).

Indeed, the upshot of the Government's argument is that, while subsections (a)(2) and (a)(3) narrowly constrain

who "the President (and only the President)" may direct to take an acting role, subsection (a)(1) allows the President or Attorney General to, in effect, appoint almost anyone, whether or not the person is previously Senate-confirmed to another role, and whether or not the person has any recent experience in the agency. To overcome a superfluity argument, the Government contends that "subsections (a)(2) and (a)(3) . . . play an important role" when the first assistant job itself is a PAS office and also vacant when the primary office is vacant. Appellant's Br. 22. It provides one example: the roles of Secretary of State and its first assistant, Deputy Secretary of State. *Id.*; *see also* 22 U.S.C. § 2651a(a)(2). But this would seem to be a rare circumstance compared to first assistant jobs that are not PAS offices. The Government's reading would render subsections (a)(2) and (a)(3) mostly superfluous. *See TRW Inc. v. Andrews*, 534 U.S. 19, 29 (2001) (rejecting an interpretation that would effectively render statutory language superfluous except in "the most unusual circumstances").

In addition, the Government's reading would create surplusage out of 28 U.S.C. § 546, which provides that "the Attorney General may appoint a United States attorney for the district in which the office of United States attorney is vacant," 28 U.S.C. § 546(a), with the appointment limited to 120 days, *id.* § 546(c)(2). According to the Government, Congress passed § 546 allowing the Attorney General to appoint almost anyone Interim U.S. Attorney for a strictly limited 120-day period, and Congress simultaneously intended the generally applicable FVRA to allow the appointment of almost anyone to automatically assume the Acting U.S. Attorney role for 210 days (or more when the time limit is tolled during pending nominations), nearly double § 546's 120-day allotment. That

reading renders § 546(b) and (c)(2) meaningless. *See TRW Inc.*, 534 U.S. at 29.

The Government further argues that the statutory structure supports its view because in other parts of § 3345, Congress used "backward-looking language that makes eligibility for acting service . . . depend on the state of affairs during the time preceding the vacancy." Appellant's Br. 19. The lack of a "backward-looking eligibility requirement" in (a)(1), says the Government, supports its view of the vacancy as a continuing state and, therefore, (a)(1) applies at any time during the vacancy. *Id.* at 20. But there is a logical reason for the fact that subsection (a)(1) does not impose "backward-looking" restrictions, *id.* at 19, while subsections (a)(2) and (a)(3) do. Subsection (a)(1) is automatic and requires no participation by the Executive or anyone else—when the vacancy arises, the first assistant "shall perform the functions and duties of the office temporarily in an acting capacity." 5 U.S.C. § 3345(a)(1). It is triggered at a single instance: the moment the vacancy arises. Subsections (a)(2) and (a)(3), on the other hand, include backward-looking language because the President may use these alternative methods at any time after the vacancy arises, but his choices are cabined to a certain subset of qualified individuals, and those qualifications are determined by looking backward from the moment the vacancy arose.

The Government finally argues that past practice by various administrations indicates its reading of the statute aligns with Congress's intent. This argument is unpersuasive. First, just because a practice previously went unchallenged does not mean it complies with the FVRA. *See Medellin v. Texas*, 552 U.S. 491, 531–32 (2008) (quoting *Dames & Moore v. Regan*, 453 U.S. 654, 686 (1981)) ("[T]he Court has been careful to note that '[p]ast practice does not, by itself, create

18

power.'"). Second, in 2020, the Government "failed to identify a single example of a post-vacancy first assistant serving in an acting capacity prior to enactment of the FVRA." *L.M.-M. v. Cuccinelli*, 442 F. Supp. 3d 1, 27–28 (D.D.C. 2020). This indicates that any existing practice of elevating later-named first assistants is a recent development ripe for review—not a practice to which Congress has acquiesced or a process essential to the Government's ability to function.

Third, Congress replaced the previous Vacancies Act with the FVRA in response to the Executive branch's widespread practice—dating back through several administrations—of appointing temporary designees in contravention of existing law and the Appointments Clause.[3] By 1998, many "acting officers filled high-level positions, sometimes in obvious contravention of the Senate's wishes," beyond the then-120-day limitation period. *SW Gen.*, 580 U.S. at 295. "Perceiving a threat to the Senate's advice and consent power," Congress "replaced the Vacancies Act with the FVRA." *Id.* The final statute was a compromise: Congress granted the Executive additional flexibility by lengthening the limitations period and expanding "the pool of individuals the President could appoint as acting officers." *Id.* at 307. But while it granted this added flexibility, Congress—as it has done

---

[3] This statutory history is "the sort of textual evidence everyone agrees can sometimes shed light on meaning." *BNSF Ry. Co. v. Loos*, 586 U.S. 310, 329 (2019) (Gorsuch, J., dissenting). It is not legislative history—for example, the committee reports and statements from individual Senators to which the parties in these cases sometimes cite—"the mining of which is 'disfavored' as a statutory interpretation strategy." *Al-Hasani*, 81 F.4th at 298 n.4 (quoting *Thomas v. Reeves*, 961 F.3d 800, 817 n.45 (5th Cir. 2020) (Willett, J., concurring)).

on many occasions since George Washington's first Presidential term—acted in response to the "interbranch conflict" and "tensions" arising from the Executive branch's continued attempts to contravene the Senate's advice-and-consent power. *See id.* at 294–95.

Textually and structurally, within the context of the full statutory framework Congress has provided, the Government's reading of the FVRA's first assistant provision is not persuasive because it renders other FVRA and § 546 provisions mostly superfluous. Rather, we agree with the District Court that "[t]he most natural reading" of subsection (a)(1) is that only the first assistant in place at the time of the vacancy automatically assumes acting status under the FVRA because it is the reading that "better harmonizes the various provisions in [the FVRA and § 546] and avoids the oddities that [the Government's] interpretation would create." *Rep. of Sudan v. Harrison*, 587 U.S. 1, 8, 15 (2019). Therefore, Habba is not eligible to serve as Acting U.S. Attorney under the FVRA's first-assistant provision, 5 U.S.C. § 3345(a)(1), because she was not the First Assistant U.S. Attorney at the time the vacancy arose.

2.

Even if the FVRA's first assistant provision did allow a later-appointed first assistant automatically to ascend to the role of acting officer, Habba would still need to overcome the FVRA's nomination bar. The FVRA provides that "a person may not serve as an acting officer for an office under this section, if . . . the President submits a nomination of such person to the Senate for appointment to such office." 5 U.S.C. § 3345(b)(1).

The Government argues that the nomination bar does not apply to Habba because it is limited to pending nominees

20

only. It contends that use of the present-tense "submits" in the statute "requires consideration of the status at the time of the covered action, not before." Appellant's Br. 26. Because "the covered action is Ms. Habba's acting service," the Government says, "the focus of the statute is on her nomination status at the time of her acting service, not when her nomination was pending in the past." *Id.*

The problem for the Government is the lack of textual support for its position. Nothing in the statute indicates the bar lifts when a nomination is no longer pending. "Submit" means "to present or propose to another for review, consideration, or decision." Submit, Merriam-Webster.com.[4] The phrase "the President submits a nomination" suggests a one-time action: the President's "submi[ssion]" of "a nomination." 5 U.S.C. § 3345(b)(1)(B). "[I]n determining the meaning of any Act of Congress, unless the context indicates otherwise[,] . . . words used in the present tense include the future as well as the present." *Carr v. United States*, 560 U.S. 438, 448 (2010) (quoting 1 U.S.C. § 1).

The present act in question is the President's submission of the nomination. There is a time before "the President submits a nomination," and there is a time after "the President submits a nomination." 5 U.S.C. § 3345(b)(1)(B). Just because the President later may withdraw the nomination does not erase the fact that he submitted it. Here, the President undisputedly took the statutory action—"submit[ted] a nomination"—on June 30 when he nominated Habba for U.S. Attorney. The FVRA includes no additional language to indicate that her

---

[4] https://perma.cc/3299-7SVC.

nomination needs to be pending for the bar to continue to apply.

The Government's primary response to this clear statutory language is its claim that this interpretation of the nomination bar constitutes a "lifetime ban," arguing that such a ban is "disproportionate to the separation-of-powers problem that Congress sought to address in" this subsection of the FVRA. Appellant's Br. 27. The Girauds, on the other hand, call this "lifetime ban" argument "a straw man" and contend that the ban is meant to last only for the duration of the vacancy at issue. Giraud Br. 32. "Because Ms. Habba was nominated to fill this specific vacancy," the Girauds conclude, "she is barred from acting service during its duration." *Id.*[5]

The text and structure of the statute align with the defendants' arguments, not the Government's. The FVRA is triggered when a PAS officer "dies, resigns, or is otherwise unable to perform the functions and duties of the office." 5 U.S.C. § 3345(a). "[T]he person serving as an acting officer as described under section 3345" is time-limited, and that limitation is calculated based on "the date the vacancy occurs."

---

[5] Pina additionally cites *SW General* in support of the application of the nomination bar. Pina Br. 40–41. This reliance is misplaced. While the decision includes language that facially aligns with the defendants' interpretation, the Supreme Court declined to decide whether the nomination bar continues to apply after a nomination is withdrawn. *SW Gen.*, 580 U.S. at 298 n.2 (noting that the Court "proceed[ed] on the same assumption" as the Court of Appeals); *SW Gen., Inc. v. NLRB*, 796 F.3d 67, 72 n.3 (D.C. Cir. 2015) (noting that although the nomination was no longer pending, the Board did "not argue that [this] should make a difference in our analysis," so the Court assumed it did not).

*Id.* § 3346(a)(1). The FVRA provides that "[i]f the first nomination for the office" is rejected or withdrawn, then "the [eligible acting officer] may continue to serve as the acting officer" for a set period afterward. *Id.* § 3346(b)(1). Likewise for a second rejected or withdrawn nomination. *Id.* § 3346(b)(2)(B). The use of the word "continue" indicates that eligibility for acting officer status remains tied to the PAS officer vacancy—the acting officer may continue to be the first assistant who automatically assumed acting officer status when the vacancy occurred or, if the President so decides, an eligible PAS officeholder or an experienced agency employee. *Id.* § 3345(a)(1)–(3).

After a new PAS officer is confirmed by the Senate for a vacant PAS office, the FVRA no longer has any effect. When that new PAS officer later "dies, resigns, or is otherwise unable to perform the functions and duties of the office," the FVRA is freshly triggered, with re-set time limitations under § 3346. *Id.* § 3345(a). Given that the FVRA operates anew with each vacancy, the best reading of the nomination bar is that it prohibits from acting service those whose nomination the President submits for the vacant office that triggered the FVRA in the first place.

Additionally, the Government's reading of the nomination bar cuts against its own separation-of-powers argument. Its interpretation would mean that even rejected nominees—not merely withdrawn nominees—could serve as later-appointed acting officers under the FVRA. That interpretation simply does not fit with the FVRA's structure. The nomination bar in subsection (b) is part of an overall statutory scheme that includes subsections (a)(1), (2), and (3), and taken together, they indicate Congress's intent to preserve the Senate's advice-and-consent role and provide a narrowly cabined pool of eligible people who can temporarily fill the

acting role. A statute that clearly prevents both rejected and withdrawn nominees from serving as later-appointed acting officers during the vacancy in question is not "disproportionate to the separation-of-powers problem that Congress sought to address in" the FVRA. Appellant's Br. 27. On the contrary, allowing rejected (and withdrawn) nominees to serve as later-appointed acting officers during that vacancy would significantly undercut Congress's solution to its separation-of-powers concerns.

Based on the text of subsection (b) and its context within the overall structure of the FVRA, we conclude that a person continues to be ineligible for acting officer status after the President withdraws her nomination because the withdrawal of a nomination necessarily happens after "the President submits a nomination." Therefore, the nomination bar prevents Habba from serving as Acting U.S. Attorney under the FVRA.

B.

The Government contends that, even if Habba is not the Acting U.S. Attorney under the FVRA, she nonetheless "may continue to exercise prosecutorial and supervisory authority . . . pursuant to the Attorney General's express delegation of authority to her in her capacity as Special Attorney and First Assistant U.S. Attorney." Appellant's Br. 27. This broad delegation is directly contrary to the exclusivity provision of the FVRA.

The FVRA is "the exclusive means for temporarily authorizing an acting official to perform the functions and duties of any [PAS] office," 5 U.S.C. § 3347(a), unless a statute expressly authorizes another means of acting or interim service in a specified office, *id.* § 3347(a)(1). As we have already discussed, § 546, which specifically authorizes the Attorney General to designate an interim U.S. Attorney for a 120-day

24

term, is just such a statute. But the FVRA also prohibits the use of general vesting and delegation statutes to "temporarily authoriz[e] an acting official to perform the functions and duties" of a PAS office. *Id.* § 3347(a), (b).

The Attorney General appointed Habba as a Special Attorney pursuant to 28 U.S.C. § 515. Congress has vested "[a]ll functions" of the Department of Justice (with a few exceptions irrelevant here) "in the Attorney General." 28 U.S.C. § 509. The Attorney General may "authoriz[e] the performance by any other . . . employee . . . of the Department of Justice of any function of the Attorney General." *Id.* § 510. Habba's appointment came with a delegation authorizing Habba to "conduct in the District of New Jersey, any kind of legal proceedings, civil or criminal, including Grand Jury proceedings and proceedings before United States Magistrates, which United States Attorneys are authorized to conduct." App. 161. The District Court held that this broad language in the appointment letter conferred on Habba the "full panoply of powers of a" U.S. Attorney. *Giraud*, 2025 WL 2416737, at *20. It also noted that "it is no mere coincidence that Habba was named a Special Attorney and delegated this authority as part of a single series of moves made with the express goal of installing her as the Acting United States Attorney." *Id.* at *21.

The Government claims that the Attorney General "validly delegated to Ms. Habba . . . the authority to conduct and supervise legal proceedings in the District of New Jersey." Appellant's Br. 29. And the Government expressed at oral argument its view that Habba's authority is "coextensive and coterminous" with that of a U.S. Attorney, Oral Arg. Tr. 5, with no time limit on the performance of those "functions by delegation," *id.* at 29; *see also id.* ("[O]ur view is that there are no exclusive functions" of the office of U.S. Attorney that cannot be delegated). As the District Court found, the Attorney

25

General thus attempted to delegate to Habba the full panoply of powers of a U.S. Attorney.

This *de facto* U.S. Attorney-by-delegation theory is plainly prohibited by the FVRA's exclusivity provision. 5 U.S.C. § 3347(a), (b). The vesting and delegation statutes in 28 U.S.C. §§ 509 and 510 are "statutory provision[s] providing general authority to the head of an Executive agency . . . to delegate duties statutorily vested in that agency head to, or to reassign duties among, officers or employees of such Executive agency," and so they do not overcome the FVRA's exclusivity provision. 5 U.S.C. § 3347(b). Under the Government's delegation theory, Habba may avoid the gauntlet of presidential appointment and Senate confirmation and serve as the *de facto* U.S. Attorney indefinitely. This view is so broad that it bypasses the constitutional PAS process entirely. It also essentially eliminates the requirements of the FVRA and the U.S. Attorney-specific statute, § 546.

The Government's arguments to the contrary are unavailing. The Government first contends that the FVRA's exclusivity provision does not apply to Habba because it applies only to acting officials and Habba is not an acting official—rather, she was delegated "the office's delegable duties," something the Government views as quite different than being an acting official. Appellant's Br. 34. The Government says that acting officials can perform all powers of the office—including those that are non-delegable— whereas non-acting officials like Habba can perform only

delegable powers that have been delegated to them. *Id.* 33–35.[6] The Government asserts that "the FVRA concerns the means of designating an 'acting official' to perform all the functions and duties of an office, not the means of delegating some or all the office's delegable duties to a non-acting official." *Id.* at 34. Because § 3347(a) does not specifically refer to delegation, the Government reasons that the exclusivity provision is inapplicable to officials exercising delegated powers, rather than powers assumed under the FVRA. *Id.*

The Government reads into the FVRA a distinction that is not there. An acting officer is simply one who "perform[s] the functions and duties of the office temporarily in an acting capacity subject to the time limitations of section 3346." 5 U.S.C. § 3345(a)(1). Section 3347(a)(1) similarly refers to an acting official as one who "perform[s] the functions and duties" of a PAS office "temporarily in an acting capacity." *Id.* § 3347(a)(1). The statutory language indicates that an acting official is one who performs the functions and duties of an office, so contrary to the Government's suggestion, Habba is an acting official subject to the FVRA's limitations.[7] The FVRA is clear that the Government cannot sidestep the FVRA by using a "statutory provision providing general authority to

---

[6] Regardless of any distinction between an acting official and a non-acting official, the Government's position is that there are no differences between Habba's powers and the powers of a Senate-confirmed U.S. Attorney. Oral Arg. Tr. 21–22.

[7] The Government agrees that "[a]n acting designation is a designation of duties." Oral Arg. Tr. 4.

the head of an Executive agency . . . to delegate duties." 5 U.S.C. § 3347(b).

Next, the Government points to decisions from both our Court and our sister courts of appeals that, it says, support its contention that the FVRA's exclusivity provision does not bar a "non-acting official" from exercising delegable powers. Appellant's Br. 37–39. None of these cases support the delegation of authority at issue here.

Our Court's discussion of delegable and non-delegable duties in *Kajmowicz v. Whitaker*, 42 F.4th 138 (3d Cir. 2022), occurred in the context of the FVRA's remedial provisions found in 5 U.S.C. § 3348. That section provides that when a PAS office is vacant, and no one is filling the office on an acting basis under the FVRA, the office remains vacant and "only the head of [the] Executive agency may perform any function or duty of such office." 5 U.S.C. § 3348(b). "An action taken by" any other person "shall have no force or effect" and "may not be ratified." *Id.* § 3348(d). Section 3348 defines "function or duty" for the purposes of that section as "any function or duty of the applicable office that . . . is required by statute to be performed by the applicable officer (and only that officer)." *Id.* § 3348(a)(2)(A)(ii). The qualifier "and only that officer" means that § 3348 applies only to non-delegable duties. *Kajmowicz*, 42 F.4th at 148. Therefore, if a statute "expressly bar[s] subdelegation or mandate[s] exclusivity, then the authority constitutes a 'function or duty.' If not . . . officials may ratify exercises of that authority under the [FVRA]." *Id.* at 149 (quoting 5 U.S.C. § 3348(a)(2)(A)).

But *Kajmowicz* is inapplicable. That case was about the *ex-post* ratification of an acting officer's action. An acting Attorney General promulgated a rule under the Attorney General's statutory authority. *Id.* at 146. Regardless of whether

the acting Attorney General was properly appointed, the Senate-confirmed Attorney General William Barr later ratified the rule. *Id.* We said the ratification was valid because the Attorney General's rulemaking authority granted by the firearms-related statute at issue was delegable—there was no question that the Attorney General could have delegated that authority to the Director of the Bureau of Alcohol, Tobacco, and Firearms, for example. *Id.* at 150. We declined to address whether the acting officer was improperly appointed because the later ratification of the rule was dispositive. *Id.* at 144. Indeed, we noted the acting officer issue "raised significant and largely unresolved constitutional and statutory questions." *Id.*

Here, we are not concerned with which of Habba's actions the Attorney General or a later-Senate-confirmed U.S. Attorney could ratify. Rather, the issue before us is whether the Attorney General can broadly delegate to Habba the authority "to conduct in the District of New Jersey, any kind of legal proceedings . . . which United States Attorneys are authorized to conduct," pursuant to 28 U.S.C. §§ 509 and 510. App. 161.

Of the out-of-circuit cases, only *Arthrex, Inc. v. Smith & Nephew, Inc.*, 35 F.4th 1328 (Fed. Cir. 2022), addresses the effect, if any, of the FVRA's exclusivity provision on officials exercising delegated powers, and *Arthrex* is not persuasive. That case involved a challenge to a decision by the Commissioner for Patents denying Arthrex's request for the Director of the Patent and Trademark Office to review a Patent Trial and Appeals Board decision. *Arthrex*, 35 F.4th at 1332. Because the offices of both the Director and the Deputy Director were vacant, the Commissioner exercised the "non-exclusive functions and duties of the [Director]" to deny Arthrex's request. *Id.* Arthrex argued that the FVRA precluded the Commissioner from ruling on the rehearing request, but the Federal Circuit held that the "the FVRA applies only to non-

delegable duties" and "deciding rehearing requests is a delegable duty." *Id.* at 1335 (citing 5 U.S.C. §§ 3348(a)(2), (d)(1)–(2)). The court also believed that its reading of § 3348(a)(2) did not conflict with § 3347(b) because "§ 3347(b) makes clear that the FVRA still applies to . . . nondelegable duties." *Id.* at 1338.

Of course, *Arthrex* is not binding on our Court. Notably, despite quoting some language from *Arthrex*, we chose not to adopt the Federal Circuit's reasoning when deciding *Kajmowicz* and instead focused our analysis on the text of § 3348. *Kajmowicz*, 42 F.4th at 147–52. The Federal Circuit in *Arthrex* applied the definition of "function or duty" in § 3348(a)(2) to the entire FVRA. 35 F.4th at 1335–36. But that definition expressly applies only "[i]n this section," namely, the remedial provisions in § 3348. *See* 5 U.S.C. § 3348(a)(2). Based on this textual limitation, we decline the Government's invitation to apply the Federal Circuit's reasoning to this case.

The remaining cases the Government cites all relate to § 3348 rather than § 3347. *Gonzales & Gonzales Bonds & Insurance Agency, Inc. v. U.S. Department of Homeland Security*, 107 F.4th 1064 (9th Cir. 2024), like our decision in *Kajmowicz*, considered whether the ratification bar of § 3348(d)(2) applied "only to 'functions or duties' that are singularly entrusted by statute or regulation to that officer, and in other words are 'nondelegable.'" *Id.* at 1068. The Ninth Circuit also stated that its holding with respect to the meaning of "function or duty" in § 3348 did "not alter § 3347(b)'s dictate regarding general vesting-and-delegation statutes." *Id.* at 1078. Similarly, the Second Circuit in *Schaghticoke Tribal Nation v. Kempthorne*, 587 F.3d 132 (2d Cir. 2009), relied solely on § 3348 to determine that acknowledgment of the existence of Indian tribes was not a function or duty required to be performed only by the Assistant Secretary of the Interior,

*id.* at 135, and it never mentioned the FVRA's exclusivity provision, *see generally id.* at 134–35. In *Stand Up for California! v. U.S. Department of the Interior*, 994 F.3d 616 (D.C. Cir. 2021), the District of Columbia Circuit cited § 3348, not § 3347, and the appellants did not raise their FVRA claims on appeal, so the FVRA was merely a "guidepost[] . . . in analyzing the challenge to delegated authority." 994 F.3d at 622 n.2; *see also id.* at 622.

Finally, the Government argues that interpreting the FVRA's exclusivity provision to bar individuals from exercising delegable powers would undermine the operation of the federal government. Appellant's Br. 45. But even if that might be a consequence of Congress's enactment of the FVRA exclusivity provision, we are not tasked with resolving such policy concerns. *See United States v. Safehouse*, 985 F.3d 225, 238 (3d Cir. 2021) ("The public-policy debate is important, but it is not one for courts."). Regardless, the Government concedes that it is not aware of any powers of a U.S. Attorney that are not delegable. Appellant's Br. 43. And it recognizes the implication of its reading—that the FVRA's exclusivity provision creates "only a minimal constraint" preventing a temporary official like Habba from using a formal "Acting" title while still allowing her to exercise all the powers of the vacant office. *Id.* at 43–44. This delegation theory would create a means for the Department of Justice to circumvent the FVRA's exclusivity provision, effectively permitting anyone to fill the U.S. Attorney role indefinitely. This should raise a red flag, given the careful time limitations included in both the FVRA and the U.S. Attorney-specific statute. *See* 5 U.S.C. § 3346; 28 U.S.C. § 546(c)(2); *see also Eaton*, 169 U.S. at 343

(acting or interim service in a PAS office is permitted for a "limited time, and under special and temporary conditions.").

Moreover, as the District Court noted, our decision that the delegation of all the powers of a U.S. Attorney would run afoul of the FVRA's exclusivity provision does not necessarily mean that some delegation by the Attorney General to Habba—or to any First Assistant U.S. Attorney—would not be permissible. *Giraud*, 2025 WL 2416737, at \*26 n.257. The Government is dismissive of this view, claiming that delegation to multiple individuals rather than one results in a "*reductio ad absurdum*." Appellant's Br. 45. "It is not evident," it asserts, "why that distinction would be material." *Id.* But it might be material, as it is possible a more dispersed delegation of authority might not create a *de facto* U.S. Attorney and therefore might not run afoul of the FVRA's exclusivity provision—though we do not decide that today because those are not the facts of this case. As it stands, Habba alone is exercising all the powers of a U.S. Attorney, making her an Acting U.S. Attorney whose appointment is not FVRA-compliant.

## IV.

Habba is not the Acting U.S. Attorney for the District of New Jersey by virtue of her appointment as First Assistant U.S. Attorney because only the first assistant in place at the time the vacancy arises automatically assumes the functions and duties of the office under the FVRA. Additionally, because Habba was nominated for the vacant U.S. Attorney position, the FVRA's nomination bar prevents her from assuming the role of Acting U.S. Attorney. Finally, the Attorney General's delegation of all the powers of a U.S. Attorney to Habba is prohibited by the FVRA's exclusivity provision. Therefore, we will affirm the District Court's disqualification order.